IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BILLY JACK CRUTSINGER, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:07-CV-703-Y |
| | § | ECF |
| NATHANIEL QUARTERMAN, DIRECTOR | § | (Death Penalty Case) |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

ERIC J.R. NICHOLS
Deputy Attorney General
For Criminal Justice

*Counsel of Record

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division

*ELLEN STEWART-KLEIN
Assistant Attorney General
Postconviction Litigation Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400

ATTORNEYS FOR RESPONDENT

## TABLE OF CONTENTS
## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PETITIONER ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     Facts of the Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    Punishment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ANSWER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     Crutsinger Is Not Entitled to an Evidentiary Hearing on His
       Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    Crutsinger's Claim Regarding the Admission of Evidence
       Allegedly Obtained in Violation of his Constitutional Rights
       Is Without Merit. (Claim 1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.   Crutsinger's Claims of Ineffective Assistance of Counsel Are
       Without Merit. (Claim 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       B.     Crutsinger's claims relating to counsel's failure to
              investigate and present mitigating evidence are without
              merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.    Crutsinger's Claim of Actual Innocence is Procedurally Defaulted,
       Not Cognizable, and Without Merit. . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF CONTENTS, Continued

A. Crutsinger never raised this claim in the state courts and, thus, the claim is both unexhausted and procedurally defaulted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B. Actual innnocence claims are generally not cognizable in federal habeas review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C. Crutsinger's claim that he lacked the requisite mens rea is without merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES, Continued

**Cases**                                                               **Page**

*Alexander v. Johnson,* 163 F.3d 906 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . 29

*Anderson v. Harless,* 459 U.S. 4 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Andrews v. Collins,* 21 F.3d 612 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 17

*Anderson v. Harless,* 459 U.S. 4 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27,32

*Armstead v. Scott,* 37 F.3d 202 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Black v. Collins*, 962 F.2d 394 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bousley v. United States,* 523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bridgers v. Dretke,* 431 F.3d 853 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 17

*Carson v. Collins,* 993 F.2d 461 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 18

*Catalan v. Cockrell,* 315 F.3d 491 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 8

*Castille v. Peoples,* 489 U.S. 346 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Caver. v. Alabama,* 577 F.2d 1188 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . 14

*Christian v. McKaskle,* 731 F.2d 1196 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . 17

*Coleman v. Thompson*, 501 U.S. 722 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 8,30

*Doescher v. Estelle,* 616 F.2d 205 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . 15,16

*Dowthitt v. Johnson,* 230 F.3d 733 (5th Cir. 2000) . . . . . . . . . . . . . . . . . *passim*

*Duncan v. Henry,* 513 U.S. 364 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES, Continued

**Cases**                                                                 **Page**

*Early v. Packer,* 537 U.S. 3 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Engle v. Isaac,* 456 U.S. 107 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Evers v. Texas,* 20 S.W.2d 744 (Tex. Crim. App. 1892) . . . . . . . . . . . . . . . 34

*Ex parte Elizondo,* 947 S.W.2nd 202 (Tex. Crim. App. 1996) . . . . . . . . . . . 32

*Ex parte Thompson,* 153 S.W.3d 416 (Tex. crim. app. 2005) . . . . . . . . . . . 32

*Fairman v. Anderson,* 188 F.3d 635 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . 32

*Franks v. Delaware,* 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978) . . . . . . . . . . . . . . 15,16

*Garland v. Magio,* 717 F.2d 199 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . 22

*Graham v. Johnson,* 94 F.3d 958 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . 28,29

*Gray v. Netherland,* 518 U.S. 152 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 29

*(Ricky Lee) Green v. Johnson,* 116 F.3d 1115 (5th Cir. 1997) . . . . . . . . . . . 22

*Harris v. Reed,* 489 U.S. 255 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hernandez v. Johnson,* 248 F.3d 344 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . 6

*Herrera v. Collins,* 506 U.S. 390 (1993) . . . . . . . . . . . . . . . . . . . . . . . 31,32,35

*Jackson v. Virginia,* 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Janecka v. Cockrell,* 301 F.3d 316 (5th Cir. 2002) . . . . . . . . . . . . . . . . . 14,17

*Joyner v. King,* 786 F.2d 1317 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES, Continued

**Cases**                                                                                           **Page**

*Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) . . . . . . . . . . . . . . . . . . . . . . 27,28

*Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . 20

*Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 19

*Lucas v. Johnson*, 132 F.3d 1069 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 32

*Martin v. Cain*, 246 F.3d 471 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Martinez v. Dretke*, 404 F.3d 878 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 25

*McDonald v. Johnson*, 139 F.3d 1056 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 13

*Moreno v. Estelle*, 717 F.2d 171 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . 15,22

*Muniz v. Johnson*, 132 F.3d 214 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 30

*Murphy v. Johnson*, 205 F.3d 809 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 13

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nelson v. Hargett*, 989 F.2d 847 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 20

*Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 30

*Picard v. Connor*, 404 U.S. 270 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Riddle v. Cockrell*, 288 F.3d 713 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 6,12

*Rose v. Lundy*, 455 U.S. 509 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Santellan v. Cockrell*, 271 F.3d 190 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . 7,25

*ShisInday v. Quarterman*, 511 F.2d 1188 (5th Cir. 1978) . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES, Continued

**Cases**                                                                 **Page**

*Sonnier v. Maggio,* 720 F.2d 401 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 17

*Stone v. Powell,* 428 U.S. 465 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . 19,20,21

*Swicegood v. Alabama,* 577 F.2d 1322 (5th Cir. 1978) . . . . . . . . . . . . . . 16,17

