IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | |
|---|---|
| BILLY JACK CRUTSINGER<br><br>*Petitioner*,<br><br>v.<br><br>RICK THALER, Director<br>Texas Department of Criminal Justice,<br>    Correctional Institutions Division<br><br>*Respondent*. | Action No. 4:07-CV-00703-Y |

**OPPOSED
MOTION TO ALTER OR AMEND THE JUDGMENT
UNDER FED R. CIV. PROC. 59(e)**

Petitioner BILLY JACK CRUTSINGER (Crutsinger or Petitioner) asks the Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to correct manifest errors of law and fact with respect to its February 16, 2012 Opinion and Order Denying Petition for Writ of Habeas Corpus, [Doc. #48] (hereinafter "2012 Order") and judgment. [Doc #49].

As grounds for his Rule 59(e) motion, Petitioner would show:

1.      On October 30, 2008, Mr. Crutsinger filed a petition for writ of habeas corpus. [Doc #31].

2.      On February 6, 2012, the district court judge entered an order in which it denied habeas relief that Mr. Crutsinger had requested in his petition for writ of habeas corpus. [Doc ## 48, 49].

3. Mr. Crutsinger now files this FED. R. CIV. PROC. 59(e) motion. "A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). A FED. R. CIV. PROC. 59(e) motion "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 479. It "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Id.*

**THIS COURT DENIED RELIEF ON A CLAIM THAT WAS NEVER ASSERTED BY PETITIONER & EXPLICITLY FAILED TO ADDRESS THE CLAIM ACTUALLY BEFORE THE COURT**

4. In its 2012 Order, this Court explicitly held that it was not addressing a claim that trial counsel failed to adequately investigate before trial: "To be clear, Petitioner does not contend that the social-history investigation was less than thorough or overlooked any helpful information...." 2012 Order at 15, 16 n.8. Then, the Court clearly treated the claim as one in which Petitioner challenged counsel's strategic decisions about whether to present information within their possession:

> In ground two, Petitioner contends trial counsel initiated the social-history investigation too late, ***which prevented counsel from using evidence obtained by the mitigation specialist*** of Petitioner's alcohol addiction, head trauma, depression, and low intelligence. Petitioner contends ***this evidence should have been used*** to (1) challenge the admission of his confession and the tainted fruits thereof, (2) present a "settled insanity" defense and rebut the culpable mental state, and (3) mitigate evidence of his antisocial personality disorder.

2012 Order at 7–8 (emphasis added). The Court proceeded to deny relief on a much weaker allegation than the ground for relief Petitioner actually asserted.

5.    It is manifest error for this court to have mistakenly recast Mr. Crutsinger's Second Ground as ineffective assistance (IAC) for *failure to present*[1] the testimony of Dr. Mills, Dr. Goodness, and the Goodness report at the trial, and thereafter deny relief on the merits. While it is true that Mr. Crutsinger contended that the investigation had been done on the eve of trial, Mr. Crutsinger's claim is not a claim of strategy based on information that was known to counsel – contrary to the court's opinion and the Respondent's Answer. *See* 2012 Order at 7[2]; Answer, p. 21.[3]

6.    The crux of Ground Two is a *failure to investigate* further based on what was known, as this court recognized in its 8/17/2009 order denying the Motion for Evidentiary Hearing.[4]

---

[1]    *See* 2012 Order at 12 ("The record also supports counsels' assertion that the expert testimony would not have benefitted the defense"); 2012 Order at 24 ("Petitioner's remaining allegation regarding counsels' representation is that counsel should have presented the mental-deficiency evidence in Dr. Goodness's report to mitigate punishment."). It has never been Mr. Crutsinger's contention that Dr. Goodness and Dr. Mills should have been called as trial experts, and/or that the Goodness report should have been introduced at trial.

[2]    *See* 2012 Order at 7 ("In ground two, Petitioner contends trial counsel initiated the social-history investigation too late, which prevented counsel from using evidence ... of ... alcohol addiction, head trauma, depression, and low intelligence" to challenge the confession, *mens rea*, and act as mitigating evidence)

[3]    *See* Answer, p. 21 ("Despite Crutsinger's unsubstantiated claims, trial counsel's investigation was not lacking..... Logically, it follows that if counsel knew of such evidence but did not present it, then ....)

