IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BILLY JACK CRUTSINGER, | § | |
| | § | |
| PETITIONER, | § | |
| v. | § | |
| | § | No. 4:07-CV-00703-Y |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| RESPONDENT. | § | |

MEMORANDUM OPINION AND ORDER
<u>DENYING AUTHORIZATION FOR DNA EXPERT</u>

Before the Court is Petitioner Billy Jack Crutsinger's Opposed Motion for Services of DNA Expert to Conduct Preliminary Review, filed under 18 U.S.C. § 3599 on April 27, 2017. [ECF No. 72, "Motion."] The Motion requests funds for an unnamed analyst at Bode Cellmark to conduct a case review and prepare an affidavit, which would likely be used by counsel to seek additional funding to perform DNA testing.

Respondent opposes the Motion because Crutsinger has not made allegations for which the services could be deemed "reasonably necessary" under the statute. Respondent also asserts that the Court may not have jurisdiction to grant funding for a successive habeas petition. [ECF No. 73.] In his reply, Crutsinger argues that the Court has jurisdiction under both Supreme Court and circuit case law and points out that the "substantial needs" test, often used in this circuit to determine what are "reasonably

necessary" services, is pending Supreme Court review. [ECF No. 74, "Reply."]

Neither the motion nor the response address the fact that there is a Texas statute that sets out a procedure for obtaining post-conviction DNA testing and provides counsel for that purpose. This raises the question of whether federal habeas counsel and federally-funded expert services can and should be used for DNA testing. As explained below, the Court answers this question in the negative and denies the motion for that reason. In the alternative, the Court concludes Crutsinger has not shown a reasonable necessity for the requested services.

## I. Background

In 2003, a Tarrant County jury convicted Crutsinger of capital murder and sentenced him to death. His direct appeal, as well as state and federal habeas corpus proceedings, are now concluded. *See Crutsinger v. State*, 206 S.W.3d 607 (Tex. Crim. App.), *cert. denied,* 549 U.S. 1098 (2006); *Ex parte Crutsinger*, No. WR-63,481-01, 2007 WL 3277524 (Tex. Crim. App. Nov. 7, 2007) (not designated for publication); *Crutsinger v. Stephens*, 576 F. App'x 422 (5th Cir. 2014), *cert. denied,* 135 S. Ct. 1401 (2015).

Crutsinger's crime involved the stabbing deaths of 89-year-old Pearl Magouirk and her 71-year-old daughter, Patricia Syren, in their Fort Worth home. Both victims suffered multiple stab wounds and had their throats cut. A broken knife was found in the

victims' bathroom, and blood evidence suggested the killer had been injured when it broke.  Syren's Cadillac was taken from the home and later found abandoned at a bar.  A DNA analyst testified at trial about biological samples taken from the broken knife, the victims' clothing, the interior of the abandoned Cadillac, men's clothing found in a trash dumpster near the abandoned Cadillac, and blood stains throughout the victims' home and garage.  The analyst associated some samples with either Crutsinger or the victims, but she also identified "mixture" samples containing DNA associated with both Crutsinger and one or both victims.

In a letter dated July 8, 2016, the Tarrant County district attorney ("DA") advised Crutsinger that his case "*may potentially* be implicated" by (1) a change in the DNA-mixture interpretation protocol and (2) the FBI's "recent amendment of its population database" (emphasis in original). (Motion, Ex.  A.)  The letter stated that the probability statistics could be recalculated using the FBI's updated database, but that the DA's office had to investigate options for reinterpreting the evidence using the updated protocol.  The letter was sent to Crutsinger's attorney of record, Lee B. Kovarsky of Baltimore, Maryland.

On March 17, 2017, the DA sent another letter to Mr. Kovarsky, advising that the DA's office had been unable to obtain a reinterpretation of the DNA-mixture profiles because the medical examiner's office is no longer proficiency tested using the

3

necessary amplification kits. (Motion, Ex. B.) The letter further stated that the DA would move the trial court to set an execution date because Crutsinger's conviction is supported by "significant DNA evidence not impacted by the changed mixture interpretation protocol," as well as significant non-DNA evidence.