*Teague v. Lane,* 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,18

*Thomas v. Collins,* 919 F.2d 333 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 27

*Townsend v. Sain*, 372 U.S. 293 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Tucker v. Johnson,* 242 F.3d 617 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Jones,* 172 F.3d 381 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . 33

*Vela v. Estelle,* 708 F.2d 954 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ward v. Cain,* 53 F.3d 106 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Wiggins v. Smith,* 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Williams v. Brown*, 609 F.2d 216 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . 15,17

*Williams v. Cain,* 125 F.3d 269 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 6

*(Michael Wayne) Williams v. Taylor*, 529 U.S. 420 (2000) . . . . . . . . . . . . 9,10

*(Terry) Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . 6,7

*Townsend v. Sain,* 372 U.S. 293 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Woodford v. Visciotti,* 537 U.S. 19 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES, Continued

**Cases**                                                                 **Page**

*Wright v. West,* 505 U.S. 277 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Constitutions, Statutes and Rules**

U. S. Const., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Tex. Code Crim. Proc. Ann. art. 11.071 (West 2009)) . . . . . . . . . . . . . . . 10,29

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Billy Jack Crutsinger[1] is properly sentenced to death for the brutal murders of eighty-nine year-old Pearl Magouirk and her seventy-one year-old daughter, Patricia Syren.   Although Crutsinger challenges the constitutionality of his conviction, he fails to demonstrate that he is entitled to relief.   He does not show that the state courts unreasonably applied clearly established federal law, nor does he overcome the state courts' factual findings with clear and convincing evidence.   For these reasons, Crutsinger's bid for federal habeas relief should be denied.   The Director denies all allegations of fact made by Crutsinger except those supported by the record and those specifically admitted herein.

## PETITIONER'S ALLEGATIONS

In this federal habeas proceeding, Crutsinger raises the following allegations:

1.  Whether Crutsinger's Fourth Amendment rights were violated because the taint of his illegal arrest was not sufficiently attenuated as to authorize the admission of his confession, DNA sample, and other evidence?

2.  Whether Crutsinger was denied his right to effective assistance of counsel because counsel failed to adequately investigate and develop crucial evidence in all phases of the trial?

---

[1]   Respondent Nathaniel Quarterman will be referred to as "the Director."

1

3.      Whether Crutsinger alleges a valid claim of actual innocence because he lacked the necessary mens rea due to his alleged brain damage from years of alcoholism?

Pet. at 6-66.  These requests for relief must fail because Crutsinger cannot show that the state courts unreasonably applied clearly established federal law and he fails to demonstrate sufficiently clear and convincing evidence as to overcome the presumption of correctness due to the state courts' factual findings. Therefore, the requested relief should be denied.  Further, Crutsinger is not entitled to an evidentiary hearing on his claims.

## STATEMENT OF THE CASE

In September 2003, Crutsinger was convicted of capital murder and sentenced to death for murdering two people in the same criminal transaction. 7 CR 1300-02.[2]  Crutsinger pursued an automatic direct appeal to the Texas Court of Criminal Appeals which affirmed his conviction and sentence in a published opinion.  *Crutsinger v. State,* No. AP-74,769, 2006 Tex. Crim. App. LEXIS 924 (May 10, 2006).  The court also denied his motion for rehearing.  *In re Crutsinger,* 2006 Tex. Crim. App. LEXIS 1373 (Tex. Crim. App. Jul. 26, 2006).

---

[2]      "CR" is the designation for the Clerk's Record, the volumes of documents filed with the trial court, referred to by a volume and page number(s).  "RR" refers to the Reporter's Record, the transcript of trial proceedings, also preceded by the volume number and followed by the page number(s).

Crutsinger then filed a petition for a writ of certiorari, which was denied. *Crutsinger v. Texas,* 549 U.S. 1098 (2006).

During the pendency of his direct appeal proceedings, Crutsinger filed a state habeas corpus application. *Ex parte Crutsinger,* No. 63,481; 1 SHCR 2-145.[3] The trial court adopted the State's detailed findings of fact and conclusions of law recommending that the application be denied. 7 SHCR 1614. On November 7, 2007, the Court of Criminal Appeals adopted the trial court's findings and conclusions and denied habeas corpus relief. *Ex parte Crutsinger,* No. 63,481 (Tex. Crim. App. 2007) (order). The instant petition follows.

## STATEMENT OF FACTS

### I.   Facts of the Crime

Eighty-nine year-old Pearl Magouirk and her seventy-one year-old daughter, Patricia Syren, lived together. 27 RR 27-28. Syren was a volunteer receptionist at the Meadowbrook Methodist Church in Fort Worth where Crutsinger was bidding on an asphalt job. 27 RR 126-130. On April 6, 2003, Crutsinger came to the women's house where a neighbor saw Magouirk and Syren let him into the house. 27 RR 49, 57. This is the last time the women were seen alive. 27 RR 51.

---

[3]      "SHCR" refers to the state habeas court clerk's record, preceded by the volume number and followed by the relevant page number(s).

On April 8, 2003, after Syren's stepdaughter, April, tried to contact her several times, she went to the house and with a neighbor discovered the bodies of the two women. 27 RR 29-52. The women's throats had been cut and each were stabbed multiple times. 28 RR 94. Syren's car was also missing. 27 RR 40. The police quickly found Crutsinger using Syren's credit card. After being arrested by Galveston police, Crutsinger was in custody and had been Mirandized when he asked to speak to Fort Worth police. Crutsinger confessed and permitted the police to take DNA samples. 28 RR 116-20, 125. Crutsinger's DNA matched stains found in the house, in Syren's abandoned car, and in blood-soaked clothes found at the hotel where Crutsinger was living before the murders. 29 RR 30-48.