[4]    The order denying the Motion for Evidentiary Hearing recognized the claim as a failure to adequately investigate, and not a failure to present. The order recites:

> ... [Mr. Crutsinger] contends that his trial counsel were constitutionally ineffective in *failing to conduct an adequate investigation* and presentation of Crutsinger's mental health in both the guilt/innocence and punishment phases of his trial, with an emphasis on the theory of involuntary alcohol addiction as not only a critical mitigation issue but also a *mens rea* issue to negate guilt. (Pet. at 31-54.)

(Emphasis supplied) Order [Doc #42, p. 4].

Ground Two pivots on the red flags in the Goodness report, which placed counsel on notice of the need to investigate further. Only after further investigation and sufficient development of evidence of brain impairment, and the psycho-social history of Mr. Crutsinger, could counsel then make an informed decision on whether to present such evidence or not.

 7. To quote from the Petition:

> trial counsel's ineffectiveness lay not in their failure to present evidence of Mr. Crutsinger's mental impairments in all phases of the trial, but rather in their failure to conduct a timely ***and adequate investigation sufficient to support the reasonableness of the "strategic" decisions they made in the defense of Mr. Crutsinger***. *Wiggins v. Smith*, __U.S. __, 123 S.Ct. 2527, 2535 (2003) ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, ***counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary***.").

Fed. Hab. Pet. at 54.

 8. <u>*IAC Prong I (Deficient Performance) – The Red Flags*</u>: The report of Dr. Goodness raised several red flags that put counsel on notice that additional investigation was required:

- "Billy Jack also displayed an abnormal amount of subtest scatter on the Performance IQ Scale in that less than 5% of people in the normal population display a comparable amount of performance subtest variability," Report at 9 – which would have placed competent counsel on notice to investigate for brain damage, and concomitant legal theories;

- The report reflects a genetic predisposition to, and long-standing alcohol addiction (from age 17 to age 48 at the time of the offense), Report at 6 – which would have placed competent counsel on notice to investigate for brain damage, and concomitant legal theories pivoting on long-standing, alcohol-induced dementia, which the *Evers* court held negates criminal responsibility, *see* Fed. Hab. Pet. at 50;

- The report contained only two paragraphs on his early development. Report at 5 – which would have placed competent counsel on notice to further

investigate Mr. Crutsinger's psycho-social history;[5]

---

[5]  In *Ex parte Gonzales*, 204 S.W.3d 391 (Tex. Crim. App. 2006), granting relief to Gonzales, the Texas Court of Criminal Appeals plainly announced that, in a post-1991 trial, capital defense counsel were ***required*** to investigate the client's childhood and mental health. Gonzales was sentenced to death on February 19, 1997, the representation at issue in *Gonzales* spanned all of 1996, long before Mr. Crutsinger's trial. Thus, *Gonzales* defines the well-established standard of care in Texas at the time of Mr. Crutsinger's trial. *See Bobby v. Van Hook*, __ U.S.__, 130 S.Ct. 13, 18 (2009) (*per curiam*) (trial counsel's performance must be assessed against "the prevailing professional practice at the time of the trial").

Judge Cochran wrote a concurring opinion in *Gonzales* further clarifying the applicable professional norms, and outlining suggested topics of inquiry, many of them pertaining to a defendant's childhood and family history:

> *At a minimum, defense counsel must privately quiz his client about any and all positive and negative facts about the defendant's upbringing, personality, social interactions, thoughts and feelings. It is not sufficient to inquire generally and leave it up to the defendant to raise topics or respond to open-ended questions.* Like a doctor, defense counsel must be armed with a comprehensive check-list of possibilities, and forcefully inquire about each topic. Such topics might include:
>
> 1.  Childhood accidents and injuries;
> 2.  Trips to the emergency room;
> 3.  Serious illnesses at any time;
> 4.  Physical abuse to the defendant or any other member of the family;
> 5.  Any sexual abuse to the defendant or any other member of the family;
> 6.  Size of the immediate family, and a history of the physical, educational, and emotional background of each member;
> 7.  The defendant's relationship with and attitudes toward every member of the family;
> 8.  Drug or alcohol use or abuse by himself and any or all members of the family;
> 9.  Any mental health treatment of any member of the family, including the defendant;
> 10. The cohesiveness of the family;
> 11. The family's standard of living and living conditions;
> 12. Any and all available school records;
> 13. Any record of learning disabilities;
> 14. Childhood and adult social relationships with members of the same and opposite sex;
> 15. Any marriage, divorce, children, step-children, or surrogate family relationships, and their positive or negative influence upon the defendant;
> 16. Any and all awards, honors, or special accomplishments, as well as any and all convictions, arrests, expulsions or suspensions from school, job firings, etc.;
> 17. Any and all traumatic experiences;
> 18. Any and all especially proud moments;

- the report advises that "neuropsychological testing may shed some additional light on Billy Jack's brain functioning deficits." Report at 10.

(Exhibit C: Report of Dr. Goodness, dated September 10, 2003).

9. Counsel could not have made an *informed* strategic decision about their punishment phase defense without first investigating. Termination of mitigation investigation is only appropriate in the context of an informed decision, after a professionally reasonable investigation. *Rompilla v. Beard*, 545 U.S. 374, 395-396 (2005) ("the attorneys' decision not to obtain Rompilla's prior conviction file was not the result of an informed tactical decision about how the lawyers' time would best be spent. .... Rather, their failure to obtain the crucial file "was the result of inattention, not reasoned strategic judgment."); *Wiggins v. Smith*, 539 U.S. 510, 527–28 (2003) ("In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further").

10. The Supreme Court has held that courts may not defer to counsel's allegedly strategic decisions in the absence of a reasonable investigation in light of the circumstances:

> This point is plain in *Williams:* We rejected any suggestion that a decision to focus on one potentially reasonable trial strategy—in that case, petitioner's voluntary confession—was "justified by a tactical decision" when "counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." 529 U.S., at 396. A "tactical decision" is a precursor to concluding that counsel has developed a "reasonable" mitigation theory in a particular case.

*Sears v. Upton*, 130 S.Ct. 3259, 3265 (2010).

---

19. Membership in religious, social, educational, charitable organizations;
20. The client's five best and worst memories.

*Ex parte Gonzales*, 204 S.W.3d at 400 (Cochran, J., concurring)

The red flags in the Goodness report would have prompted professionally reasonable counsel to have conducted further investigation, with the goal of developing brain-impairment and psycho-social history evidence.[6] Only after this evidence was adequately investigated and developed, could counsel have made an informed, strategic decision about the presentation of evidence. *Porter v. McCollum*, 130 S.Ct. 447, 453 (2010) ("In *Wiggins v. Smith*, . . . we held counsel 'fell short of . . . professional standards' for not expanding their investigation beyond the . . . records they obtained, particularly 'in light of what counsel actually discovered' in the records."); *see also id.* ("like the

---

[6] Dr. Goodness informed trial counsel that "[f]urther neurospychological testing may shed some additional light on [Petitioner's] brain functioning deficits." Petition, at Exhibit C, p. 10. She opined that "'chances are' Petitioner's brain is damaged from alcohol abuse...." 2012 Order at 12. The gravamen of Petitioner's complaint is that counsel failed to take the next step and obtain a qualified, neuropsychologist. Neither the trial psychiatrist, Dr. Mills, nor the forensic psychologist, Dr. Goodness, were qualified to conduct neuropsychological testing.

This Court read Dr. Goodness's report as "caution[ing] against the usefulness of further neuropsychological testing ...." 2012 Order at 12. It is clear that Dr. Goodness' alleged caution, if any, stemmed from uncertainty about whether further testing could establish a nexus between the potential brain damage and his alcoholism, Report at 10, and that Dr. Goodness was laboring under a ***legally incorrect*** definition of mitigating evidence in which "mitigating evidence" was limited to evidence that has a direct nexus to the crime. *See* Report at 12 (assessing the factors that "produce the event.").