The instant motion was filed by federal habeas counsel, Lydia Brandt, who was appointed by the Court in 2008 under 18 U.S.C. § 3599(a)(2) to prepare and file Crutsinger's federal petition for habeas-corpus relief under 28 U.S.C. § 2254. The motion requests $500 to retain Bode Cellmark to review the case and provide potential options for having the DNA-mixture profiles re-interpreted. Once the preliminary review is conducted, Crutsinger advises that he may seek additional funding from the Court to perform the actual testing. (Motion, p. 1.) Crutsinger asserts that this request is relevant to his representation in executive clemency proceedings and to potential habeas applications that he may file in state and federal court. (Motion, p. 2.)

## II. Statutory provisions for federal habeas counsel and related services

A state prisoner under a sentence of death, who petitions for habeas relief under § 2254 and is financially unable to obtain adequate representation or "investigative, expert, or other reasonably necessary services," is entitled to the appointment of counsel and the furnishing of such services. *See* § 3599(a)(2). Section 3599(e) further provides that federal counsel so appointed

"shall represent the defendant throughout every subsequent stage of available judicial proceedings," which includes "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures," and "in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." § 3599(e).

As for services other than counsel, a district court may authorize expenditures up to $7,500 for investigative, expert, or other services that the district court finds to be "reasonably necessary." *See* § 3599(f).

**III. The scope of federal habeas counsel's representation**

There is no dispute that Crutsinger is indigent and that the requested authorization is well within the statutory limit for service providers. The motion indicates that this is only the beginning of Crutsinger's funding requests for DNA testing, however, and it assumes that federal habeas counsel is currently acting within the scope of her appointment. Before the Court addresses the necessity of the requested services, therefore, the Court must determine whether federal habeas counsel's representation under § 3599 includes the DNA investigation and testing that Crutsinger intends to pursue.

A. Applicable law

The seminal case on this issue is *Harbison v. Bell*, 556 U.S. 180 (2009). In *Harbison*, the Supreme Court addressed whether § 3599

authorizes federal habeas counsel to represent a state petitioner in state clemency proceedings. The Supreme Court answered the question in the affirmative, based on the organization of § 3599(e) and its interpretation of the word "subsequent" used in it. *Id*. at 188. The statute provides:

> (e) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant **throughout every subsequent stage of available judicial proceedings**, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and **all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant**.

§ 3599(e) (emphasis added).

The Supreme Court concluded that when counsel is appointed for the purpose of pursuing federal habeas relief under § 2254, the representation includes judicial proceedings that transpire "subsequent" to counsel's appointment and is not circumscribed by a division between federal and state proceedings. *Id.* at 188.

In rejecting the government's argument that such a reading of the statute would require a federal habeas lawyer to represent the client on retrial or in state habeas proceedings, the Supreme Court identified two limitations in the coverage of § 3599. First, the text of § 3599(a)(2) provides for counsel "only when a state petitioner is unable to obtain adequate representation." *Id.* at

6

189. States are constitutionally required to provide trial counsel for indigent defendants. So, for a state prisoner granted a new trial following § 2254 proceedings, the Supreme Court reasoned that his state-furnished representation renders him ineligible for § 3599 counsel until the commencement of new § 2254 proceedings. *Id.* In fact, the Court determined that Harbison was entitled to § 3599 counsel only after noting that Tennessee law did *not* provide him with clemency counsel. *Id.* at 182.

A second limitation on the scope of federal habeas counsel's appointment is the Court's interpretation of "every subsequent stage of available judicial proceedings" and "all available post-conviction process" as reflecting the ordinary, sequential course of proceedings. *See id.* at 189-90. The Court observed that the language of the statute contemplates limited federal funding in "other appropriate motions and procedures" in state court, by which district courts have discretion on a case-by-case basis to provide federal counsel to exhaust a claim in the course of federal habeas representation. The Court held, however, that this does not mean that state habeas proceedings are included in the meaning of "available post-conviction process." *Id.* at 190 n.7. "That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute," which

7

is that petitioners must exhaust their claims in state court before seeking federal habeas relief. *Id.* at 190-91.