## II.   Punishment Evidence

During the punishment phase, the State introduced evidence of Crutsinger's criminal history. Most specifically, a violent incident wherein Crutsinger and an accomplice disabled the victim's car, then offered the victim help pushing the car. And when the car had been pushed to a nearby park, the men proceeded to render the victim immobile and beat him in the stomach and ribs. After taking his wallet and attempting to take his wedding ring, a police officer intervened and Crutsinger and his accomplice were arrested. 31 RR 17-46. Crutsinger was convicted of robbery. 31 RR 57, SX 183. The State also

4

introduced pen packets showing Crutsinger's convictions for burglary of a building; driving while intoxicated (twice); driving with a suspended license (twice); assault causing bodily injury; and recklessly causing injury to an elderly person. SX 179, 180, 181, 182, 184 185.

The State also had several witnesses testify as to Crutsinger's history of violence. Pamela Staples, his ex-wife, testified that Crutsinger abused her on several occasions particularly when she was pregnant. 31 RR 116-24. Joanne Shoemaker, a former live-in girlfriend of Crutsinger's, stated that he choked her until he thought she had passed out. 31 RR 61-63. Next, the record shows that Crutsinger got into a fight with his stepson, Robert Turner, and hit Turner with a telephone. 31 RR 71-72. Finally, Judy Bell testified that she lived with Crutsinger and that he was violent towards her. 31 RR 91.

The defense countered this testimony with Crutsinger's friends and family who all testified that he was a good man when he was not drinking. 32 RR 32-119. This testimony was supplemented by testimony that he had no disciplinary history while in jail, and by the testimony of Dr. Quijano, who spoke generally on the various levels of incarceration and the reduced opportunities for violence Crutsinger would have if sent to prison for life. 32 RR 2-8, 128-54. Finally, the defense evoked sympathy for Crutsinger and his inability to control his drinking

with testimony that Crutsinger's father, two of his siblings and his three children had died.  32 RR 67-69.

## STANDARD OF REVIEW

This petition is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997).  Under the AEDPA, "[t]his Court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2) (West 2002)).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result.  *(Terry) Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hernandez v. Johnson*, 248 F.3d 344, 346 (5th Cir. 2001).  Alternatively,

6

a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent from the Supreme Court's precedents but unreasonably applies it to the facts of a particular case. *Williams,* 529 U.S. at 407-09; *Hernandez*, 248 F.3d at 346.

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams*, 529 U.S. at 409-11; *Tucker v. Johnson*, 242 F.3d 617, 620-21 (5th Cir. 2001). Rather, federal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable. *Williams*, 529 U.S. at 411; *Martin v. Cain*, 246 F.3d 471, 476 (5th Cir. 2001). In other words, habeas relief is inappropriate when a state court, at a minimum, reaches a "satisfactory conclusion." *Williams,* 529 U.S. at 410-11 (citing *Wright v. West*, 505 U.S. 277, 287 (1992)).

Further, the Fifth Circuit has held that it is the state court's "ultimate decision" that is to be tested for unreasonableness, "not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should

be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (applying AEDPA deferential standard of review where state habeas writ was denied without explanation).  Indeed, state courts are presumed to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, the AEDPA deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Moreover, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## ANSWER

## I.   Crutsinger Is Not Entitled to an Evidentiary Hearing on His Claims.

Where a habeas petitioner has failed to fully develop the factual basis of his claims in state court, he is precluded from further factual development in federal court unless he can meet the narrow exceptions contained in 28 U.S.C. § 2254(e)(2). *(Michael Wayne) Williams v. Taylor*, 529 U.S. 420, 430 (2000). Specifically, section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A)   the claim relies on –
>
> > (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

A lack of diligence in developing the factual basis for a claim, on the part of an applicant or his counsel, constitutes "failure" and is sufficient to trigger the

9

restrictive requirements of this subsection.[4] (*Michael Wayne*) *Williams*, 529 U.S. at 432. In this regard, "[d]iligence. . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claim in state court." *Id.* at 435. Likewise, a "reasonable attempt" requires that a habeas applicant affirmatively seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.* at 437. "Mere requests for evidentiary hearings [in state court] will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." *Dowthitt v. Johnson,* 230 F.3d 733, 758 (5th Cir. 2000).

Under Texas law, an evidentiary hearing on an application for writ of habeas corpus is not necessary where the state court determines that no "controverted, previously unresolved factual issues" exist. *See* Tex. Code Crim. Proc. Ann. art. 11.071 §§ 8, 9 (West 2009). It follows that, where an applicant fails to make a reasonable attempt to prove the necessity for such a hearing – *i.e.*, that there *were* controverted, previously unresolved factual issues in need of resolution – that individual is not diligent in developing the facts that underlie his claim. For instance, in *Dowthitt v. Johnson*, the Fifth Circuit

---

[4]     This reading of the statute complies with Congress' intention that "prisoners who are at fault for the deficiency in the state-court record must satisfy a heightened standard to obtain an evidentiary hearing." *(Michael Wayne) Williams*, 529 U.S. at 433.

determined that a petitioner's mere request for an evidentiary hearing in state court, and that court's subsequent denial of his request, was not enough to lift him out of the restrictive rubric set forth in § 2254(e)(2). *Dowthitt*, 230 F.3d at 758. Specifically, Dowthitt failed to present affidavits to support his motion or show that those affidavits "could not be obtained absent an order or discovery hearing." *Id*. Moreover, Dowthitt's "proffers" of the evidence he would present at the hearing did not constitute due diligence. *Id*. Rather, the court concluded that a "reasonable person" in Dowthitt's position would have obtained affidavits to support his motion. *Id*.