First, the etiology (or cause) of brain damage (whether from alcohol or injury) is ***irrelevant***. Brain damage is mitigating, *i.e.* a fact upon which a jury could base a life sentence, regardless of whether it was caused by Mr. Crutsinger's alcoholism, car accident, or both.

Second, regardless of what Dr. Goodness believed, trial counsel should have known that mental impairments are mitigating evidence without regard to whether it "produced" the crime. *See e.g. Williams v. Taylor*, 529 U.S. 362, 396 (2000) ("They failed to seek prison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described Williams as among the inmates "least likely to act in a violent, dangerous or provocative way.").

Dr. Goodness informed counsel that her investigation revealed good reason to believe that further testing would prove that Mr. Crutsinger was in fact brain damaged. Counsel were deficient for failing to follow up on this glaring lead.

7

counsel in *Wiggins*, [counsel] ignored pertinent avenues for investigation of which he should have been aware."). Trial counsel's unreasonable omission in Petitioner's case was terminating their investigation without acting on the information before them that indicated the necessity of further factual development, including testing for brain damage.

11.     It is likely that this adequately investigated and developed evidence would have allowed Mr. Crutsinger to:

- raise *in*voluntary intoxication[7] as a result of a long standing addiction (age 17 to age 48 at the time of the offense);

- assert a *non*-voluntary, *non*-knowing waiver of rights pertaining to his confession, due to compromised frontal lobe functioning (an area of the brain which governs judgment, decision-making, and impulsivity) whether because of *in*voluntary alcohol-induced dementia or head injury from the accident (etiology is irrelevant);

- negate the *mens rea* element of capital murder,[8] again as a result of compromised frontal lobe functioning; and

---

[7]     The opinion recites that "voluntary intoxication does not constitute any defense to the commission of a crime," 2012 Order at 21. This holding is more confirmation of counsel's deficient performance in failing to seek a mental health expert qualified to address the *in*voluntariness of Mr. Crutsinger intoxication, given his genetic predisposition to alcohol intoxication, and his history of heavy alcohol consumption for more than 30 years.

[8]     The opinion misunderstands Mr. Crutsinger's argument about "settled insanity." 2012 Order at 19-23. Even if *Jackson* and *Ruffin* is unavailing because they had not been decided on the date of Mr. Crutsinger's offense, Mr. Crutsinger lacked the necessary *mens rea* under the concept of "settled insanity" as held in *Evers v. State*, 31 Tex. Crim.. 318, 330; 20 S.W. 744, 748 (Tex. Crim. App. 1892):

> ...the breaking down of the person's system by long continued or habitual drunkenness, ... is what is called **'settled insanity,'** .... [because of which] ***there is no criminal responsibility***;

Mr. Crutsinger was *not* arguing that "settled insanity" is the same as the insanity defense of TEX. PENAL CODE 8.01.

- demonstrate in the punishment phase that Mr. Crutsinger was less morally culpable because the alcoholic rages and concomitant violence were a *non*-volitional product of his frontal lobe impairment, genetics and family background and environment.

12. Absent this investigation, the deficient performance of trial counsel left Mr. Crutsinger without a credible response to the prosecution's case-in-chief, which presented a false and damaging picture of Mr. Crutsinger as "evil." *See* Fed. Hab. Pet. at 47, *citing* RR 33:5 (Prosecutor: "There is nothing that would explain or justify this propensity for violence, nothing that mitigates this; nothing but the concept of alcoholism. The offense has nothing to do with alcohol. It is a result of evil."). The prosecutor's argument rendered counsel's omissions all the more prejudicial. *See Sears v. Upton*, __ U.S. __, 130 S.Ct. 3259, 3262 (2010) (counsel's deficient performance allowed the prosecution to paint a false and damaging picture of a defendant's background).

13. Having been denied funding for investigative and expert assistance in this federal habeas litigation, Mr. Crutsinger was unable to meet his burden of proof for Ground Two. Mr. Crutsinger was left pointing to the red flags in the Goodness report, and submitting articles on the association between brain damage and non-volitional aggression (which the opinion characterized as "equivocal at best"); following therefrom, purporting to perform a *de novo* review the court denied habeas relief on the merits.