B. <u>Discussion</u>

Based on this reading of *Harbison*, the Court concludes that the scope of federal habeas counsel's representation does not include the sought-after DNA expert authorization. Texas law provides adequate representation for this purpose. Article 64.01 of the Texas Code of Criminal Procedure provides that a convicted person may submit to the convicting court a motion for forensic DNA testing of evidence secured in relation to the offense that is the basis of the challenged conviction. Tex. Code Crim. Proc. Ann. art. 64.01(a-1), (b). The DNA statute continues:

> A convicted person is entitled to counsel during a proceeding under this chapter. The convicting court **shall appoint counsel** for the convicted person if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent. Counsel must be appointed not later than the 45th day after the date the court finds reasonable grounds or the date the court determines that the person is indigent, whichever is later. Compensation is provided in the same manner as is required by . . . [the statute providing for habeas corpus procedure in death penalty cases].

Art. 64.01(c) (emphasis added). Crutsinger does not attempt to show that this statute would not avail him in his efforts to obtain DNA testing.

In light of the above provision, Crutsinger's "state-furnished representation renders him ineligible for § 3599 counsel."

8

*Harbison*, 556 U.S. at 189. *See Irick v. Bell*, 636 F.3d 289, 291 (6th Cir.), *cert. denied*, 565 U.S. 1036 (2011) (denying request for federally appointed counsel to reopen state post-conviction proceedings and to pursue state competency-to-be-executed proceedings where state law provides adequate representation for that purpose). Not only would the Texas statute provide Crutsinger with counsel for the purpose of seeking DNA testing, but the exhibits attached to Crutsinger's Motion indicate that Crutsinger already has counsel. The DA's first letter about the Texas Forensic Science Commission's review shows that Mr. Kovarsky is Crutsinger's counsel of record for this matter. (Ex. A ("As the listed attorney(s) of record, we are notifying you . . .").)

Additionally, the DNA testing Crutsinger intends to pursue is not a "subsequent" stage of judicial proceedings in the ordinary sequential course of death-penalty litigation. Whether and when post-conviction DNA testing is carried out depends on the facts of a given case and the timing of advances in DNA science. There is no properly understood time during the life of the case do it. The DNA testing is therefore not included in § 3599's description of judicial proceedings "subsequent" to federal counsel's appointment. *See Gary v. Warden, Georgia Diagnostic Prison*, 686 F.3d 1261, 1275 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1734 (2013) (denying funds for DNA expert to assist petitioner in moving the state court

for DNA testing because DNA testing is not a subsequent proceeding contemplated by § 3599).

Crutsinger's suggestion that the DNA proceedings fall within the scope of his clemency representation, which is permitted by *Harbison*, is not persuasive. (*Reply*, p. 1-2.) Crutsinger has not shown that an execution date is set, which would trigger the clemency process. More importantly, this argument ignores the Texas procedure established for DNA testing in cases just like this. The Court declines to interfere with the state process for reviewing forensic evidence on that ground that, some day, Crutsinger may be in a position to seek clemency from the governor.

The Court also rejects the suggestion that the requested authorization falls within the scope of counsel's representation in future habeas-corpus litigation, such as an innocence claim. Such proceedings in state court would be in the nature of exhaustion proceedings that properly precede federal habeas litigation. *See Harbison*, 556 U.S. at 189 ("State habeas is not a stage 'subsequent' to federal habeas"). And federal law, unlike Texas law, does not even recognize actual-innocence claims. *See Herrera v. Collins*, 506 U.S. 390 (1993); *cf. State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389 (Tex. Crim. App. 1994) (holding that state habeas proceeding is an appropriate vehicle in which to assert factual innocence based on newly discovered evidence). It

is more appropriate at this point for Texas courts to address this matter along with any innocence claims that may result.