In the instant case, Crutsinger requests an evidentiary hearing on his ineffective assistance of counsel claims. Petition at 63-64, DCT 30. Although Crutsinger generally requested a hearing in state court in his state habeas application, under the standard set out above, he has not shown the necessary diligence to be entitled to one. 1 SHCR 4, 143. In state court, Crutsinger did not present any affidavits supporting the need for an evidentiary hearing, nor did he demonstrate that affidavits could not be obtained absent an order or discovery hearing. In fact, Crutsinger did not ever argue the need for a hearing on these specific claims. Instead, Crutsinger simply requested a hearing in his opening and prayer for relief. *Id.* After reviewing the pleadings, the state habeas court concluded that no hearing was necessary. CR 1533. Consequently,

11

Crutsinger falls well short of the standard of diligence required to obtain an evidentiary hearing in federal court under section 2254(e)(2). *Cf. Dowthitt*, 230 F.3d at 758. Thus, as the Fifth Circuit has made clear, mere requests for evidentiary hearings are insufficient to establish diligence. *Riddle v. Cockrell,* 288 F.3d 713, 719 (5th Cir. 2002).

Despite these shortcomings, Crutsinger asserts without proof that state habeas counsel was unable to obtain affidavits in support of his allegations. DCT 30. These conclusory allegations are insufficient to show that Crutsinger was diligent in trying to obtain this information during state proceedings. Moreover, there is no record of Crutsinger's attempts to obtain the aid of the state courts in gathering such information, aside from the few lines in his state habeas application prayer for relief. Therefore, all of Crutsinger's arguments as to why he is entitled to a hearing amount to little more than a simple request before the state court, which the Fifth Circuit has already deemed to be insufficient. *Dowthitt*, 230 F.3d at 758; *Riddle,* 288 F.3d at 719.

Furthermore, even assuming that section 2254(e)(2) did not preclude an evidentiary hearing in federal court, Crutsinger is not necessarily entitled to such a hearing.

> Consistent with AEDPA's goal of streamlining the habeas process, § 2254(e)(2) specifies the situations where evidentiary hearings are allowed, not where they are required. Thus, if a petitioner seeking a hearing clears this initial hurdle, he must still persuade the

12

district court.  This subsequent determination is committed to the district court's discretion pursuant to Rule 8 of the Rules Governing § 2254 Cases.

*McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998).  Indeed, where a district court has before it sufficient facts to make an informed decision regarding the merits of a claim, that court does not abuse its discretion in refusing to grant an evidentiary hearing.  *Murphy v. Johnson*, 205 F.3d 809, 815-16 (5th Cir. 2000) (citing *McDonald*, 139 F.3d at 1060); *see also (Michael Wayne) Williams*, 529 U.S. at 436 (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus").  Because this Court has before it sufficient facts to make an informed decision regarding Crutsinger's claims, Crutsinger should not be permitted further unwarranted delay by means of a groundless evidentiary hearing.

## II.   Crutsinger's Claim Regarding the Admission of Evidence Allegedly Obtained in Violation of his Constitutional Rights Is Without Merit. (Claim 1)

In this first claim of error, Crutsinger argues the police violated his Fourth Amendment rights because the taint of his illegal arrest was not sufficiently attenuated to authorize the admission of his confession, DNA sample and other evidence.  Petition at 6-30.  But Crutsinger is not entitled to federal habeas relief on this claim because Fourth Amendment claims are not cognizable on federal habeas.  Furthermore, Crutsinger's assertion that his claim should be reviewed

13

despite this bar is contrary to circuit precedent.  For these reasons, Crutsinger's claim should be dismissed.

The Supreme Court held in *Stone v. Powell*, that state prisoners collaterally attacking their convictions under 28 U.S.C. § 2254 cannot obtain relief for violations of the Fourth Amendment exclusionary rule *when the prisoner was provided a full and fair opportunity* to litigate the Fourth Amendment issue in the state courts.  428 U.S. 465, 494-95 & n.37 (1976) (emphasis added); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) ("We generally are barred from reviewing Fourth Amendment claims on habeas review") (citing *Stone*).  As the Fifth Circuit makes clear,

> [a]n "opportunity for full and fair litigation" means just that: *an opportunity*.  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

*Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added); *ShisInday v. Quarterman*, 511 F.3d 514, 524-25 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 62 (2008).  Furthermore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," *Stone* forecloses

review. *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980)).

Crutsinger was certainly not deprived of the opportunity to litigate his Fourth Amendment claim in state court.  Prior to trial, counsel moved to suppress Crutsinger's confession, DNA sample and other physical evidence, and the court conducted a hearing.  24 RR 2-12.  Crutsinger objected at trial, preserved error, and then raised his Fourth Amendment claim on direct appeal.  Crutsinger's Direct Appeal Brief at 29-31.  Thus, not only did Crutsinger have the opportunity to litigate his Fourth Amendment claim in state court, but he exercised his option to do so.

Nevertheless, Crutsinger asserts that the *Stone* bar should not apply because the state court incorrectly applied Supreme Court precedent.  Petition at 10-30, (citing *Doescher v. Estelle*, 616 F.2d 205 (5th Cir. 1980) and *Gamble v. Oklahoma*, 583 F.2d 1161, 1164-65 (10th Cir. 1978)).  According to Crutsinger, the failure of the state courts to correctly apply constitutional law is a denial of an opportunity for full and fair litigation.  *Id.*  He then proceeds to argue that the Texas Court of Criminal Appeals' decisions were contrary to or an unreasonable application of Fourth Amendment law.  *Id.* at 14-30.  Yet Crutsinger makes no attempt to explain how the Texas court applied an incorrect standard (as seems

to be the test in the Tenth Circuit in *Gamble* and the clear implication of *Doescher*).