## THE 2008 ORDER AND THE 2012 ORDER ARE IRRECONCILABLE IN THEIR RULINGS ON PROCEDURAL DEFAULT

14.     As will be more fully discussed below, the 2008 Order and the 2012 Order result in manifest injustice because they are irreconcilable on their rulings on procedural default, which in turn caused a catastrophic effect on funding and resulted in an adverse ruling on the merits of Ground two.

15.     *IAC Prong II (Prejudice)*: In order to carry his burden of proving prejudice, Mr. Crutsinger sought pre-petition funding[9] for a mitigation investigator and a mental health expert.[10]

16.     Under 18 U.S.C. § 3599(f), a court can grant funding "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant." Fifth Circuit precedent interpreted the phrase "reasonably necessary" to mean the petitioner had to demonstrate a "substantial need," but that a ***"petitioner cannot show a substantial need when his claim is procedurally barred from review."***[11]

17.     The May 21, 2008 order, [Doc #18] (hereinafter "2008 Order"), denied pre-petition funding on the basis that Ground Two was unexhausted *and procedurally defaulted*:

---

[9]     Mr. Crutsinger does *not waive* the sealed, ex parte nature, by referring and citing to ex parte sealed pleadings and orders in this case at bar.

[10]    *See Ex parte* sealed Doc. #13, and Mitigation Investigator affidavit, paras. 13, 14, 15; *Ex parte* sealed Motion to Supplement and Amplify Mr. Crutsinger's Application for Authorization for Funding and Appointment of Mental Health Expert, to Be Heard Ex Parte and to be Placed Under Seal.

[11]    *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004) ("This Court has construed "reasonably necessary" to mean that a petitioner must demonstrate "a substantial need" for the requested assistance. *Clark v. Johnson,* 202 F.3d 760, 768 (5th Cir.2000); *Fuller,* 114 F.3d at 502. A petitioner cannot show a substantial need when his claim is procedurally barred from review. *Fuller,* 114 F.3d at 502").

> While not specifically acknowledging that the claim for which funding is sought was not presented to the state courts [Second Ground], Petitioner's entire argument is premised upon that assumption. Therefore, this Court will consider the claim for which funding is sought as not having been presented to the state courts and therefore unexhausted and procedurally barred from review ... Doc #18, pp. 2-3.    ....
>
> [T]here is an abundance of case law establishing that the ineffective assistance of state habeas counsel[12] cannot justify a failure to comply with the exhaustion requirement or excuse any resulting procedural default." Doc #18, p. 6.

18.     The 2012 Order denied Ground Two on the merits, but in stark contrast to the 2008 Order, the 2012 Order declined to apply the procedural bar. As to Ground Two, the 2012 Order reasoned:

> "The claims presented in state court alleged a general failure to investigate, failure to adequately communicate with the client, and an attempt to coerce a guilty plea. ....
>
> The present claims [Ground Two] are, therefore, unexhausted. ....
>
> Respondent, however, does not assert a procedural bar based on the failure to exhaust, as he does against the third ground for relief.[13]....
>
> Nor does the Petition or Reply anticipate any such defense by presenting arguments to over come a procedural bar. Under these circumstances, where the omission appears to be the result of a deliberate decision rather than inadvertent omission, the Court is not inclined to apply a procedural bar *sua sponte*.

2012 Order at 8, n. 5.

---

[12]     The holding – that there is no constitutional right to effective assistance of counsel in state habeas proceedings – was the subject of a grant of certiorari on June 6, 2011, in a non-capital case, *Martinez v. Ryan*, ___ U.S. ___, 2011 WL 380903, No. 10-1001 (June 6, 2011). The grant of certiorari was from a decision of the United States Court of Appeals for the Ninth Circuit holding that there is no constitutional right to the effective assistance of counsel in state habeas proceedings. At least four Justices of the Supreme Court now question this premise. Mr. Crutsinger requests that this Court stay and abey his case pending a Supreme Court ruling on *Martinez*.