Crutsinger's reliance on *Battaglia* does not avail him. In *Battaglia*, the Court of Appeals granted Battaglia's motion to substitute counsel twenty days before his execution date because previous federal counsel had abandoned Battaglia by not challenging his competency to be executed. *See Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016). But competency proceedings, unlike DNA proceedings, are specifically enumerated in § 3599(e) as within the province of federal habeas counsel's representation. *See* § 3599(e) ("each attorney so appointed . . . shall also represent the defendant in such competency proceedings . . . as may be available to the defendant.") And, unlike the DNA statute, the Texas competency-to-be-executed statute assumes the presence of defense counsel but does not specifically provide for the appointment of counsel. *See* Tex. Code Crim. Proc. Ann. art. 46.05(i) (noting that expert reports shall be provided to the attorney representing the defendant); *cf.* Tex. Code Crim. Proc. Ann. art. 46B.006 (providing for the appointment of counsel in competency-to-stand-*trial* proceedings). Thus, Battaglia had been abandoned by previous counsel and it is not clear from the Texas statute that Battaglia would have had adequate, state-furnished representation in a state competency-to-be-executed proceeding. Crutsinger, on the other

11

hand, apparently has Texas counsel (Lee Kovarsky) and, if he does not, the DNA statute provides for one.

The Court concludes, under *Harbison,* that § 3599(a)(2) and (e) do not contemplate the provision of federal counsel in post-petition DNA proceedings. To the extent *Harbison* suggests that this Court has discretion on a case-by-case basis to provide federal counsel for this purpose, the Court declines to do so because Texas law provides adequate representation, and Crutsinger fails to explain why federal habeas counsel should get involved at this point. Since the DNA proceedings are outside the scope of federal habeas counsel's appointment, counsel cannot obtain funds pursuant to § 3599(f) for a DNA expert.

### IV. The necessity of the requested services

In the alternative, the Court concludes that Crutsinger has not made the required showing that the requested services are reasonably necessary for the representation.

In determining what is reasonably necessary, courts have generally looked at whether the proposed services can be tied to a viable constitutional claim. *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (discussing and applying predecessor statute, 21 U.S.C. § 848(q)(9)). Even where a petitioner establishes a nexus between the requested services and a claim of a constitutional dimension, however, the statute is not intended to fund fishing expeditions. *See, e.g., Lynch v. Hudson*, No. 2:07-CV-948, 2009 WL

3497486, *5 (S.D. Ohio Oct. 29, 2009) (denying request made "out of an abundance of caution" to re-investigate *Atkins* claim); *Patrick v. Johnson*, 48 F. Supp. 2d 645, 647 (N.D. Tex. 1999) (Kaplan, Magis. J.)(holding that statute was not designed to provide habeas petitioners with unlimited resources to investigate speculative claims); *DeLong v. Thompson*, 790 F. Supp. 594, 617 (E.D. Va. 1991) (Spencer, J.)(holding that proposed investigation of trial counsel and trial judge amounted to "fishing expedition").

Crutsinger does not identify a viable constitutional claim that the DNA expert would be used to develop. He states that, at a minimum, the right to federal habeas counsel would include the right to develop an innocence claim, "particularly given the State's letter 'regarding the mixture interpretations in this case.'" (Reply, at 2.) But Crutsinger is not contending he is factually innocent.

Instead, he argues that the denial of funding would be improper because it requires him to demonstrate he would prevail on a claim, even though he has not had a full opportunity to develop the facts to make that showing. (Reply, at 3.) He argues that the Fifth Circuit's oft-cited "substantial need" test for denying funding is improper and pending Supreme Court review. (Reply, at 3-4.)

To be clear, the Court is not requiring Crutsinger to show a "substantial need" for the requested DNA services nor is the Court

requiring him at this point to demonstrate procedural viability of a claim. The Court does, however, expect Crutsinger to identify a constitutional claim and articulate how the requested funds would be used to develop it. There was a significant amount of DNA testimony at trial, as well as other, non-DNA evidence connecting Crutsinger to the crime. This evidence is in the state court record, which he used to litigate his federal habeas petition. Contrary to his assertion, the absence of a DNA expert does not prevent Crutsinger from claiming he is factually innocent. Nor does it prevent him from articulating how his exclusion from a DNA sample could demonstrate his actual innocence. In this regard, Crutsinger does not even discuss the evidence that would be subjected to the new protocol or its significance to the case. As presented, the motion is simply a request to fund a fishing expedition, and it should be denied.

The motion [ECF No. 72] is **DENIED.**

SO ORDERED this 5th day of June, 2017.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/ks

14