In *Doescher,* the Fifth Circuit vacated and remanded the district court's decision that an appellant was barred by *Stone* from challenging the validity of a search warrant as containing false statements.  616 F.2d at 206-07.  But the court did so only because the state court adjudicated appellant's claim under a procedure which was subsequently ruled unconstitutional by *Franks v. Delaware*, 438 U.S. 154 (1978), and on direct appeal, the Texas court was apparently unaware that *Franks* had been handed down in the time since Doescher's trial.  Similarly, in *Gamble*, the Tenth Circuit held that *Stone* does not foreclose a habeas corpus challenge if the state court "wilfully refuses to apply the correct and controlling constitutional standards."  583 F.2d at 1165.  But Crutsinger cannot demonstrate the lower court willfully disregarded clearly established law.  Further, even if he could, *Gamble* is not binding precedent.

More importantly, Crutsinger cannot get around the *Stone*-bar by simply re-arguing the actual underlying Fourth Amendment claim.  To allow such a mechanism would effectively nullify the *Stone* bar.  The Fifth Circuit rejects any concept that the term "full and fair opportunity" means the state court must correctly apply federal constitutional law because then "*Stone* becomes a nullity."  *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (error of

constitutional law did not vitiate opportunity for full and fair litigation); *see Bridgers v. Dretke*, 431 F.3d 853, 861 (5th Cir. 2005) (citing *Swicegood*); *Janecka*, 301 F.3d at 316, 320 ("The fact that Janecka may disagree with the district court's decision to overrule his objection [on Fourth Amendment grounds] is not sufficient to overcome the *Stone* bar"); *Sonnier v. Maggio*, 720 F.2d 401, 409 (5th Cir. 1983) (same).  Thus, even if the Court of Criminal Appeals somehow erred, Crutsinger has still not established that he was precluded from litigating his claim in state court.  Indeed, as the Fifth Circuit has previously held, the bar against federal habeas litigation of a Fourth Amendment claim applies despite any state court error in deciding the merits. *Swicegood,* 577 F.2d at 1324-25; *Brown*, 609 F.2d at 220 (holding *Stone*-bar applicable despite fact that consideration of Fourth Amendment claim by state habeas court had been prevented by court's error in holding that claim had already been presented); *Christian v. McKaskle*, 731 F.2d 1196, 1198-99 (5th Cir. 1984) (same); *see also Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (holding *Stone*-bar applicable despite trial court's initial decision to deny evidentiary hearing).

Here, a state process existed whereby Crutsinger could –and did– litigate his Fourth Amendment claims.  Therefore, *Stone* precludes federal review of Crutsinger's Fourth Amendment claim.  Finally, because Supreme Court

17

precedent is clear that federal courts may not re-litigate Fourth Amendment claims, for this Court to hold otherwise would violate the non-retroactivity principles of *Teague v. Lane, supra.* As such, Crutsinger's Fourth Amendment claim is not cognizable and accordingly should be dismissed.

### III. Crutsinger's Claims of Ineffective Assistance of Counsel Are Without Merit. (Claim 2)

In his second claim of relief, Crutsinger contends that his trial counsel was ineffective at all phases of trial for his failure to investigate. Petition at 31-55. Specifically, Crutsinger claims that his lawyers failed to complete their mitigation investigation on time – which he considers to be the suppression hearing before trial – and so failed to properly utilize the evidence discovered by his expert. *Id.* In addition, Crutsinger also disputes the presumption of correctness given to the state-court findings on this issue. Nevertheless, Crutsinger does not rebut these findings with clear and convincing evidence and does not show that the state courts applied an unreasonable interpretation of clearly established law in denying him relief. For these reasons, this claim should be denied.

### A. Standard of Review

The burden of proof in a habeas corpus proceeding attacking the effectiveness of counsel is on the petitioner, who must demonstrate both deficient performance and resultant prejudice. *Carson v. Collins*, 993 F.2d 461, 466 (5th

Cir. 1993). The familiar standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. In so doing, a convicted defendant must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992).

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Loyd*, 977 F.2d at 159. This showing of prejudice must be "rather appreciable"; thus, a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland. Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to

19

examine the other prong. *Strickland,* 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

### B. Crutsinger's claims relating to counsel's failure to investigate and present mitigating evidence are without merit.

Crutsinger alleges that his trial counsel were ineffective at all stages of trial due to their lack of investigation. But, as shown below, the record belies these assertions. Thus, Crutsinger is unable to prove either of the two required prongs of *Strickland*. This failure dooms Crutsinger's bid for federal habeas relief.

A petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have thereby benefitted. *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). In this case, Crutsinger claims that brain injuries from extensive drinking caused him to act impulsively and irrationally, which combined with bouts of depression effectively rendered him mentally ill. Petition at 45-55. He argues that had counsel discovered and presented this evidence, they could have 1) challenged the voluntariness of his confession pre-trial; 2) attacked the mens rea requirement of capital murder; and 3) presented evidence in mitigation of his disability. But, as much as he might wish it were otherwise, Crutsinger's claims of ineffective assistance of counsel must fail for two key reasons. First, because Crutsinger has not proven that

counsel's investigation was inadequate.  Second, because Crutsinger's proffered evidence is not so compelling as to prove he was prejudiced by counsel's failure to present it at any stage.