[13]     Respondent's failure to invoke the procedural bar is all the more conspicuous in this case because it had the benefit of knowing, from the 2008 Order, that the court was predisposed to apply one.

19. Thereafter – and having denied Mr. Crutsinger pre-petition funding to investigate and develop the factual basis of his claim – the 2012 Order purports to engage in a *de novo* review:

> The substance of this three-part claim was not developed or presented in the state-court proceedings. As this Court has previously determined, Petitioner's failure to develop the factual basis of these claims in state court bars any factual development in this Court. [*citing* Doc #42, Order Denying Motion for Evidentiary Hearing] .... Nevertheless the record contains sufficient facts to make an informed decision on the merits, and the Court will review the claims *de novo* [*citing* 28 U.S.C. §2254(e)(2); *Porter v. McCollum*, 130 S.Ct. 447, 452 (92009); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009); *Hernandez v. Thaler*, 398 Fed. Appx. 81, 85 n.1 (5th Cir. 2010).

2012 Order at 8-9.

### *Procedural Bar – or Not*

20. Under the 2012 Order, there is no procedural bar to Ground Two. In light of the subsequent development that the State waived procedural default on Ground Two, the basis for the 2008 Order denying funding no longer exists. Hence, because Mr. Crutsinger had demonstrated a "substantial need" under 18 U.S.C. § 3599(f), this Court was (and is) required to grant funding and allow Mr. Crutsinger to investigate, develop and present facts to prove prejudice <u>before</u> this court can perform a *de novo* review.

21. A similar result may be obtained under the 2008 Order – if the U.S. Supreme Court decides the currently pending *Martinez* case in a manner favorable to Mr. Crutsinger.

22. The premise in the 2008 Order denying pre-petition funding –  that there is no constitutional right to effective assistance of counsel in state habeas proceedings – was the subject of a grant of certiorari on June 6, 2011, in a non-capital case, *Martinez v. Ryan*, ___ U.S. ___, 2011 WL 380903, No. 10-1001 (June 6, 2011). The grant of certiorari was from a decision of the United States Court of Appeals for the Ninth Circuit holding that there is no constitutional right to the

effective assistance of counsel in state habeas proceedings. At least four Justices of the Supreme Court now question this premise.

23. The United States Supreme Court also granted a stay of execution to John Balentine, a case cited in the 2012 Order, which recognized that "Balentine's execution was stayed in 2011 pending resolution of an unrelated issue.[14] *See* 2012 Order at 7, n.4.

24. Shortly thereafter, the Supreme Court also stayed the execution of Mr. Cleve Foster, notwithstanding that Mr. Foster's state successive petition was the first time the issue of ineffective assistance of state habeas counsel had been raised. *See Foster v. Texas*, No. 11-6427. Unlike several other Texas defendants who were executed despite the grant of certiorari in *Martinez*, Mr. Foster's federal habeas counsel had in prior years litigated the right to discovery and funding to investigate the claims that state habeas counsel had defaulted, although an IAC-of-state-habeas-counsel claim had not been raised in the body of the federal habeas petition itself.

25. In his certiorari petition, Mr. Foster had alleged:

In the wake of the dismal performance of appointed state habeas counsel, Mr. Foster requested and received new counsel .... for federal court. Federal counsel identified and attempted to investigate and raise the claims that trial counsel were ineffective in failing to fully present to the jury..... The federal district court denied all of Mr. Foster's requests for assistance, granted only the most minimal funding, found the claims unexhausted and defaulted, and denied relief. [cert. pet. at 3].

---

[14] The petition for writ of certiorari, *Balentine v. Texas*, No. 10-11036, presents the question:

Whether a defendant in a state capital proceeding who cannot raise on direct appeal any claim of ineffective assistance of trial counsel—because such claims require evidence outside the appellate record—but who has a state-law right to raise such a claim in a first habeas corpus proceeding, has a federal constitutional right to effective assistance of state habeas counsel specifically with respect to his ineffective-assistance-of-trial-counsel claim?