Despite Crutsinger's unsubstantiated claims, trial counsel's investigation was not lacking.  Counsel detail their thorough investigative work in an affidavit submitted to the state habeas court.  7 SHCR 1418-20.  The state habeas court expressly notes and approves of this investigation in its findings.  7 SHCR 1565-72.  And Crutsinger has not provided any clear and convincing evidence sufficient to overcome the presumption of correctness these findings are due.  Moreover, counsel sought to have not one but two experts appointed to examine Crutsinger and investigate his life.  1 CR 50; Exhibit F.  Indeed the very evidence that Crutsinger claims should have been presented – the investigation, opinions and conclusion of Dr. Goodness (Petition Exhibit C) – was from an expert retained by counsel.  Exhibit F.

Logically, it follows that if counsel knew of such evidence but did not present it, then counsel must have had a reason for doing so.  Indeed, a time-honored tenet of the familiar *Strickland* analysis is the presumption that counsel's strategic decisions cannot amount to ineffectiveness.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness.'" (*Ricky Lee) Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio,* 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)). Thus, counsel will not be deemed ineffective for failing to advance a defensive theory when his decision "was a reasonable strategic choice based upon a reasonable professional assessment of the plausibility of the defense and its likelihood of success." *Moreno v. Estelle,* 717 F.2d 171, 177 (5th Cir. 1983).

Even a quick review of the report of Dr. Goodness indicates that the conclusions are not entirely beneficial for Crutsinger. Petition Exhibit C. Specifically, Dr. Goodness notes that Crutsinger has anti-social personality disorder, is not mentally retarded, and has a history of violence against older women. Exhibit C, at 10-14, 17. It is entirely reasonable to believe counsel thought the jury would find this information more damning then any benefit that could be obtained by trying to show that Crutsinger was brain damaged.

Indeed, this case is a direct contrast to the case normally cited to when invoking a failure to investigate claim. *Wiggins v. Smith,* 539 U.S. 510 (2003). Because *Wiggins* is a case about an inadequate investigation, the decision necessarily relies upon a showing of not only what evidence counsel failed to present but also a showing that counsel was *unaware* such evidence existed. 539 U.S. at 518. Trial counsel for petitioner Wiggins admitted that they chose not

to explore their client's past because they decided to focus solely on the question of guilt/innocence. *Id.* In so choosing, counsel did not seek to have a social history prepared, which was standard practice in Maryland at the time and which would have revealed both the details and extensive nature of their client's suffering. *Id.* at 524. In light of both the extensive mitigation evidence and that counsel's actions were not within commonly accepted practices, the Supreme Court held counsel to be ineffective. *Id.* at 536. But Crutsinger has not made a persuasive showing that any credible mitigating evidence existed of which counsel was unaware. Because of this failure, Crutsinger has not demonstrated that trial counsel performed an inadequate investigation or was otherwise deficient.

Since counsel's investigation was thorough and complete, even accepting the Crutsinger's allegation that it was untimely,[5] relief is foreclosed on Crutsinger's claims that the punishment phase was improperly handled.

---

[5]    Crutsinger makes much of the fact that Dr. Goodness twice states that at least three months is required for a proper mitigation investigation. Petition at 34-41. Crutsinger in fact lays out a timeline showing that Dr. Goodness was not retained three months before trial. Petition at 34-36. But Crutsinger ignores the fact that Dr. Goodness still accepted the appointment despite the warnings to the contrary. Crutsinger Exhibit F. Moreover, Dr. Goodness's report is dated September 10, 2003, *before* the guilt-innocence phase of trial began. Crutsinger Exhibit C. Although it is not clear why there is this discrepancy, Crutsinger cannot show that it matters. Dr. Goodness was retained and furnished a report. Crutsinger's biggest complaint seems to be that trial counsel never requested a continuance but again Crutsinger is unable to demonstrate that it mattered.

Indeed, given the length of trial and the fact that counsel did not request a continuance, there is no indication that counsel had *not* completed their investigation and were in possession of Dr. Goodness's report before the guilt-innocence phase began.  Crutsinger Exhibit C, at 1 (dated September 10, 2003).  Thus, only in the pre-trial confession suppression hearing was done without the benefit of the doctor's report.

Yet counsel was not ineffective at the pre-trial stage.  Crutsinger argues that counsel should have used his brain damage and mental illness to challenge the voluntariness of his confession.  Petition at 38-49.  But saying this could have been done and doing it are very different things.  No where in Dr. Goodness's report does it indicate that Crutsinger was incompetent.  Furthermore, although the test of voluntariness includes looking at the totality of the circumstances, Crutsinger has not demonstrated a level of brain damage or trauma significant enough that the trial court would find that a confession he initiated (after being Mirandized) was involuntary.  Indeed, in Crutsinger's viewpoint, all long-term alcoholics and drug users are effectively so damaged as to be incapable of being responsible for their actions.  But no law supports such a radical view.  The American legal system has very tightly defined standards for competence and mental illness.  But as demonstrated by his failure to raise these issues as independent claims, Crutsinger cannot meet those standards and

24

his claim that counsel could have suppressed an otherwise voluntary confession with evidence of brain damage is unpersuasive.

As Crutsinger is unable to demonstrate that counsel's investigation was actually lacking, his claim that his trial counsel performed deficiently is also without merit.  Yet, even assuming that counsel were somehow deficient in failing to find this evidence earlier or in failing to present it, Crutsinger cannot prove prejudice.  Evidence of his alleged brain injuries is weak, would likely be confusing to a jury, and was overcome by the violence of stabbing to death two elderly women in their own home. *See Santellan v. Cockrell,* 271 F.3d 190, 198 (5th Cir. 2001) (overwhelming evidence of violence negates probability that mitigating evidence of brain damage would have resulted in a different outcome). Even if Crutsiner's experts could have convinced the jury he suffered from such damage, it is not clear this evidence would have been viewed as mitigating by the jury. *Martinez v. Dretke*, 404 F.3d 878, 889 (5th Cir. 2005).  There is no clear indication that the jury would have believed that Crutsinger's poor impulse control and explosive alcoholic personality, would render him more sympathetic or less dangerous.