13

> ....
>
> Ultimately, the timing of Mr. Foster's case has been both fortunate and unfortunate.... Mr. Foster has repeatedly been caught in the gap – forced to approach the CCA as a successive petitioner not once, but twice, in order to come back to this [U.S. Supreme] Court ... after the Court granted certiorari in *Martinez*.
>
> In evaluating these claims, it is crucial to remember that they are layered one upon the other. To fault Mr. Foster for not raising them in his first habeas ... merely underscores the importance of the claim of ineffectiveness of state habeas counsel. ***To rely on the federal district court's reasoning – devoid of the facts that could not be developed or presented because the claims to which they pertained were unexhausted, and the federal courts thus refused to permit discovery or provide adequate funding for investigation of same ... Similarly points to one aspect of the prejudice resulting from state habeas counsel's ineffectiveness***. [cert. pet. at 4.]

(Emphasis supplied)  Exhibit 1:  *Foster v. Texas*, No. 11-6427, cert. pet. at 3, 4.

26.     The 2008 Order that denies funding for mitigation and expert assistance in Mr. Crutsinger's federal habeas litigation, places him in the same predicament as Mr. Foster: This court purports to perform a *de novo* merits review, and denies Ground Two reasoning that the claim is devoid of facts to prove prejudice.  But like Cleve Foster, Mr. Crutsinger was placed in the untenable position in which he could not investigate, develop and present a factual basis because the 2008 Order ruled that Ground Two was unexhausted and procedurally defaulted; thus, the 2008 Order refused to permit discovery or provide funding for investigation of his case.

27.     Although the Supreme Court granted certiorari on June 6, 2011 in *Martinez*, it still has not issued its opinion.

28.     If the *Martinez* Court holds that IAC of state habeas counsel is cause to excuse procedural default, then under the 2008 Order (which ruled Ground Two is unexhausted and procedurally defaulted), Mr. Crutsinger should be allowed to invoke *Martinez* and obtain funding and discovery.  This is because the procedural bar no longer acts as an impediment to funding under

18 U.S.C. § 3599(f) and Fifth Circuit precedent.

29. In either event, the 2012 Order and the 2008 are irreconcilable. Mr. Crutsinger requests that this Court stay and abey this proceeding until *Martinez* is decided, permit oral argument, and then decide either to rescind its 2008 Order or rescind its 2012 Order. In either case, it is Mr. Crutsinger's position that he is entitled to funding to investigate, develop and present facts that prove prejudice, *before* this Court rules on the merits of his claim.

## ORAL ARGUMENT REQUEST

30. Mr. Crutsinger respectfully suggests that this Court stay this proceeding, hold his case in abeyance until Martinez is decided, and thereafter grant oral argument, because it will materially assist the Court in understanding the factual evidence before it, and in applying the law.

**CONCLUSION**

WHEREFORE, Mr. Crutsinger respectfully requests that this Court correct manifest errors of law and fact with respect to its opinion and judgment entered on February 6, 2012. [Doc ## 48, 49].

Respectfully submitted,

*/s/ Lydia M.V. Brandt*

_____
Lydia M.V. Brandt
Texas Bar No. 00795262
THE BRANDT LAW FIRM, P.C.
P.O. Box 850843
Richardson, Texas   75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR PETITIONER

**CERTIFICATE OF CONFERENCE**

This certifies that on February 16, 2012, undersigned counsel conferred with Jeremy Greenwell, counsel for Respondent concerning this motion.  Respondent Thaler is opposed.

*/s/ Lydia M.V. Brandt*

_____
Lydia M.V. Brandt

## CERTIFICATE OF SERVICE

      I hereby certify that on March 5, 2012, I served a true and correct copy of the foregoing pleading upon counsel for Respondent, Jeremy Greenwell, Office of the Attorney General, P.O. Box 12548, Capital Station, Austin, TX 78711, by electronic filing with the clerk of the Court for the United States District court, Northern District of Texas, who has consented in writing to accept this Notice as service of this document by electronic means.

                                                                                                  _____
                                                                                                        Lydia M.V. Brandt

cc:      Bill Jack Crutsinger, #999-459
           Polunsky Unit
           Texas Department of Criminal Justice
           3872 FM 350 South
           Livingston, TX 77351-8580