Crutsinger has not established that counsel conducted an inadequate investigation.  He has not shown that his lawyers were otherwise deficient in selecting an unsound trial strategy.  And he has not demonstrated that trial

25

counsel were in any way deficient. Crutisinger has also not proven he was prejudiced by any of counsel's alleged deficiencies. In light of his utter failure to establish the merits of his underlying claim, the actions of the state habeas courts are not an unreasonable application of clearly established law. As such, his claims of ineffective assistance of counsel should be denied.

## IV.   Crutsinger's Claim of Actual Innocence is Procedurally Defaulted, Not Cognizable, and Without Merit.

In his final request for relief, Crutsinger claims that he is actually innocent of capital murder. Petition at 56. Specifically, Crutsinger alleges that years of alcohol abuse rendered him brain damaged to the point of mental illness. And this mental dysfunction is recognized in Texas law as "settled insanity," which he asserts is capable of defeating the mens rea requirement of the capital murder statute. Petition at 56-62. But Crutsinger's claim fails for numerous reasons, not the least of which is that he misuses the term actual innocence and is really asserting mere legal innocence. As amply demonstrated below, federal habeas relief is foreclosed by his failure to raise this claim in the state courts and his failure to demonstrate a violation of his federal constitutional rights.

### A. Crutsinger never raised this claim in the state courts and, thus, the claim is both unexhausted and procedurally defaulted.

Crutsinger has never presented his claim of actual innocence to the state courts. Although Crutsinger does not outright acknowledge this fact, tellingly, the headings for his other two grounds for relief specifically note where the other claims were raised in the state courts. For his final claim, no such citation is given. Accordingly, Crutsinger's claim is unexhausted and now procedurally defaulted.

The exhaustion doctrine codified in 28 U.S.C. § 2254(b)(1) reflects a policy of comity consistently adhered to by the Supreme Court and the Fifth Circuit. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971); *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5th Cir. 2000). Thus, before a federal court will entertain the alleged errors, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990). This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction. *Picard*, 404 U.S. at 275-76.

Where a petitioner "advances in federal court an argument based on a legal theory distinct from that relied on in the state court, he fails to satisfy the exhaustion requirement." *Nobles v. Johnson*, 127 F.3d at 420 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n. 5 (5th Cir. 1983)). Moreover, state court remedies are not exhausted when "material additional evidentiary support [is presented] to the federal court that was not presented to the state court," even if the evidence "came into existence after the state habeas relief had been denied." *Dowthitt*, 230 F.3d at 745-46 (quoting *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) and *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986)).

In order to satisfy exhaustion, all of the grounds raised in a federal application for writ of habeas corpus must have been "fairly presented" to the state courts prior to being presented to the federal courts. *Id*; *Nobles*, 127 F.3d at 420. The Supreme Court has reasoned that the purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney*, 504 U.S. at 10. "Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court." *Id*.

As Crutsinger has never presented this claim either on direct appeal or in state collateral review, he has clearly failed to exhaust state court remedies. It

28

is well settled that habeas relief "shall not be granted" under any circumstances unless it appears that "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1) (West 2009). It is equally clear, however, that Crutsinger would be barred from raising this claim in a successive state habeas application under Texas Code of Criminal Procedure, Article 11.071, Section 5(a).[6] "Because [the exhaustion] requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (internal citations omitted); *see also Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Graham*, 94 F.3d at 969 ("exhaustion is not required if it would plainly be futile"). Nonetheless, such an unexhausted claim is subject to denial in federal court as procedurally defaulted. Further "[a]lthough AEDPA authorizes a district court to *deny* relief on an unexhausted claim, it does *not* authorize a district court to *grant* relief on an unexhausted claim, 'unless the State, through counsel, expressly waives the requirement'." *Alexander v. Johnson,* 163 F.3d 906, 908 (5th Cir. 1998) (emphasis added). Although under

---

[6]      Article 11.071, Section 5(a), which became effective September 1, 1995, provides that a state court may not consider the merits of, or grant relief on claims presented in a successive state-habeas application absent facts giving rise to a statutory exception. Crutsinger has made no showing that one of the Article 11.071 exceptions would apply to allow review of these claims in state court.

*Harris v. Reed*, 489 U.S. 255, 265 (1989), federal review of a habeas claim is procedurally barred only if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default,

> [t]his rule does not apply if the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1989). Further, "the procedural bar which gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default," or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Gray*, 518 U.S. at 162 (barring claim on basis that claim would be barred in state court if it were presented there); *Coleman*, 501 U.S. at 750; *Nichols v. Scott*, 69 F.3d 1255, 1280 (5th Cir. 1995).

Therefore, the Fifth Circuit has held that a petitioner's failure to exhaust a claim that is clearly foreclosed by Article 11.071, Section 5(a), is an adequate state procedural bar foreclosing federal habeas review of the claims. *Nobles*, 127 F.3d at 422; *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998). Crutsinger

30

does not attempt to distinguish his case from *Nobles* and *Muniz*; nor does he attempt to demonstrate cause and prejudice for his failure to raise the claims in state court.  Further, although Crutsinger does claim he is actually innocent, actual innocence is his free-standing claim, thus, the miscarriage of justice exception does not apply.  Circuit precedent compels the denial of this claim as procedurally defaulted.

### B.   Actual innocence claims are generally not cognizable in federal habeas review.

Despite the fact that Crutsinger's claim is procedurally barred from federal habeas review, this Court can easily dismiss the claim as not cognizable.  Indeed, Crutsinger is mistaken in his contention that actual innocence is a generally valid ground for federal habeas relief.  According to the Supreme Court, the existence of evidence relevant to the guilt of a state prisoner is not a ground for federal habeas corpus.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (*quoting Townsend v. Sain*, 372 U.S. 293, 317 (1963)).  The Supreme Court states further:

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding....  This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact.

*Herrera*, 506 U.S. at 400.   Although *Herrera* leaves open the possibility that a truly innocent death-sentenced individual could one day conclusively prove innocence such that habeas relief might be granted, as Crutsinger notes the Court has never defined what those "extraordinarily high" requirements might be.   *Id.* at 417; Petition at 56.   Regardless of whatever this hypothetical showing might entail, Crutsinger has not made a sufficient showing here.   Therefore, because claims of actual innocence fail to state a claim in federal habeas corpus, Crutsinger's claim must be dismissed.   *Lucas v. Johnson*, 132 F.3d 1069, 1075-76 (5th Cir. 1998).

Second, even assuming that a *Herrera* innocence claim exists,[7] Crutsinger has not presented such a claim to this Court.   As defined by the Fifth Circuit, actual innocence is "'where the petitioner shows, as a *factual* matter, that he did not commit the crime of conviction.'"   *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (*citing Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)) (emphasis added).   The Fifth Circuit has previously stated that the types of new evidence tending to establish actual innocence include: "exculpatory scientific evidence,

---

[7]   Notably, there is not one case that has met the undefined burden established by *Herrera*.   Furthermore, the Court clearly stated that there must be an absence of state remedies, something which Crutsinger has not attempted to prove, particularly since he never raised this claim in state court.   More importantly, Texas recognizes actual innocence as an independent legal claim.   *Ex parte Thompson,* 153 S.W.3d 416, 417 (Tex. Crim. App. 2005) (citing *Ex parte Elizondo,* 947 S.W.2nd 202, 205 (Tex. Crim. App. 1996)).

credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence," *id.,* or in other words, proof that someone other than the defendant committed the crime. "Actual innocence means 'factual innocence, and not mere legal insufficiency.'" *United States v. Jones,* 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States ,* 523 U.S. 614, 623 (1998)). Thus, Crutsinger's main contention that he did not possess the required mens rea, *not that he did not commit the murders,* is not an actual innocence claim. As shown in the next section, Crutsinger's "innocence" claim – really a sufficiency of the evidence claim – is also without merit.

### C.   Crutsinger's claim that he lacked the requisite mens rea is without merit.

Finally, even if this Court reviews Crutsinger's "innocence" claim, there is no basis for granting habeas relief. As noted above, Crutsinger has actually presented a claim of legal innocence which this Court should construe as a claim of insufficient evidence. But the physical evidence and Crutsinger's confession foreclose any possibility of granting relief under *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979). Further, any question of Crutsinger's intent is surely resolved by a review of the brutal and violent way that he killed two elderly women. For policy reasons alone, no amount of alcohol or other self-inflicted damage should ever excuse such a vicious and heinous attack.

Moreover, Crutsinger's evidence of a history of alcoholism which he contends left him so brain-damaged as to eviscerate his ability to form intent is unpersuasive. Crutsinger presents only a handful of articles that alcoholism can cause brain damage and the report of his expert speculating that this could explain Crutsinger's poor functioning. Petition, Exhibits A-C, G. But even accepting this evidence as true, Crutsinger fails to prove a level of dysfunction great enough to demonstrate severe incapacity. Even if Crutsinger could prove such incapacity it would be more appropriate to raise a competency claim than an actual innocence one.

Furthermore, Crutsinger's legal propositions are equally unavailing. Crutsinger cites a case from 1892, for the proposition that while being drunk at the time of an offense is not a defense, a longtime history of alcoholism could be. Petition at 59 (citing *Evers v. Texas,* 31 Tex. Crim. 318, 330; 20 S.W.2d 744, 748 (Tex. Crim. App. 1892)). He also cites to Texas law demonstrating the admissibility of evidence of mental impairment to negate mens rea. Petition at 61-62. But the question of whether "settled insanity" remains good law is a state law question for the state courts to answer. And the admissibility of such evidence is irrelevant to the question before this Court: Whether Crutsinger can demonstrate a violation of his federal constitutional rights? Fundamentally, Crutsinger cannot show that the processes used to convict him were

34

fundamentally unsound.  Neither can he make, nor does he even try to make, a truly persuasive showing that he did not commit this crime such to implicate the Supreme Court's concern in *Herrera.*  For these reasons, this Court should deny Crutsinger's claim of "actual innocence."

## CONCLUSION

For the foregoing reasons, Crutsinger's petition for writ of habeas corpus should be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

ERIC J.R. NICHOLS
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction
Litigation Division

/s/ Ellen Stewart-Klein
*ELLEN STEWART-KLEIN
Assistant Attorney General
Texas Bar No. 24028011
P. O. Box 12548, Capitol Station
Austin, Texas   78711
Tel:  (512) 936-1400
Fax: (512) 320-8132
Ellen.Stewart-Klein@oag.state.tx.us

* Attorney-in-charge

35

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that on April 2, 2009, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court.  The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Lydia M.V. Brandt, Esq.
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, Texas 75085-0843
lydiamb@airmail.net

/s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General

36