# CLERK'S RECORD

## VOLUME 7 of 8

# 74,769

Trial Court Cause No. **0885306D**

In the **213TH DISTRICT COURT**
of Tarrant County, Texas
Hon. **ROBERT K. GILL**, Presiding Judge



### BILLY JACK CRUTSINGER, APPELLANT

vs.

### THE STATE OF TEXAS

Appealed to the Court of CRIMINAL APPEALS
for the STATE OF TEXAS
at Capitol Station
AUSTIN, TEXAS

**FILED IN**
COURT OF CRIMINAL APPE

FEB 1 0 2004

Troy C. Bennett, Jr. C

### ATTORNEY FOR THE APPELLANT

**WILLIAM H. RAY, APPT.**
**5041 AIRPORT FREEWAY**
**FORT WORTH, TEXAS  76117**
**PHONE:     817-830-8383**
**FAX:          817-831-8306**
**SBOT:       16608700**
**Attorney for BILLY JACK CRUTSINGER, Appellant**

Delivered to the Court of CRIMINAL APPEALS
for the STATE OF TEXAS at Capitol Station,
AUSTIN, Texas, on the
**26th** day of **January** **2004**

THOMAS A. WILDER, DISTRICT CLERK,
TARRANT COUNTY, FORT WORTH, TEXAS

_Nancy Gilliland_

NANCY GILLILAND
Deputy District Clerk

(Court of CRIMINAL APPEALS)

Cause No. _____
Filed in the Court of CRIMINAL APPEALS
FOR THE STATE Of Texas, at
Capitol Station, AUSTIN, Texas, this

_____ day of _____, _____
_____TROY C. BENNETT, JR._____, Clerk
By _____, Deputy

# I N D E X

## INSTRUMENTS FILED IN VOLUME 1

Caption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Presentment Of The Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Indictment - 6/16/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Criminal Docket . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Complaint - 4/11/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate Of Proceedings - 4/11/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Motion And Order Of Transfer - 4/15/03 . . . . . . . . . . . . . . . . . . . . . . . . . 18

Finding On Appointment Of Attorney - 4/17/03 . . . . . . . . . . . . . . . . . . . 19

Order Referring Case To Magistrate - 4/28/03 . . . . . . . . . . . . . . . . . . . . 20

Motion To Give Notice Of Extraneous Acts Under Article 37.07 Code Of
Criminal Procedure And Rule 404(b), Texas Rule Of Evidence And Notice Of
Convictions For Impeachment Pursuant To Rule 609(f), Texas Rules Of
Evidence, (The Mitchell Vs. State "Motion") - 4/28/03 . . . . . . . . . . . . . . . 21

Defendant's Request To The State Of Texas To Provide Notice Of Extraneous Acts
Under Article 37.07 Code Of Criminal Procedure And Rule 404(b), Texas Rules
Of Evidence And Notice Of Convictions For Impeachment Pursuant To Rule 609(f),
Texas Rules Of Evidence, (The Mitchell Vs. State "Request" - 8/28/03 . . . . . . . . . . . . . . . 24

Defendant's Motion For Discovery, Including Expert Witnesses - 4/28/03 . . . . . . . . . . . . 26

Constitutional Motion For Speedy Trial - 4/28/03 . . . . . . . . . . . . . . . . . . . 31

Statutory Motion For Speedy Trial - 4/28/03 . . . . . . . . . . . . . . . . . . . . . . . 33

Motion And Order To Appoint Investigator - 4/29/03 . . . . . . . . . . . . . . . . 35

Bench Warrant - 6/3/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

- Page 2 -

Warrant - 6/10/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Finding On Appointment Of Attorney - 6/13/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

State's Motion For Strict Applicability Of Standefer V. State Of Texas And Objection
To Improper Commitment Questions During Voir Dire Examinations - 6/24/03 . . . . . . . . . . 39

State's Motion To Order Defendant To Submit To Court Ordered Psychiatric/Psychological
Examination Or Alternative Motion To Exclude Defendant's Psychiatric/Psychological
Evidence - 6/24/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

State's Motion To Order Defendant To Submit To Court Ordered Psychiatric/Psychological
Examination Or Alternative Motion To Exclude Defendant's Psychiatric/Psychological
Evidence - 6/24/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Motion And Order For Appointment Of An Expert - 6/25/03 . . . . . . . . . . . . . . . . . . . 48

Writ To Serve Indictment - 6/24/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Motion For Discovery Of Expert Witness - 6/30/03 . . . . . . . . . . . . . . . . . . . . . . . . 52

State's Motion In Limine - 6/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Motion To Allow Voir Dire Of Expert Pursuant To 705(B) Of The Texas
Rules Of Criminal Evidence - 7/9/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Motion To Appoint Expert And To Order Examination Of Physical Evidence
For DNA Proposes - 7/11/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The Court's Order On The Defendant's Motion To Appoint Expert And To
Order Examination Of Physical Evidence For DNA Purposes - 7/11/03 . . . . . . . . . . . . . 63

Motion To Appoint Expert - 7/11/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

Order On Defendant's Motion To Appoint Expert - 7/11/03 . . . . . . . . . . . . . . . . . . . . 67

Order For Release Of Medical Records (Tarrant Community Outreach) - 7/14/03 . . . . . . . 68

Order For Release Of Medical Records (The Salvation Army) 7/10/03 . . . . . . . . . . . . . . 69

Order For Release Of Medical Records (Phoenix Association Counseling) - 7/10/03 . . . . . . 70

Order For Release Of Medical Records (Tarrant County MHMR) - 7/14/03 . . . . . . . . . . . 71

- Page 3 -

Defendant's Motion For The Court To Instruct The Jury That The Burden Of
Proof Under Article 37.071, Section 2(e)(1) Code Of Criminal Procedure
Shall Be On The State Of Texas To Show Beyond A Reasonable Doubt The
Absence Of Sufficient Mitigating Factors In Order To Warrant That A
Death Sentence Rather Than A Sentence Of Life Imprisonment Be Imposed,
And Additionally Instruct The State To Conduct Voir Dire And Present Its
Case In Compliance With That Instruction - 7/23/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  72

Order (For Treatment Center To Communicated With Tarrant County District
Attorney's Office) - 7/25/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  77

State's Response To Defendant's Motion For Burden Of Proof Instruction
On Mitigation Special Issue - 7/28/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  78

Amended State's Notice Of Intent To Introduce Evidence Pursuant To Articles
37.07 And 38.36 C.C.P. And Articles 609(F) And 404(B) T.R.C.E. - 7/29/03  . . . . . . . . . . .  82

Motion To Suppress Written Or Oral Statements Of Defendant - 7/30/03 . . . . . . . . . . . . . .  88

## INSTRUMENTS FILED IN VOLUME 2

Bench Warrant - 7/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  93

Notice Of State's Intent To Use Experts - 7/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . .  94

Second Amended State's Notice Of Intent To Introduce Evidence Pursuant To Articles 37.07
And 38.36 C.C.P. And Articles 609(F) And 404(B) T.R.C.E. - 7/31/03 . . . . . . . . . . . . . . .  97

Business Records Affidavit (Cingular Wireless) - 8/1/03 . . . . . . . . . . . . . . . . . . . . . . .  104

Precept To Serve Jury List 0 8/5/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  111

Third Amended State's Notice Of Intent To Introduce Evidence Pursuant To Articles
37.07 And 38.36 C.C.P, And Articles 609(F( And 404(B) T.R.C.E. - 8/5/03 . . . . . . . . . . .  112

First Amended Motion To Suppress Written Or Oral Statements Of Defendant - 8/7/03 . . .  119

Fourth Amended State's Notice Of Intent To Introduce Evidence Pursuant To
Articles 37.07 And 38.36 C.C.P. And Articles 609(F) And 404(B) T.R.C.E. - 8/7/03 . . . . . . .  124

Motion To Suppress Evidence - 8/8/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  132

State's Request For Defense Showing Of Legal Standing To Contest Search - 8/8/03 . . . .  135

Motion Requesting Definition Of Reasonable Doubt - 8/13/03 . . . . . . . . . . . . . . . . . . .  138

- Page 4 -

Motion To Declare V.A.C.C.P. 37.071 Sec. 2(e) And (f) Unconstitutional Based On The
Lack Of Burden Of Proof - 8/13/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

Motion To Produce Exculpatory And Mitigating Evidence - 8/13/03 . . . . . . . . . . . . . . . 159

Motion To Preclude The Death Penalty As A Sentencing Option And Declare
The Death Penalty Unconstitutional - 8/13/03 . . . . . . . . . . . . . . . . . . . . . . . . 162

Response To Defense Motion To Declare The Death Penalty Unconstitutional - 8/15/03 . . 166

Response To Defense Motion To Declare V.A. C.C.P. 37.071 Sec. 2(e) And
(f) Unconstitutional Based On The Lack Of Burden Of Proof - 8/15/03 . . . . . . . . . . . . . 269

Notice Of Expert Witnesses - 9/4/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 271

Seventh Amended State's Notice Of Intent To Introduce Evidence Pursuant To Articles
37.07 And 38.36 C.C.P. And Articles 609(F) And 404(B) T.R.C.E. - 9/5/03 . . . . . . . . . . 275

Notice Of State's Intent To Use Experts - 9/5/03 . . . . . . . . . . . . . . . . . . . . . . . . 284

## INSTRUMENTS FILED IN VOLUME 3

Defendant's Motion To Quash The Indictment And Declare The Death Penalty
Unconstitutional Due To Disparate Treatment Specifically Unequal Financial
Constraints And Criteria, In Twenty-Six Counties Of The State Of Texas And That
Such Constraints Causes Said Disparate Treatment In The Decision To Seek The Death
Penalty By The Various Prosecuting Authorities Of Persons Charged With Capital
Murder In The State Of Texas And Exhibits 1 - 31 Attached - 9/4/03 . . . . . . . . . . . . . . 287

## INSTRUMENTS FILED IN VOLUME 4

Exhibits 32 (Anderson Through Fort Bend Counties Plus One
Unidentified Response - 9/4/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 475

## INSTRUMENTS FILED IN VOLUME 5

Exhibit 33 (Freestone Through Harrison Counties) - 9/4/03 . . . . . . . . . . . . . . . . . . 757

## INSTRUMENTS FILED IN VOLUME 6

Exhibit 34 (Hartley Though Young Counties) - 9/4/03 . . . . . . . . . . . . . . . . . . . . . . 947

- Page 5 -

## INSTRUMENTS FILED IN VOLUME 7

Defendant's Motion to Not Allow The Jury to Separate During Deliberations, At Either The Guilt/Innocence Or Punishment Phases Of The Trial - 9/12/03 . . . . . . . . . . . 1195

Constitutional Motion To Suppress - 9/12/03 . . . . . . . . . . . . . . . . . . . . . . . . 1197

Motion To Declare The 10-12 Rule Unconstitutional - 9/16/03 . . . . . . . . . . . . . . . . 1204

Defendant's Supplemental Motion To Quash The Indictment And Declare The Death Penalty Unconstitutional Due To Disparate Treatment - 9/13/03 . . . . . . . . . . . . . 1239

State's Response To Defendant's Motion To Quash The Indictment - 9/17/03 . . . . . . 1252

Notice To Defense Regarding Subpoenaed/Sworn Witness(es) - 9/18/03 . . . . . . . . . . . 1271

Bench Warrants - 9/18/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1272

Defendant's Motion In Limine - 9/22/03 . . . . . . . . . . . . . . . . . . . . . . . . . . 1275

The Court's Order On The Defendant's Motion In Limine - 9/22/03 . . . . . . . . . . . . . 1278

Court's Charge On Guilt Or Innocence - 9/25/03 . . . . . . . . . . . . . . . . . . . . . 1279

Jury Verdict - 9/25/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1284

Jury Notes And Court's Answer - 9/25/03 . . . . . . . . . . . . . . . . . . . . . . . . . 1285

Certificate Of Proceedings - 9/25/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1289

Certificate Of Proceedings - 9/26/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1290

Fax Regarding Mrs. Ely - 9/29/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1291

Court's Charge On Punishment - 9/29/03 . . . . . . . . . . . . . . . . . . . . . . . . . . 1293

Jury Verdict - 9/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1294

Jury Note - 9/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1298

Certificate Of Proceedings - 9/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1299

Judgment And Sentence - 10/1/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1300

Trial Court's Certification Of Defendant's Right Of Appeal - 9/30/03 . . . . . . . . . . . 1303

- Page 6 -

Notice Of Appeal - 9/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1304

Motion For Free Reporter's Record And Affidavit Of Inability
To Pay For Counsel And Reporter's Record - 9/30/03 . . . . . . . . . . . . . . . . . . . . . 1305

Order Appointing Counsel For The Appeal And Order For Court Reporter
To Prepare Reporter's Record - 9/30/03 . . . . . . . . . . . . . . . . . . . . . . . . . 1306

Motion And Order For Appointment Of An Expert - 10/1/03 . . . . . . . . . . . . . . . . . . 1307

Attachments For A Witness - 10/1/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1310

Certificate Of Proceedings - 10/3/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1312

Motion For New Trial - 10/28/03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1313

## INSTRUMENTS FILED IN VOLUME 8

Findings Of Fact And Conclusions Of Law On Defendant's Statements - 10/27/03 . . . . . . 1331

Findings Of Fact And Conclusions Of Law On Defendant's Statements
(Superseded With Correct Cause Number) - 10/22/03 . . . . . . . . . . . . . . . . . . . . . 1335

Applications For Subpoenas And Subpoenas - 7/2/03 Thur 10/7/03 . . . . . . . . . . . . . . 1340

Clerk's Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1440

THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

NO. 0885306D

SEP 1 2 2003

Time _____ 8:30

By _____ Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## DEFENDANT'S MOTION TO NOT ALLOW THE JURY TO SEPARATE DURING DELIBERATIONS, AT EITHER THE GUILT/INNOCENCE OR PUNISHMENT PHASES OF THE TRIAL

TO THE HONORABLE ROBERT K. GILL, JUDGE, 213TH DISTRICT COURT:

COMES NOW, the Defendant, by and through his Attorney of record, William H. "Bill" Ray, and Tim Moore, and requests this Court to not allow the jury to separate during its deliberations, at either the guilt/innocence or punishment phases of the trial, and in support thereof, would show the Court as follows:

1.    The Defendant is charged with a felony offense.

2.    Article 35.23 of the Code of Criminal Procedure states that "upon motion of either party, the Court **_shall_**, after having given its charge to the jury, order that the jury not be allowed to separate."

3.    Article 35.23 further states that any person who makes known to the jury which party made the motion shall be punished by contempt.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant Prays that the Court grant this motion.

_____
WILLIAM H. "BILL" RAY
STATE BAR NO. 16608700
ATTORNEY FOR DEFENDANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383
(817) 831-8306, FAX
"WHERE THE WEST BEGINS"

1

1195

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing motion was hand delivered to the Tarrant County Criminal District Attorney's Office on the date shown by the Clerk's file stamp.

WILLIAM H. "BILL" RAY

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## THE COURT'S ORDER ON THE DEFENDANT'S
## MOTION TO NOT ALLOW THE JURY TO SEPARATE

      Came upon to be heard the foregoing Motion to Not Allow the Jury to Separate. The Court, after reviewing the motion, finds that it should be, and the same is hereby

_____ Granted

_____ Denied

SO ORDERED.

DATE:_____

 

                           _____
                           ROBERT K. GILL, JUDGE
                           213TH DISTRICT COURT

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

## CONSTITUTIONAL
## MOTION TO SUPPRESS

SEP 1 2 2003

Time _____ 8:30

By _____ Deputy

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, the Defendant herein, by and through his attorneys of record, William H. "Bill" Ray, and Tim Moore, and moves this Court to suppress all evidence obtained by, and specifically, the DNA analysis performed on epithelial cheek cells removed pursuant to Search Warrant #SW-11397, that was executed on the Defendant on August 27, 2003, and would show the Court the following:

On August 26, 2003, several days after jury selection had begun, and after the return of the indictment in this case, a search warrant was presented to state district judge Sharen Wilson by Detective J. T. McCaskill of the Fort Worth Police Department. Detective McCasskill is the affiant in the search warrant. The warrant was signed into effect at 10:35 a.m. by Judge Wilson and assigned search warrant # SW-11397. The warrant authorizes the removal of epithelial cell samples from the Defendant for DNA testing. The warrant was timely executed.

The affidavit in support of the search warrant does not state facts that show the existence of probable cause that support the warrant's issuance. Specifically, the affidavit alleges facts in support of the warrant's issuance in eight paragraphs, numbered "A" through "H".

Paragraphs A thru D allege that a double homicide was discovered at 2716 Scott Avenue, Fort Worth, Tarrant County, Texas, a 1996 Cadillac was missing from the residence and was later

1

discovered in the 3100 block of North Main Street, in Fort Worth with a significant amount of blood in it, and that a blood trail was found leading to the area where the Cadillac had been parked, and this led the affiant to the conclusion that the actor was injured.

Paragraph E alleges that Detective McCaskill listened to telephone messages in the residence and discovered that a credit card that belonged to one of the victims had been used several times. Further investigation revealed that the card had been used at the Seahorse Inn in Galveston, Texas during the early morning hours of April 8, 2003, and also at a liquor store on the evening of April 8, 2003. McCasskill concluded that the credit card was used after the time of death. At this point McCasskill contacted the Galveston Police Department and notified them of these facts, and then traveled to Galveston, Texas.

Paragraph F alleges that McCasskill learned that Galveston Police officers went the Seahorse Inn in Galveston, Texas, and learned that a white male used a credit card of one of the victims to rent room 101 at the Seahorse Inn. This person had identified himself as "David Jones" to the manager of the Seahorse Inn, had arrived by Yellow Cab, and appeared to have been drinking at Club 23, which is located in the same building as the nearest Yellow Cab stand. The Galveston officers went to Room 101 of the Seahorse Inn, which appeared to be abandoned, and found a Lay's potato chip bag with a residue of chili and cheese had been left inside the room.

Galveston police then checked a local convenience store, a Diamond Shamrock and discovered that a white male had tried to purchase a chili cheese dog and chips with a credit card, but the card had been declined. The man then paid in cash and left. His description was a white male, 25-35 years of age with a yellow shirt. At 1:19 a.m., a Yellow Cab picked up a fare at the cab stand.

Paragraph G alleges that Donald Epps, of Yellow Cab had taken a fare fitting the

description of the suspect (which at the time was a white male, 25-35 years of age with a yellow shirt), and taken him to Tony's Lazy Lounge. The affidavit then states that "this person was a white male in a white Joe's Crab Shack tee shirt, blue jeans, a red hat, and glasses and said he was from Dallas, Texas." Another cab driver had driven the same individual to another bar, the Elbow Room.

Officer Garcia, III went to these bars and looked for the suspect. No one was at the Elbow Room, and the bartender was notified of the description of Garcia's suspect. (a white male, 25-35 years of age with a yellow shirt). While at another bar, the bartender called and told police that she had remembered the individual in question, and gave officers a different description, that of a white male, mid forties, wavy gray hair, 220-250 pounds with a pot belly, blue jeans, a Joe's Crab Shack tee-shirt, and brand new tennis shoes. Officer Garcia then remembered that he had seen someone fitting that description at Tony's Lazy Lounge, but discounted him because he seemed too old for the description that he had previously. Garcia then went to Tony's and found the defendant, who was dressed in a Joe's Crab Shack tee shirt, blue jeans, new white tennis shoes, with wavy gray hair.

When Officer Garcia asked the Defendant his name, the Defendant refused to answer, and cut his eyes to the door, as though looking for an exit. Officer Garcia noticed that the Defendant had a fairly recent cut on his finger. Officer Garcia then detained the Defendant.

Paragraph H alleges that DNA is necessary for the investigation of this offense.

The evidence allegedly obtained was done in violation of the Defendant's Constitutionally protected rights as guaranteed by Article 1, Section 9 of the Texas Constitution and the Fourth and Fourteenth Amendments to the United States Constitution because there are no facts contained in the affidavit to support a finding of probable cause to issue a warrant for the

Defendant.

Specifically, the description of the person that Officer Garcia was looking for is not the same person that he ultimately arrested, that is the Defendant. Thus, all facts up to the point that Officer Garcia saw the Defendant are not relevant. Even if the description was the same, there is no connection between the Defendant, the motel room at the Seahorse Inn, or the use of a credit card at the Diamond Shamrock, which was declined, or the cab ride in either taxi. The Yellow Cab picked up a fare at 1:19 a.m., but there is no fact alleged in the affidavit concerning the time the Seahorse Inn room was rented, nor what time the credit card was attempted to be used at the Diamond Shamrock station.

The only facts that relate to the Defendant are that he was seen by the police in Tony's Lazy Lounge, he looked at the door when Officer Garcia approached him as if he was looking for an exit, and the Defendant appeared to have a fairly recent cut on his finger.

Even assuming that the Defendant was the same person who bought the chili dog at the Diamond Shamrock and rode in the taxis, i.e. that the description was exactly the same, which it is not, there is still no connection that the Defendant was ever in possession of a credit card belonging to the victim, (there is no fact stating that the card that was denied at the Diamond Shamrock was a card belonging to the victim), nor is there any statement that the Defendant was the person who rented the room at the Seahorse Inn.

Additionally, one of the facts in Paragraph F states that the officers entered room 101 of the Seahorse Inn. That entry was obtained without a search warrant, and without any exigent circumstances. Further, Detective J.T. McCasskill testified on August 22, 2003 in this case on other motions and indicated that he did in fact know that the Defendant had stayed in the Seahorse Inn, thus having a proprietary right of standing to contest the search of the room. Thus,

1200

McCasskill was aware of those facts prior to the obtaining of this warrant, and these facts were not made known to Judge Wilson in the search warrant affidavit addressed by this motion. Nor was the fact that Detective McCasskill had previously obtained epithelial cells from the Defendant several months prior to the application for the search warrant.

The only reason that this search warrant was obtained was because the State feared that the arrest of the Defendant would, and it was in fact, ultimately be determined to be an illegal arrest.

For these reasons, the Defendant submits that the affidavit in support of the search warrant in this case does not show probable cause.

## PRAYER

PREMISES CONSIDERED, the Defendant prays that the fruits of the search in this case, that is the information obtained from the epithelial cells of the Defendant pursuant to the search warrant should be suppressed.

RESPECTFULLY SUBMITTED,


WILLIAM H. "BILL" RAY
STATE BAR NO. 16608700
ATTORNEY FOR DEFENDANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383, (817) 831-8306, FAX
"WHERE THE WEST BEGINS"

TIM MOORE
STATE BAR NO. 14378300
ATTORNEY FOR DEFENDANT
115 W. SECOND ST., SUITE 202
FORT WORTH, TEXAS 76102
(817) 332-3822, (817) 332-2763, FAX

1201

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion was hand delivered to the Office of the Tarrant County Criminal District Attorney's office, on the date shown by the clerk's file stamp.

WILLIAM H. "BILL" RAY

1 2 0 2

NO. 0885306D

| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## THE COURT'S ORDER ON THE DEFENDANT'S
## MOTION TO SUPPRESS

CAME UPON to be heard the Defendant's Motion to Suppress. The Court, having reviewed the Motion of the Defendant, the response, if any, and after hearing the evidence and arguments thereon, and the applicable authorities, and after careful consideration, finds that the Motion of the Defendant should be, and is hereby:

_____    Granted, all evidence obtained pursuant to Search Warrant # SW-11397 is
           suppressed from use in any manner.

   X       Denied.

SO ORDERED.

DATE: _9/18/09_          _____
                          ROBERT K. GILL
                          JUDGE

1203

NO. 0885306D

| THE STATE OF TEXAS | )( | IN THE 213TH |
| VS. | )( | DISTRICT COURT |
| BILLY JACK CRUTSINGER | )( | TARRANT OUNTY, TEXAS |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
SEP 1 8 2003
1:28 AM
By _____ Deputy

## MOTION TO DECLARE THE 10-12 RULE UNCONSTITUTIONAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, by and through his attorneys of record, William H. "Bill" Ray and Tim Moore, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article One, Sections Three, Ten, Thirteen, and Nineteen of the Texas Constitution; and other applicable law, moves this Court: (1) to declare the Texas Code of Criminal Procedure, Article 37.071(2)(d)(2) and 37.071(2)(f)(2) unconstitutional on the grounds that they create an impermissible risk of arbitrary imposition of the death penalty by placing a false dilemma before the jury; (2) to declare Article 37.071(2)(a) unconstitutional with respect to its prohibition on informing the jury that a life sentence necessarily results from an inability to answer any of the special issues; and in the alternative *(3)* to provide clarifying instructions to the jury with regard to the failure of jurors to agree upon answers to special issues; and *(4)* to allow the attorneys to voir dire prospective jurors in order to discover their beliefs regarding

1204

the substantive outcome of deadlock at the sentencing phase.  In support of his motion, the Defendant states as follows:

The "10-12 Rule":

1.)  Texas Code of Criminal Procedure Article 37.071(2)(d)(2) requires the Court to charge the jury that it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously, and it may not answer any issue "no" unless ten or more jurors agree.

2.)  The Court is required by Texas Code of Criminal Procedure Article 37.07 1(2)(f)(2) to charge the jury that it may not answer the issue submitted under Subsection (e) "no" unless it agrees unanimously and it may not answer "yes" unless ten or more jurors agree.

3.)  Under Texas Code of Criminal Article 37.071(2) (c) and 37.071(2) (f) (1) the jurors "shall" answer each interrogatory either "yes" or "no."

4.)  In the event that the jury is unable to answer any issue, either because it was unable to secure unanimity for a "yes" answer or ten votes for a "no" answer pursuant to the issues submitted under Subsection (b), or because it was unable to secure unanimity for a "no" answer or ten votes for a "yes" answer pursuant to the issue submitted under Subsection (e), Texas Code of Criminal Procedure Article 37.071(2)(g) requires the Court to sentence the defendant to life in prison. This is substantively identical to the sentence that results if the jury is able to answer "no"

to at least one issue submitted under Subsection (b) or "yes" to the issue submitted under Subsection (e).

5.) Texas Criminal Procedure Article 37.071 (2)(a) prohibits the Court, either attorney, or the defendant himself from informing the jury, or any prospective juror, that the failure to answer any of the issues presented will result in a mandatory life sentence. Jurors who ask questions regarding the consequences of such a deadlock are routinely reread the original instructions.

6.) Death is different not only in severity but also in kind from all other punishments. The Eighth and Fourteenth Amendments to the United States Constitution demand additional procedural safeguards in capital trials. See generally, *Furman v. Georgia*, 408 U.S. 238 (1972); *Gregg v. Georgia*, 428 U.S. 153 (1976); See *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)(holding that "death is qualitatively different"). The effect of this is that legislatures and courts are obligated to strike a difficult, but constitutionally mandated, balance between the non-arbitrary imposition of the death penalty, and the right of each defendant to individualized sentencing.[1] The Texas death penalty statute, by providing misleading information to jurors and then prohibiting the court, the attorneys, and the defendant from correcting that misinformation, both creates a constitutionally-impermissible risk of arbitrariness, and denies defendants their right to individualized sentencing.

The "10-12 Rule" Creates an Impermissible Risk of Arbitrariness

7.) The requirement that a death sentence not be imposed arbitrarily is derived from the "Eight Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case." *Caldwell v. Mississippi,* 472 U.S. 320, 323 (1985)(quoting *Woodson v. North Carolina,* 428 U.S. at 305 (1976)). It was chiefly the concern that decisions of life and death were being arbitrarily made that led the Supreme Court in 1972 to declare the death penalty in violation of the Eighth and Fourteenth Amendments to the Constitution. See generally, *Furman v. Georgia,* 408 U.S. 238 (1972). In capital cases, therefore, the Court is committed to ensuring that there is sufficient process to "guarantee, as much as is humanly possible, that the sentence was not imposed out of whim ... or mistake." *Eddings v. Oklahoma,* 455 U.S. 104, 118 (1982)(O'Connor, J., concurring) (overruled on other grounds).

8.) The Texas death penalty statute affirmatively creates confusion in the minds of the jurors. Jurors are first told that the jury as a whole "shall" answer "yes" or "no" to each issue presented; they are subsequently told that ten or more jurors must be in agreement to give one set of answers and that they must be unanimous in order to give another. This necessarily raises the question of what happens in the event that the jury, despite being instructed that it must answer each question, is unable

to get the minimum number of votes required to give either answer. The statute clearly provides that in the event of a non-answer, the defendant is to receive a sentence that is substantively identical to that which he or she would have received had there been a verdict in favor of life, and thus the law itself exhibits no confusion with regard to the situation presented. However, not only does the statute fail to do all that is humanly possible to ensure that decisions regarding life and death are not made as a result of that manufactured confusion, but it actively prohibits any clarification of the confusion by preventing jurors from being informed at any point of the effect of a non-answer.

9.) It is true that state legislatures are often given discretion to decide what information is relevant to a capital sentencing determination, and are thus able to exclude some information from jury instructions. See *California v. Ramos,* 463 U.S. 992, 1001 (1983)(holding that the Court generally "defer[s] to the State's choice of substantive factors relevant to the penalty determination"). However, that discretion is bounded by the requirements of due process. See, e.g., *Simmons v. South Carolina,* 512 U.S. 154, 175 (1994)(O'Connor, J. concurring in judgment); *Ramdass v. Virginia,* 530 U.S. 156, 195 (2000)(Stevens, J. dissenting); *Shafer v. South Carolina,* 532 U.S 36, 39 (2001); *Kelly v. South Carolina,* 534 U.S. 246, 248 (2002).

10.) In *Ramos,* the Court permitted a jury instruction regarding the State

1208

Governor's commutation powers on the ground that the instruction was both accurate and relevant to a legitimate state penological interest. *Ramos,* 463 U.S. at 1001-06. Despite being prompted to apply *Ramos* in the case of *Caldwell v. Mississippi,* the Court refused, holding that when the State argues that automatic appellate review is meant to determine whether the death penalty is appropriate in a given case, this information not only inaccurately depicts the role of the appellate court, but more importantly it serves an illegitimate state purpose by diminishing the ability of jurors to feel the gravity of their task. *Caldwell v. Mississippi,* 472 U.S. 320, 336-41 (1985).

11.) The Texas procedural rules and corresponding jury instructions are equally inaccurate and illegitimate. When jurors are instructed that they may not give a verdict of life unless ten or more agree upon a life answer in response to at least one of the three issues, this provides an incorrect picture of the state of the law. In fact, if only one juror is able to conclude that sufficient mitigation exists to warrant the imposition of a life sentence, despite that juror's inability to convince nine other jurors of his or her position, a life sentence will be imposed. This situation is unique to capital sentencing juries. During the guilt/innocence phase of a criminal trial, it is strictly correct to inform the jury that unanimity is required for either a verdict of guilt or acquittal. Although anything short of unanimity will lead to a mistrial, and thus might lead the defendant to be released as though he were

acquitted, he may still be retried and is thus unable to claim numerous basic constitutional protections such as that of double jeopardy. Under the Texas sentencing scheme, while the legislature might prefer a life sentence that derives from the agreement of ten jurors to one that arrives by default, the position of the defendant is identical in both. *See Padgett v. State*, 717 S.W.2d 55, 58 (Tex.Crim.App. 1986) (holding that "a jury's inability to answer a punishment question in a capital murder case has the same sentencing effect as a negative answer"). Thus, instructing the jury that ten or more of them must agree upon a "life" answer in order to sentence the defendant to life, regardless of whether the court informs the jury of the effects of a non-answer, is an incorrect statement of the law. So long as the Texas statute equates the sentencing consequences of a life verdict with the consequences of a non-verdict, the jury must not be misled to believe that anything more than one vote for life is required to secure that sentence. The false distinction between a "life" answer of ten or more jurors and a non-answer of less than ten jurors must be removed.

12.) This was not the case prior to 1981. Under Texas's former capital sentencing statute, if a jury failed to respond to any of the three special issues the result was a complete mistrial, requiring a new trial not just on sentencing but on guilt as well. *See Eads v. State*, 598 S.W.2d 304, 308 (Tex.Crim. App. 1980). Under such a scheme, setting aside the other arguments proffered here, an instruction that ten or

more jurors are require for a life sentence would be just as unobjectionable as an instruction that unanimity is required for death, a finding of guilty, or an acquittal. Presumably in response to Eads and the additional costs and difficulties that such a situation would pose, the Texas legislature in 1981 amended the death penalty statute, inserting the default sentence of life in the event of a non-answer. It was at this time that the legislature also added the infirm language that is now in Article 37.071(2)(a), prohibiting jurors from being informed of this default result. It is clear that the legislature wished to change the sentencing reality of defendants without informing jurors of this change. In doing so, however, the legislative change made the old instructions inaccurate depictions of the law.

13.) Not only are the instructions inaccurate, but they were intended to be inaccurate and confusing in order to serve an illegitimate state interest. Just as jurors who are informed that their decision will be reviewed for appropriateness by an appellate court are impermissibly led to deflect their awesome responsibility onto the appellate courts, Texas jurors are impermissibly led to relieve themselves of a sense of responsibility by placing it either upon the other jurors who are unwilling to join the vote in favor of life ("It is their fault that the defendant will be killed because by not joining me they prevent us from reaching the required minimum of ten votes"), or upon the statutory scheme that purports to require ten votes, rather than merely one, in order to give life ("It is the fault of the Texas

1211

statute because unless I can get at least ten votes for life, I myself may not vote for

life"). The principle behind *Caidwell* is that courts must ensure that jurors are not

invited to place their individual responsibility onto anyone else. Just as it is

impermissible to lead jurors to place that responsibility upon the appellate courts, it

is impermissible to lead them to place it upon their fellow jurors, or upon a

restrictive sentencing statute.

14.) Assuming *arguendo* that the Texas statute does not provide the jury with the

type of inaccurate and illegitimate information prohibited by a traditional reading

of *Caldwell,* new empirical data suggests that such a reading of *Caldwell* is entirely

inadequate to ensure that capital jurors feel the "truly awesome responsibility"

placed upon them. *McGautha v. California,* 402 U.S. 183, 208 (1971). One recent

study by the Capital Jury Project concluded that "many death penalty jurors seek,

and manage to find, ways to deny their personal moral responsibility for the

sentencing decision." Joseph L. Hoffman, "Where's the Buck? — Juror

Misperception of Sentencing Responsibility in Death Penalty Cases," 70 MD. L. J.

1137, 1157 (Fall 1995). Given that jurors hardly need to have inaccurate

information provided to them in order for them to deflect responsibility, the

Caldwell rule itself should be read in light of the empirically supported premise

that "death penalty jurors will take advantage of any available opportunity to

*mislead themselves* about the extent of their responsibility for the sentencing

decision." Id. If we are to give any meaning to Justice Harlan's concern that death penalty jurors be required to individually feel this terrific weight upon their shoulders, courts must inform jurors that just as each of them is required to vote for death in order for that punishment to take place, each has the power to give the defendant life unilaterally.

15.) The result of misinforming jurors and forcing them to deliberate without knowledge of what happens in the event of a non-answer is that they are presented with a false dilemma. Jurors are given general instructions that they must answer either "yes" or "no" to the issues before them, and specific instructions that define the minimum number of votes required to give each of these answers. Because they are told that a death sentence follows from one set of answers, and a life sentence follows from another, a reasonable juror might conclude that the *only* way to get either of these punishments is to answer the questions posed to them. See *California v. Brown*, 479 U.S. 538, 541 (1987)(quoting *Francis v. Franklin*, 471 U.S. 316 (1985)(holding that the constitutional sufficiency of capital sentencing instructions is determined by "what a reasonable juror could have understood the charge as meaning"). This leaves jurors free to speculate as to what would occur should they be unable to provide an answer to the issues. While it is possible that jurors might correctly guess that the failure to agree will result in a life sentence, it is perhaps more likely that they will conclude that a non-answer will lead to a

1213

lesser sentence, a costly retrial or resentencing proceeding, or absolute freedom for the defendant. Given that each of the jurors has already found the defendant guilty of a capital offense, none of these options would look desirable to a juror who honestly believes that a life sentence in warranted. Jurors are left to deliberate with the false belief that if they are unable to gain unanimity for a death sentence or ten or more votes for a life sentence, an altogether unacceptable third option will result.

16.) In *Simmons* the Court prohibited just this sort of unfairness, holding that "The State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." *Simmons*, 512 U.S. at 171. The Texas statute instructs jurors that at least ten of them must agree in order for a life sentence to be imposed and yet prohibits jurors from learning that only one vote is actually required for a life sentence. It is precisely because jurors are left to speculate when capital juries are not informed of the consequences of a deadlock that several states have declared the practice to be in violation of Eight Amendment protections as found in *Gregg v. Georgia ,428* U.S. 153 (1976). See, e.g., *Louisiana v. Williams ,392* So.2d 619, 634-35 (1980)(holding that "by allowing the jurors to remain ignorant of the true consequence of their failure to decide unanimously upon a recommendation, the

1214

trial court failed to suitably direct and limit the jury's discretion so as to minimize the risk of arbitrary and capricious action"; *New Jersey v. Ramseur*, 106 N.J. 123, 314 (1987)(stating that "the jury must be told, in effect, that the law recognizes deadlock as a permissible result, an outcome allowed by the statute, a legal trial verdict that by law results in imprisonment rather than death").

17.) While this confusion might pressure voters to change their position in order to avoid the unknown third option, it might lead to an even more basic misunderstanding. Because jurors are told that each question must be answered, and voting ballots do not include an option for non-answer, a reasonable juror following the instructions might believe that a non-answer is not only undesirable, but is in fact impermissible. Such a juror might believe that because he or she is unable to secure the ten votes required to give the answer that that juror wishes the jury to give, and because some answer either way must be given, that juror is in fact obliged to vote with the others and sentence the defendant to death. Although the law is clear that a death sentence may never be mandatory, and individual jurors must always be free to vote for life, such a belief would reasonably follow from the instructions mandated by the Texas sentencing scheme. In fact, jurors often mistakenly believe that they are required by law to impose death.[2] One study found that when jurors asked for clarification and were simply referred back to the original instructions, rather than being disavowed of their false belief they became

*more likely* to mistakenly believe that the evidence required them to vote for death.[3] This is precisely what the Texas statute would have judges do when jurors ask questions regarding the implications of a non-answer. The Texas statutory scheme creates a set of instructions that lead jurors to have false beliefs regarding their sentencing options, prohibits them from learning their true options, and then operates in a fashion that solidifies their pro-death leanings.

18.) It is not mere conjecture that jurors might be confused by the Texas statute in particular. A quick survey of Texas capital cases reveals numerous instances in which jurors have exhibited their confusion by asking the judge for clarification. Even in the absence of such evidence of confusion, however, the Court has stated unambiguously that the "trial judge's duty is to give instructions sufficient to explain the law, an obligation that exists independently of any question from the jurors or any other indication of perplexity on their part." *Kelly*, 2002 U.S. LEXIS 402, 19. The Court in *Kelly* recently held that though the jury in that case did not exhibit its confusion by inquiring about parole as the juries in *Simmons* and *Shafer* had, common sense was all that was required to know that the jurors might have been confused. Id., at 20. Similarly, even if empirical evidence were not available to demonstrate that the "10-12 Rule" fosters confusion among jurors, common sense is sufficient to conclude that the statute itself, and in particular its prohibition on permitting trial judges from fulfilling their duty to give sufficient instructions to

1216

explain the law, is unconstitutional.

19.) Commenting on the prohibition on informing juries of the effect of deadlock, Judge Clinton was likely correct when he stated in his dissent in *Sattiewhite v. Texas* that "[i]t seems apparent to me that the purpose ... is to act as a kind of inverted 'dynamite' charge. The Legislature did not want jurors to know that failure to reach a punishment verdict — a hung jury — would *not* result in the State incurring the additional expense of a retrial." *Sattiewhite v. Texas*, 786 S.W.2d 271, 292 (Tex.Crim.App. 1989)(Clinton, J. dissenting). The converse of this is that the Texas legislature did want to foster the false belief of jurors that a non-answer would require the additional expense of a retrial. Even when it is true that a hung jury will result in a costly retrial, the Constitution does not permit judges to refer to the additional expenses when they urge deadlocked juries to try to come to a verdict. See *United States v. Taylor*, 530 F.2d 49, 52 (**5th** Cir. 1976). In the event that such costs do not in fact exist, as is the case under the Texas statute, it is all the more clear that the Constitution cannot permit the legislature to benefit from that misperception by prohibiting judges and lawyers from correcting the mistaken beliefs of jurors.

20.) The inaccurate and illegitimate instructions provided to Texas capital sentencing juries creates an unacceptable risk that decisions are being made arbitrarily or by mistake. While it is true that uncertainty about the consequences

1217

of a non-answer might lead a lone holdout for a life sentence to join the other jurors voting for death, it is equally true that this confusion might lead at least one of the three holdouts for death to join the nine other jurors voting for life. See, e.g., *Jones v. U.S.*, 527 U.S. 373, 394 (1999) (stating that the petitioner could not demonstrate prejudice because "[i] t is just as likely that the jurors, loathe to recommend a lesser sentence, would have compromised on a sentence of life imprisonment as on a death sentence"). With regard to the Texas statute, while this point might be correct, it fails to prevent serious constitutional infirmities for two reasons. First, because the statute provides defendants with the exact same sentence regardless of whether they receive one vote for life or ten, the State itself is not prejudiced when votes for death are changed into votes for life for the sake of obtaining the ten vote minimum. The defendant, however, suffers a tremendous wrong when holdouts for life switch their votes to death out of confusion or a feeling of obligation. Thus, only the defendant, and not the State, could suffer harm from such confusion. Even if the State did have an interest in keeping life sentences that derive from a verdict distinct from life sentences that derive by default, that interest is vastly overshadowed by the defendant's interest. See *Lowenfield v. Phelps*, 484 U.S. 231, 252 (Marshall, J. dissenting)(stating that when the substantive outcome of a deadlock is identical to that of a life verdict, "the State's interest in a verdict . . . [is relatively weak, whereas the defendant's interest

1218

in preserving the integrity of a dissenting vote [is] correspondingly strong"). Stated simply, while the defendant never needs to have a voter change his or her vote out of confusion, the State, because death may only be imposed through a unanimous verdict, does. Thus, while it might be true that it would be difficult to determine whether a particular defendant was prejudiced, it is beyond dispute that the system as a whole can only prejudice the defendant.

21.) Second, it is eminently clear that when confusion regarding the outcome of a deadlock leads jurors to change their votes in either direction simply for the sake of a verdict, those decisions regarding life and death are being made arbitrarily. In cases in which the jury does not quickly, and without dispute, come to agreement on the appropriate punishment, the two most important factors remaining for a decision are the general confusion of the jurors caused by misinformation, and the initial disposition of the jury regarding whether or not to impose death. If nine jurors find sufficient mitigation to warrant a life sentence, at least one of the three jurors holding out for death will be likely to switch over solely out of uncertainty regarding the consequences of a non-answer or due to a mistaken belief that an answer must be reached at all costs. If eleven jurors vote for death and one finds that the mitigating evidence warrants life, that juror might be swayed to vote for death for identical reasons. When jury instructions misinform jurors and purposefully prevent clarification, and verdicts are rendered out of such confusion,

1219

it is clear that those instructions "introduce a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case." *Beck v. Alabama*, 447 U.S. 625, 643 (1980) (overruled on other grounds).

The "10-12 Rule" Denies the Defendant's Right to Individual Sentencing

22.) The Constitution requires that states balance the obligation to minimize the risk of arbitrariness with the need for individualized sentencing. "[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting death." *Woodson*, 428 U.S. at 304. In furtherance of this demand, the Court held in *Lockett* that "[T]he sentencer ... [can] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). Later cases have clarified that such mitigating evidence need only be proven by a preponderance of the evidence. See *Walton v. Arizona*, 497 U.S. 639, 649-50 (1990) (overruled on other grounds). More importantly, the Court has unequivocally held, and the Texas statute clearly states under Article 37.071(2)(f)(3) that a single juror must be permitted to consider and weigh mitigating evidence unilaterally, regardless of whether any other jurors accept the

evidence as mitigation. See *McKoy v. North Carolina*, 494 U.S. 433, 435 (1990); *Mills v. Maryland*, 486 U.S. 367, 374-75 (1988).

23.) Although the capital sentencing jury resembles juries that sit in the guilt/innocence phase of capital and non-capital trials, its role is distinct. All juries have historically been expected "to secure unanimity by comparison of views, and by arguments among the jurors themselves?' *Jones*, 527 U.S. at 382 (quoting *Allen v. United States*, 164 U.S. 492, 501 (1896). The capital sentencing jury, however, is charged more precisely with the duty to "express the conscience of the community on the ultimate question of life or death." *Lowenfield*, 484 U.S. at 238 (citation omitted). Because extraordinary protections are constitutionally required to ensure against unwarranted impositions of death, the Texas sentencing scheme, like the Louisiana statute, creates "a situation unique to the capital trial that a single juror, by persisting in a sentencing recommendation at variance with all of his fellow jurors, may alone cause imposition of a life sentence." *State v. Loyd*, 459 So.2d 498, 503 (La. 1984). The requirement of individualized sentencing in capital trials means not simply that defendants must be judged based upon their own character, but that they must be judged as such by individual jurors charged with considering the evidence and asked to make determinations of life and death. This clearly follows from the Court's demands that each individual juror be capable of considering mitigating evidence that that juror alone finds to exist simply by a

preponderance of the evidence.

24.) Members of a capital sentencing jury sit through the court's instructions, take an oath, and pass through the extraordinary process of death qualification. More than any other jury that sits in a courtroom, we can be confident in our presumption that such jurors are unbiased, impartial, and capable of deliberation. It cannot be correct, therefore, to say that informing jurors of the effects of a deadlock would act as an "open invitation for the jury to avoid its responsibility and to disagree." *Davis v. State*, 782 S.W.2d 211, 221 (Tex.Crim.App. 1992)(quoting *Justus v. Commonwealth*, 266 S.E.2d 87, 92 (Va. 1980). Rather, when a juror decides that sufficient mitigation exists to warrant a life sentence, and wishes to stick to that position despite the fact that it will prevent the jury from reaching a verdict, he does not violate some abstract duty to "secure unanimity" or to not "disagree." It is true that under the Texas sentencing statute, a juror would be abdicating his or her responsibility were he or she to not answer one of the questions.

"The issues are framed in a manner which permits them to be answered either affirmatively or negatively, and it is the purpose of the deliberative process to resolve juror vacillation?' *Nobles v. State*, 843 S.W.2d 503, 510 (Tex.Crim.App. 1992). Once deliberation has taken place, vacillation has been resolved, and each juror has settled upon his or her answer to the three special issues, however, surely

1222

the failure of those votes to meet the numerical requirements of the "10-12 Rule" cannot be considered a violation of the jury's duty. On the contrary, as the Supreme Court of New Jersey held in *Ramseur*, and as is equally true under Texas's statutory scheme, "A capital jury does not 'avoid its responsibility' by disagreeing — genuine disagreement is a statutorily permissible conclusion of its deliberations." *Ramseur*, 106 N.J. at 311.

25.) Indeed, *McKay* and *Mills* together stand for the principle that setting up barriers to prevent the jury from disagreeing can itself be constitutionally prohibited. This is precisely the case with the "10-12 Rule," the substantive effect of which is that it prohibits individual jurors from having a "meaningful opportunity" to judge the defendant on the basis of mitigation by creating the appearance that while each juror may introduce and weigh mitigating evidence unilaterally, a minimum of ten jurors are required to pass judgment on such factors.[4] This was exactly what the Court was concerned about in *McKoy* when it held that *"Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *McKoy*, 494 U.S. at 442-43. It is not enough for Texas to inform the jury that they "need not agree on what particular evidence supports an affirmative finding on the issue [of mitigation]' Article 37.07 i(2)(f)(3), if the effect of the entire instruction is that ten or more jurors must agree upon an

affirmative finding in order to give effect to the finding of any one juror. Each juror must be capable of giving effect to mitigating evidence when determining the appropriate punishment, and thus only one juror, not ten, must be sufficient under Article 37.071(2) (f) (2) to answer "yes" to the mitigation issue present by 37.071(2) (e) (1). By instructing the jury that ten jurors are required in order to give a "yes" answer, the Texas statute violates the principles underlying *Mills* and *McKoy* by preventing individual jurors from having a meaningful opportunity to consider mitigating factors.

The "10-12 Rule" Denies the Defendant's Right to a Fair and Impartiality

26.) As discussed above, the "10-12 Rule" operates by necessarily creating confusion in the minds of the jurors, and then prohibiting them from having their confusion clarified. This was earlier discussed within the context of the additional Eighth Amendment safeguards required to reduce the risk of arbitrary and unreliable sentences. An additional problem created by such confusion is that it permits jurors with misconceptions about the law formed prior to the trial and outside of the courtroom to introduce such ideas into deliberations.

27.) It is beyond dispute that capital juries are often dominated by misconceptions regarding the state of the law, their role as jurors, and the definition of key concepts such as mitigation. As discussed above, a reasonable juror who conscientiously attempts to understand the Texas sentencing statute might be led to

believe that just as a sentence of death may not be imposed unless the jury is unanimous with regard to all three special issues, a sentence of life may not be imposed unless at least ten jurors agree with respect to at least one of the three special issues. Not only does this mistaken belief raise an Eighth Amendment problem with regard to arbitrariness and reliability, but the possibility that jurors might draw upon their preconceived notions to resolve such a situation raises Sixth Amendment concerns.

28.) The right to an impartial jury has long been recognized as fundamental. See, e.g. *Lockhart v. McCree*, 476 U.S. 162 (1986). This is particularly crucial in capital cases, where the Constitution demands that "the decision whether a man deserves to live or die must be made on scales that are not deliberately tipped toward death." *Witherspoon v. Illinois*, 391 U.S. 510, 523 n. 20 (1968) (overruled on other grounds). To protect this right, courts are obliged to take reasonable steps to ensure the impartiality of a jury. It is for this reason that voir dire is made available to both parties, the judge is equipped with the power to strike jurors for cause, each party is granted a certain number of peremptory challenges, and jury instructions are fashioned to clarify the jury's role and impress upon them the importance of their task and the oath to which they have sworn.

29.) By manufacturing confusion in the minds of the jury and preventing the court or the attorneys from correcting it, the "10-12 Rule" creates fertile ground for

1225

jurors to draw upon their own biases and preconceived notions in coming to a verdict. This is particularly dangerous when jurors are confused about their sentencing options and the results of their sentencing decisions. The concept of a hung jury is widely understood to be a disfavored result. In most trials, a hung jury leads to a mistrial, and most people understand that a mistrial will either lead to a costly retrial or to the dropping of charges. While neither of these undesirable outcomes will result in the case of capital sentencing under the Texas statute, jurors are required to be kept in the dark with regard to that materially relevant fact. The "10-12 Rule" effectively forces the jury to wonder what would happen were they are unable to answer the special issues, possibly leads them to believe that an unacceptable third alternative other than life and death would follow, and then leaves them to draw upon their own preconceived notions in coming to a verdict. While the concept of a mistrial might be distasteful to a holdout, and is certainly disfavored by the court, during the guilt/innocence phase of a criminal trial, it is surely all the more unacceptable to a juror in a capital sentencing proceeding who has already found the defendant guilty of a capital offense. The risk that jurors will enter the courtroom with that misconception is too great to allow them to continue deliberating in the dark.

30.) To ensure that capital juries do not rely upon their biases regarding hung juries during deliberations, jurors must either have their misperceptions corrected, or they

must be examined for bias during voir dire. Because of the additional Eighth Amendment problems with forcing jurors to deliberate using false information, this Court should declare Article 37.071(2)(a) unconstitutional with respect to its prohibition on informing the jury of the effects of a deadlock. The Court should protect the right to a fair and impartial jury by informing the jury that if it is unable to reach the minimum number of votes required to give an answer to any one of the special issues, it is permitted to return the ballot without any answer. In the event that the jury is unable to answer any of the three special issues, the court will sentence the defendant to life imprisonment.

31.) Should this Court not wish to protect the defendant's right to a fair and impartial jury by invalidating Article 37.071(2)(a), attorneys must be permitted to voir dire potential jurors to discover what they believe would happen in the event of a nonanswer. See *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)(voir dire "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored"). Not only is such questioning permitted by the Texas statute on the grounds that it would not involve informing prospective jurors of the actual consequences of a non-answer, but it is clearly in line with the central holding in *Turner v. Murray* that the risk of juror bias must be considered "in-light of the ease with which that risk could have been minimized." *Turner v. Murray*, 476 U.S. 28, 36 (1986),

(overruled on other grounds). In *Turner,* the Court held that because of the complete finality of the death penalty, and the risk that racial prejudice would infect jury deliberations, the trial judge failed to protect the defendant's right to an impartial jury by not permitting the lawyers to question prospective jurors on their racial prejudice. Id. Similarly, because of the finality of the death penalty, and the risk that preconceived notions regarding the effects of a hung jury will improperly infiltrate jury deliberations, the right to an impartial jury must be protected at the very least by granting attorneys the right to question jurors about their beliefs. While defendants may not have an absolute right to voir dire potential jurors regarding their beliefs about deadlocked juries, when the legislature has barred all other means of bringing such biases to light and correcting them it becomes imperative that defendants be equipped with the tools to confront those who sit in judgment upon them.

32.) In *King v. Lynaugh,* the Fifth Circuit sitting en banc reversed an earlier decision by a three judge panel which concluded that for Texas to deny a defendant the opportunity to present information about parole eligibility is, therefore, to limit his decision to bring to the sentencer's consideration relevant information and circumstances that might cause the jury to decline capital punishment. *King v. Lynaugh,* 828 F.2d 257, 264 (5th Cir. 1987). In his dissent from the en banc ruling, Judge Rubin wrote: "It is precisely because Texas courts refuse to give accurate,

corrective instructions that voir dire about potential jurors' understandings of parole law becomes necessary?' *King v. Lynaugh*, 850 F.2d 1055, 1067 (1988)(Rubin, Williams, Johnson, JJ. dissenting). An essential feature of the Court's holding in that case was that trial judges can use their discretion in determining how to restrict voir dire and fashion jury instructions, relying upon "immediate perceptions' *Rosales-Lopez*, 451 U.S. at 188-89, and the "demeanor" of the jury, *Ristaino v. Ross*, 424 U.S. 589, 595 (citation omitted). The present case is distinguishable from *King*, however, in that it is the legislature, and not the trial judge, that has decided not to issue accurate, corrective instructions to the jury regarding deadlock. Whereas the trial judge maintains the freedom to instruct the jury on parole or to allow the attorneys to voir dire the jury with regard to their beliefs on parole, the "10-12 Rule" expressly restricts the judge's discretionary powers with regard to instructing the jury on the law of deadlock. Thus, even if *King* is correct in instances in which it is the courts which make the decision to not give clarifying instructions, when the legislature makes such a decision as is the case here, it is the duty of the courts to protect the right to an impartial jury by providing additional safeguards through the process of voir dire. That duty derives from the unique advantages that the trial judge has over the legislature to ensure a fair and impartial jury on a case by case basis.

The "10-12 Rule" Prevents the Defendant from Receiving Effective Assistance of

Counsel

33.) It is a fundamental principle in death penalty jurisprudence that "If an experienced trial judge, who daily faces the difficult task of imposing sentences, has a vital need for accurate information about a defendant and the crime he committed in order to be able to impose a rational sentence in the typical criminal case, then accurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision." *Gregg*, 428 U.S. at 190 (Stewart, Powell, and Stevens, JJ.). This is so clear that the Fifth Circuit in *Burley v. Cabana* declared that it was ineffective assistance of counsel in violation of the Sixth Amendment for the trial lawyer to not "inform the trial court of sentencing alternatives..." *Burley v. Cabana*, 818 F.2d 414, 418 (5th Cir., 1987).

34.) If it was ineffective assistance of counsel to not inform the judge of his sentencing alternatives, it would surely be ineffective assistance of counsel to not inform a sentencing jury of its sentencing alternatives. Yet this is precisely what the "10-12 Rule" forces trial counsel to do by preventing attorneys from informing the jury of the true state of the law. A reasonable defense attorney would surely inform each juror that not only is it that juror's right, but **it** is in fact that juror's duty, to individually weigh the evidence presented and make a determination for life or death on the basis of that individual's conscience. Such a statement would

accurately describe the role of the capital juror, and would provide the jury with information materially relevant to their sentencing responsibilities. To prevent an attorney from informing the jury of the true state of the law when such information is essential to the capital juror's role is to prevent the attorney from providing the defendant with his right to adequate counsel. This is equally true in the event that counsel is prevented from conducting voir dire in order to intelligently utilize counsel's peremptory strikes to remove prospective jurors harboring devastating misunderstandings of the consequences of deadlock under the Texas death penalty.

The "10-12 Rule" Has a Coercive Effect upon the Jury

35.) "[T]he principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." *Jenkins v. United States*, 380 U.S. 445, 446 (1965)(quoting the Solicitor General's brief to the Court). In *Jenkins*, the Court declared that "in its context and under all the circumstances" the judge's statement to the jury that "You have got to reach a decision in this case" was coercive. Id. In *United States v. United States Gypsum Company*, the Court applied *Jenkins* in holding that reversal would have been appropriate "solely because of the risk that the foreman believed the court was insisting on a dispositive verdict." *United States v. United States Gypsum Company*, 438 U.S. 422, 460-62 (1978). In his concurrence with the Third Circuit's judgment in the case prior to the Supreme Court's ruling, Judge Adams concluded that when the

jury foreman suggested to the trial judge that he knew the court wanted a verdict "one way or the other" the trial judge at that time "possessed the affirmative obligation to make it clear to the foreman that the jury had the option of reaching no verdict, should juror unanimity prove impossible." *United States v. United States Gypsum Company,* 550 F.2d. 115, 133 (3rd Cir., 1977)(Adams, J. concurring).

36.) Within the context of capital sentencing, and taking into consideration the circumstances required by the Texas statute, instructing the jury that they "shall" answer "yes" or "no" to the special issues presented to them acts as undue coercion. It has already been shown above that the Texas statute necessarily creates confusion in the minds of jurors, and might affirmatively mislead jurors to believe that a third alternative to life and death exists. Within the context of the demand that each issue must be answered, setting minimum votes for each answer has the effect of coercing holdouts for life or death to feel that the need to come to a verdict takes precedent over their conscientiously held belief. While this is unacceptable in all criminal trials, it is particularly unacceptable in capital sentencing proceedings.

37.) In *Lowenfield,* the Court in a capital case upheld the use of a supplemental charge similar to an "Allen charge" that was intended to encourage the jury to come to a verdict. *Lowenfield,* 484 U.S. at 240-41. The Court acknowledged that

although the traditional justification for such a charge — "the avoidance of the societal costs of a retrial" — did not exist, the State still had a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." Id, at 238 (citation omitted).

38.) Under the Texas sentencing statute the societal cost justification for pressuring juries to return a verdict is similarly absent. Thus the only possible State interest that could balance against the strong State and private interests that jurors not be coerced, that defendants be tried by a fair and impartial jury, and that determinations of punishment be reliable and non-arbitrary is that capital juries are meant to speak the conscience of the community.

39.) While it is true that capital juries are meant to represent the community, two reasons exist for why this value cannot outweigh the risk of coercion, bias, and arbitrariness that are created by not informing the jury that they have the option of not answering a question, and that the effect of a non-answer is a life sentence. First, in order for the jury to enter a verdict of death under the Texas scheme, all twelve members of the jury must agree on all three special issues. Thus, while the purpose of the jury is to express the collective conscience of the community, just as each community is made up of individuals each jury is made up of individuals. What we are really looking For is *not* a *jury* that as a *unit is* asked to speak the singular voice of the community, but rather we are asking twelve representative

individuals to each speak his or her own voice, and through that we hope to discern the collective conscience of the community.[5]  It is a mistake, therefore, to consider that the State's interest in having the jury speak the conscience of the community conflicts with the State's interests in not coercing the jury, providing a fair and impartial jury, and limiting the risk for arbitrary and unreliable decisions. Those interests are one and the same, for if any member of the jury feels undue pressure to change his vote in order for the jury to come to a verdict, the State's interest in having the jury speak the conscience of the community is frustrated. It is only when each member of the jury is left entirely free to weigh the evidence presented, is permitted to unilaterally introduce and consider mitigation, and is fully informed of the individual, awesome responsibility that he or she bears in making this decision between life and death that the conscience of the community will be expressed. The Court must allow for the very real possibility that a non-verdict is itself an expression of the community's truly divided conscience with respect to the issue of whether an individual should live or die.

40.) Secondly, even if the State's interest in a verdict does stand in opposition to the other interests that the State and the individual defendant might hold, the entire body of capital punishment jurisprudence speaks to the overriding nature of our need to protect against unwarranted impositions of death. The State always has an interest in reaching a verdict and having the jury speak the voice of the community.

That interest has not been allowed to supercede the defendant's right to a fair and impartial jury, to not be subjected to cruel and unusual punishment, or to not receive the equal protection of the law.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that: (1) the Court declare Texas Code of Criminal Procedure Articles 37.071(2)(d)(2), 37.071(2)(f)(2), and 37.071(2)(a) unconstitutional; (2) the Court instruct the jury that in the event that they are unable to answer any issue presented to them they are to return the ballot without said answer, and that a life sentence will be imposed upon the defendant pursuant to state law; and in the alternative (3) the Court permit the attorneys to voir dire prospective Jurors to discover whether they harbor any preconceived notions regarding the consequences of a deadlock that will prevent them from accurately and reliably weighing the evidence presented at sentencing.

RESPECTFULLY SUBMITTED,

_____

WILLIAM H. "BILL" RAY
STATE BAR NO. 16608700
ATTORNEY FOR DEFENDANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383
(817) 831-8306, FAX
"WHERE THE WEST BEGINS"

1235

TIM MOORE
STATE BAR NO. 14378300
ATTORNEY FOR DEFENDANT
115 W. SECOND ST.
SUITE 202
FORT WORTH, TEXAS 76102
(817) 332-3822
(817) 332-2763, FAX

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion was hand delivered to the Office of the Tarrant County Criminal District Attorney's office, on the date shown by the clerk's file stamp.

_____
WILLIAM H. "BILL" RAY

1236

(Footnotes)   1 It is precisely this difficulty that caused Justice Blackmun to conclude that the entire enterprise of seeking to make the death penalty constitutionally acceptable was flawed. In his dissent from the Court's denial of a petition to grant a writ of certiorari, Blackmun declared: "From this day forward, I no longer shall tinker with the machinery of death.... It is virtually self-evident to me now that no combination of procedural rules or substantive regulations ever can save the death penalty from its inherent constitutional deficiencies." *Collins v. Collins,* 510 U.S. 1141, 1145 (1994) (Blackmun, J. dissenting).

2 See generally, Garvey, Stephen P., Sheri Lynn Johnson, and Paul Marcus, "Correcting Deadly Confusion: Responding to Jury Inquiries in Capital Cases," 85 Cornell L. Rev. 627 (March 2000). In addition to this mistaken belief, one study also found that "[a]bout half the jurors incorrectly believe that a mitigating factor must be proved beyond a reasonable doubt. Less than a third of jurors understand that mitigating factors need only be proved to the juror's personal satisfaction. The great majority of jurors — in excess of sixty percent in both life and death cases — erroneously believe that jurors must agree unanimously for a mitigating circumstance to support a vote against death." Eisenberg, Theodore, and Martin T. Wells, "Deadly Confusion: Juror Instructions in Capital Cases," 79 Cornell L. Rev. 1 (Nov. 1993).

3 85 Cornell L. Rev, at 639.

4 In *Roberts v. Louisiana,* the Supreme Court invalidated Louisiana's mandatory death penalty scheme on the grounds that it "afford[ed] no meaningful opportunity for consideration of mitigating factors presented by the circumstances of the particular crime or by the attributes of the individual offender." *Roberts v. Louisiana,* 428 U.S. 325, 333-34 (1976). That the sentencer must have a "meaningful opportunity" to consider mitigating factors suggests that not only may legislatures not actively prohibit such consideration, but they also must also take positive steps to foster it when necessary.

5 This statement of representativeness should not be taken to be an admission that capital juries are representative of the community. The process of death qualification leads to the removal for cause of conscientious objectors to the death penalty despite the fact that they are no less members of the community than anyone else, as well as individuals with qualms about the death penalty who are stricken through the use of peremptory challenges. Numerous studies have shown that those individuals who remain are more prone to support the death penalty than the average member of society, and are also more likely to convict the defendant either because of their personal beliefs, or because the extremely time intensive process of death qualification focuses jurors not upon the guilt or innocence of the defendant, but rather upon what penalty he deserves once his guilt has been reached.

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| | )( | |
| VS. | )( | DISTRICT COURT |
| | )( | |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT OUNTY, TEXAS |

## THE COURT'S ORDER ON THE DEFENDANT'S MOTION TO DECLARE THE 10-12 RULE UNCONSTITUTIONAL

CAME UPON to be heard the Defendant's Motion for the Court to Declare the 10-12 Rule Unconstitutional. The Court, having reviewed the Motion of the Defendant, the response, if any, and after hearing the evidence and arguments thereon, and the applicable authorities, and after careful consideration, finds that the Motion of the Defendant should be, and is hereby:

_____    Granted, the Court declares Texas Code of Criminal Procedure Articles 37.071(2)(d)(2), 37.071(2)(f)(2), and 37.071(2)(a) unconstitutional; further, the Court will instruct the jury that in the event that they are unable to answer any issue presented to them they are to return the ballot without said answer, and that a life sentence will be imposed upon the defendant pursuant to state law;

X    Denied.

SO ORDERED.
DATE: _9/18/07_

_____
ROBERT K. GILL
JUDGE

1238

NO. 0885306D

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
Time
SEP 1 6 2003
1:30
By _____ Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## DEFENDANT'S SUPPLEMENTAL MOTION TO QUASH THE INDICTMENT AND DECLARE THE DEATH PENALTY UNCONSTITUTIONAL DUE TO DISPARATE TREATMENT

TO THE HONORABLE ROBERT K. GILL, JUDGE 213TH DISTRICT COURT:

COMES NOW, the Defendant, by and through his attorneys of record, William H. "Bill" Ray, and Tim Moore, and files this ***Suppplement to his Motion to Quash the Indictment and Declare the Death Penalty Unconstitutional Due to Disparate Treatment, Specifically Unequal Financial Constraints and Criteria, in the Several Counties of the State of Texas and that by such Constraints, Causes Disparate Treatment in the Decision to Seek the Death Penalty by the Various Prosecuting Authorities of Persons Charged with Capital Murder in the State of Texas,*** and in support thereof, would show the Court as follows:

On September 4, 2003, the Defendant filed the main body of the above referenced motion. Since that time, the Defendant has received additional information from Grayson and Caldwell counties, and that information is attached hereto. Neither of these two counties previously responded to the Defendant's

requests.

In Caldwell County, there appears to be only one case that was prosecuted in the time frame requested, and it appears that the State sought the death penalty.

In Grayson County, it appears that there were 9 capital murder cases filed. Of those, three were tried, resulting in two life sentences and one acquittal. The other cases were disposed without trials. The budgeting and expense data does not distinguish between cases when the State does and does not seek the death penalty, however, the list of cases indicates that in most cases the State does not seek the death penalty.

## **PRAYER**

Premises considered, the Defendant reurges his Prayer that the Court declare that the death penalty, as applied in this case is unconstitutional, in that in at least 26 counties in this state, with only one and possibly two counties having a population over 100,000, and over a five year period, the death penalty is routinely not sought by the prosecutor, based on financial reasons.

1240

RESPECTFULLY SUBMITTED,

_____
WILLIAM H. "BILL" RAY
STATE BAR NO. 16608700
ATTORNEY FOR DEFENDANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383, (817) 831-8306, FAX
"WHERE THE WEST BEGINS"

TIM MOORE
STATE BAR NO. 14378300
ATTORNEY FOR DEFENDANT
115 W. SECOND ST., SUITE 202
FORT WORTH, TEXAS 76102
(817) 332-3822, (817) 332-2763, FAX

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion was hand delivered to the Office of the Tarrant County Criminal District Attorney's office, on the date shown by the clerk's file stamp.

_____
WILLIAM H. "BILL" RAY

1241

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## THE COURT'S ORDER ON THE
## DEFENDANT'S MOTION TO QUASH THE INDICTMENT AND
## DECLARE THE DEATH PENALTY UNCONSTITUTIONAL DUE
## TO DISPARATE TREATMENT, SPECIFICALLY UNEQUAL

The Court, having reviewed the Motion of the Defendant, the response, if any, and after hearing the evidence and arguments thereon, and the applicable authorities, and after careful consideration, finds that the Motion of the Defendant should be, and is hereby:

_____     Granted, the court finds that, as applied in this case, the death penalty is unconstitutional in that prosecutors in counties with smaller populations typically waive seeking the death penalty due to an unjustifiable standard, that is financial reasons.
The Court quashes the indictment in this case.

_____     Denied.


SO ORDERED.

DATE: _____

_____
ROBERT K. GILL
JUDGE

Defendant's Supplemental Motion to Declare Death Penalty Unconstitutional Because of Financial Disparity, Page 4

1242

NAME OF COUNTY _CALDWELL_ , COUNTY SEAT _LOCKHART_

APPROXIMATE POPULATION OF COUNTY _32,194_

## CAPITAL MURDER CASES WHEN THE STATE **SEEKS** THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
| --- | --- | --- |
| 2003 | — 0 — | — 0 — |
| 2002 | — 0 — | — 0 — |
| 2001 | — 0 — | 48,805 |
| 2000 | — 0 — | — 0 — |
| 1999 | — 0 — | — 0 — |

## CAPITAL MURDER CASES WHEN THE STATE **DOES NOT** SEEK THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
| --- | --- | --- |
| 2003 | — 0 — | — 0 — |
| 2002 | — 0 — | — 0 — |
| 2001 | — 0 — | — 0 — |
| 2000 | — 0 — | — 0 — |
| 1999 | — 0 — | — 0 — |

1243

08/04/2003 09:29:07   A/P TRANSACTIONS - CALDWELL COUNTY, TEXAS   (GEN/LEG DETAIL) (by DUE DATE)   09/01/2000 thru 09/30/2001   Page   1

| Tran | Tran-Date | G-P | Not-in-GL | Encumbered | Expensed | G/L Account | Check | Chk-Date | Invoice Number | Vendor Name | Stub Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 29 | 10/13/2000 | X-P | .00 | .00 | 10000.00 | 001-5-3230-0412 | 31754 | 10/16/2000 | 00-067 | CARLOS GARCIA | 00-067 ARTHUR JACKSON |
| 899 | 11/19/2000 | X-P | .00 | .00 | 2459.36 | 001-5-3230-0412 | 32046 | 11/20/2000 | 00-067 | CARLOS GARCIA | CAUSE: 00-067 |
| 1385 | 12/18/2000 | X-P | .00 | .00 | 2569.33 | 001-5-3230-0412 | 32656 | 12/18/2000 | 00-067 | CARLOS GARCIA | 00-067 KEITH JACKSON |
| 1388 | 12/18/2000 | X-P | .00 | .00 | 10000.00 | 001-5-3230-0412 | 32656 | 12/18/2000 | 00-067 | CARLOS GARCIA | 00-067 KEITH JACKSON |
| 2667 | 04/08/2001 | X-P | .00 | .00 | 5305.00 | 001-5-3230-0412 | 34068 | 04/09/2001 | 00-067 | DR. CECIL REYNOLDS | 00-067 KEITH JACKSON |
| 2048 | 04/09/2001 | X-P | .00 | .00 | 317.34 | 001-5-3230-0412 | 33251 | 02/12/2001 | 5-693-12327 | FEDERAL EXPRESS CORPORATI | CAUSE # 00-067 |
| 2049 | 02/09/2001 | X-P | .00 | .00 | 62.30 | 001-5-3230-0412 | 33251 | 02/12/2001 | 5-693-44065 | FEDERAL EXPRESS CORPORATI | INV. 5-693-12327 |
| 24 | 10/13/2000 | X-P | .00 | .00 | 5000.00 | 001-5-3230-0412 | 31763 | 10/16/2000 | 00-067 | GREG ZANEY | INV. 5-693-44065 |
| 1387 | 12/18/2000 | X-P | .00 | .00 | 6021.02 | 001-5-3230-0412 | 32673 | 12/18/2000 | 00-067 | GREG ZANEY | 00-067 ARTHUR JACKSON |
| 124 | 09/29/2000 | X-P | .00 | .00 | 204.60 | 001-5-3230-0412 | 31733 | 09/29/2000 | 11009564 | DEPT. 56- 810078787 | 00-067 KEITH JACKSON |
| 126 | 09/29/2000 | X-P | .00 | .00 | 194.68 | 001-5-3230-0412 | 31733 | 09/29/2000 | 109712573 | DEPT. 56- 810078787 | INV. 11009564-001 |
| 1831 | 01/26/2001 | X-P | .00 | .00 | 122.30 | 001-5-3230-0412 | 33075 | 01/29/2001 | DIST. JURORS | RICARDO'S PIZZA BY THE SL | INV. 109712573-001 |
| 1252 | 12/08/2000 | X-P | .00 | .00 | 300.00 | 001-5-3230-0412 | 32633 | 12/08/2000 | ME-98-0039 | TRAVIS COUNTY MEDICAL EXA | PIZZA FOR DISTRICT JURORS |
| 1384 | 12/18/2000 | X-P | .00 | .00 | 6054.90 | 001-5-3230-0412 | 32707 | 12/18/2000 | 00-067 | TRIPLE J INVESTIGATIONS | ME-98-0039 L. SPRADLING |
| 786 | 11/09/2000 | X-P | .00 | .00 | 148.06 | 001-5-3230-0412 | 32032 | 11/13/2000 | 8987 | WAL-MART COMMUNITY BRC | 00-067 KEITH JACKSON |
| 787 | 11/09/2000 | X-P | .00 | .00 | 46.32 | 001-5-3230-0412 | 32032 | 11/13/2000 | 9027 | WAL-MART COMMUNITY BRC | 8987 |
|  |  |  | .00 | .00 | 48805.23 | * TOTAL * CAPITAL MURDER TRIAL |  |  |  |  | 9027 |
|  |  |  |  |  |  |  |  |  |  | Budget Bal = | .00 |

16 Entries   .00   .00   48805.23

1244

08/04/2003  09:29:31    · A/P DETAIL RECAP - CALDWELL COUNTY, TEXAS    (GEN/LEG DETAIL) (by DUE DATE)    09/01/2000 thru 09/30/2001    Page  2

```
Include UNPAID Trans ......: YES          Print Specific VENDOR .....:
Include SELECTED to PAY ...: YES          Print Specific FUND .......: 001
Include PAID Trans ........: YES          Print Specific DEPARTMENT .: 3230
Include CANCELED Trans ....: NO           Print Specific LINE ITEM ..: 0412
Exclude TRANSFERRED to G/L: NO            Print Specific BANK CODE ..:
```

| Fund | TOT-Trans | TOT-Paid | TOT-Owed - Selected + ON-Hold + NEW-Tran + Cancelled | NO-GL-Action | Encumbered | Expensed | Accrued |
|------|-----------|----------|-----------------------------------------------------|--------------|------------|----------|---------|
| 001 | 48805.23 | 48805.23 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | 48805.23 |
| Total | 48805.23 | 48805.23 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | 48805.23 |

1245

NAME OF COUNTY __Grayson__, COUNTY SEAT __Sherman__

APPROXIMATE POPULATION OF COUNTY _____110000_____

## CAPITAL MURDER CASES WHEN THE STATE **SEEKS** THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | | |
| 2002 | | |
| 2001 | | |
| 2000 | | |
| 1999 | | |

## CAPITAL MURDER CASES WHEN THE STATE **DOES NOT** SEEK THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | 525,000 | 530,00 |
| 2002 | 450,000 | 486,722 |
| 2001 | 325,000 | 305,293 |
| 2000 | 350,000 | 366,897 |
| 1999 | 270,000 | 255,485 |

Amounts are total indigent
defense costs, - capital _or not_

Total for all district costs

Not broken down by capital or not

Not broken down by death sought or not

1246

## Capitol Murders

### 1998-2002

| Year | | |
|---|---|---|
| 1998 | 1 - Guilty - Jury Verdict | Life |
| | 1 - Guilty Plea | Life (pled to lesser of murder) |
| 1999 | 3 Guilty Plea's | Life |
| | 1 Guilty - Jury Verdict | Life |
| 2000 | 1 Guilty - Jury Verdict | Life |
| 2001 | 1 Guilty Plea | 60 yrs |
| 2002 | 1 Acquitted - Jury Verdict | Ø |

### Att. Capitol Murder

| Year | | |
|---|---|---|
| 1998 | 1 Guilty - Jury Verdict | 10 yrs Prob |
| | 1 Guilty Plea | 12 yrs |
| 1999 | 1 Guilty Plea | Life |
| 2000 | 1 Def Adj | 10 yrs Prob - 10,000 fine |
| 2001 | 1 Guilty - Jury Verdict | 55 yrs |
| 2002 | 1 Guilty Plea | 35 yrs |
| 2003 | 1, case pending | |

CAPITOL Murder)
1998-2003

Blattner, Brooke Allison                    Filed: 8-11-99
Cause # 046398                              Ct: 15th
Atty Butscher, Jason (Apt) 3,150 01         Conf. Life TDCJ
Disp Guilty Plea                            Fine
Date: 6-28-00                               CC 186.25


Carpenter, Matthew Scott                    Filed 9-13-01
Cause 048067                                Ct 15th
Atty Garcia Robert T                        Conf 60 yr TDCJ
Disp Guilty Plea                            Fine
Date 10/17/02                               CC 0


Freeze, Dwird Carl                          Filed: 3/17/99
Cause 046124                                Ct 15th
Atty: Butscher, Jason (Apt) 750 00          Conf Life TDCJ
Disp Guilty Plea                            Fine
Date 3-19-99                                CC


Hicks, Richard Carl                         Filed 2/7/02
Cause 019961                                Ct 336th
Atty Wyne, Michael                          Conf NA
Disp Acquitted - JV                         Fine NA
Date 5/25/02                                CC NA

Hill, Monica Jo

Cause 046808

Atty Richardson Jr. Robert E          Conf   Life
Disp Guilty - Jury Verdict            Fine   0
Date   11/11/99                       CC   206 25

---

Hines, John Edward Jr                 Filed  2-9-00
Cause  046853                         Ct   15 th
Atty  McBerry, John                   Conf.  Life
Disp  Guilty, Jury Verdict            Fine   0
Date  6/27/00                         CC     0
    ( Cause # 046404 dismissed/re indicted 6/28/00)

---

McConnell Rebecca Lynn                Filed:  8/11/99
Cause  046410                         Ct  15 th
Atty  Fry, James A (Apt)              Conf   Life   TDCJ
Disp  Guilty Plea                     Fine
Date  6/28/00                         CC   186 25

---

Paul, Terry Lynn                      Filed  10-14-98
Cause  045865                         Ct  59 th
Atty: Cardwell, Garland D (Apt)       Conf   Life  TDC
Disp  Guilty - Jury Verdict           Fine
Date  5/20/99                         CC   206 25

---

Poss, Ernie Parrish                   Filed  9/9/98
ve  045804                            Ct  336
Atty Kamras, Jonathan (Apt)           Conf.  Life
Disp: Guilty Plea - to lesser charge of murder.   Fine  0
Date: 7/26/99                         CC  186 25

1249

Attorney Register
1998-2003

Green, David Carl                    Filed 3-12-99
Cause # 046123                       Ct   15th
Atty  Butcher, Jason (Apt)           Conf  TDCJ
Disp  Guilty Plea    included        Fine   0
Date 3/19/99         in prior cont   CC    186 25


Gebhart, Ricky                       Filed  2-11-98
Cause # 045040                       Ct   15th
Atty  Cooper, Jr Stephen             Prob - 10 yrs
Disp  Guilty - Jury Verdict          Fine  10,000
Date   4/8/99                         CC   186 25


Hudson, Cornelius Germaine           Filed 10/14/98
Cause  045854                        Ct   59th
Atty  McGown, Jack Lewis (Apt)  37   Conf  12 yrs TDCJ
Disp  Guilty Plea            1100    Fine
Date   7/30/99                        CC   186. 25


Hussey, Christopher Clinton          Filed 1/16/03
Cause  049356                        Ct   59th
Atty  Brown, Barrett Keith           Conf  NA
Disp   Pending                       Fine  NA
Date      NA                          CC   NA


1250

Kennedy, James Wayne                          File 11/14/00

Atty  Joe Neal Smith (Apt)        +        Conf - PROB 10 yrs
Disp  Def Adj                     O        Fine  10,000
Date  12/14/01                             CC    186$^{35}$

Sherman, Joshua Wayne                      File  4/25/02
Cause  04B654                              Ct    59th
Atty  Smith, Joe Neal                      Conf  35 yrs  TDCT
Disp  Guilty Plea                          Fine  O
Date  2/28/03                              CC    O

●

Reynolds, Jeremy Jon                       Filed  7/19/0
Cause  0479464  (Cause 012931 dismissed re indicted) Ct  536th
Atty  Butchers, Jason (Apt)      + 5,720   Conf  55 yrs TDCT
Disp  Guilty - Jury Verdict                Fine  O
Date  2/4/02                               CC    O

●

CAUSE NO. 0885306D

THE STATE OF TEXAS         FILED       IN THE 213TH

V.    THOMAS A. WILDER, DIST. CLERK   JUDICIAL DISTRICT COURT
TARRANT COUNTY, TEXAS

BILLY JACK CRUTSINGER SEP 1 7 2003   TARRANT COUNTY, TEXAS

Time _____

By _____ Deputy

## STATE'S RESPONSE TO DEFENDANT'S MOTION TO QUASH INDICTMENT

TO THE HONORABLE JUDGE OF THE 213TH JUDICIAL DISTRICT COURT:

COMES NOW the State of Texas by and through Tim Curry, the Criminal District

Attorney of Tarrant County and presents its response to "Defendant's Motion to Quash

Indictment," and would show the Court the following:

I.   *Defendant Crutsinger's motion claims disparate treatment of capital murderers.*

In a motion filed September 4, 2003, Defendant Billy Jack Crutsinger argues that his

indictment for capital murder in the above numbered and styled case should be quashed and

Texas' death penalty scheme should be declared unconstitutional. <u>See</u> <u>generally</u> Defendant's

Motion to Quash the Indictment and Declare the Death Penalty Unconstitutional *etc.*

(hereinafter "Defendant's motion"). Defendant Crutsinger maintains that the decision to seek

the death penalty in Texas is disparately applied in similar cases depending on the population

of the county in which a particular capital murder is prosecuted.

1252

In particular, Defendant Crutsinger alleges that a district attorney in a large (more populous) Texas county has a large budget and is able to seek the death penalty more frequently than a district attorney in a less populated, more rural county. <u>See</u> Defendant's motion at 2. According to Defendant Crutsinger, a defendant in a Texas county with a large budget is likely to receive the death penalty, whereas a similarly situated defendant in one of Texas' less populated counties will not be at risk to receive the death penalty.

II.    *The alleged facts offered by Defendant Crutsinger in support of his disparate treatment claim.*

In support of his disparate treatment claim, Defendant Crutsinger has attached some data to his motion. The attachments contain certain data supplied by (1) the Prosecutor Assistance Unit of the Office of the Texas Attorney General, <u>see</u> Defendant's motion at Ex-5, and (2) the 209 (out of 254) Texas counties that responded to Defendant Crutsinger's "so-called open records request."[1] <u>See</u> Defendant's motion at 5-6 (claiming that out of 254

---

[1]    The State uses the phrase "so-called open records request" to describe the letter(s) that Defendant Crutsinger sent to Texas counties in July 2003 because a quick survey of the returned forms suggests that many of the counties did not "collect[ ], assemble[ ], or maintain[ ]" the capital murder budgetary figures that Defendant Crutsinger sought. It appears that many of the Texas counties who attempted to complete the tabular form (supplied by Defendant Crutsinger) do not budget by the crime. <u>See,</u> <u>e.g.</u>, Defendant's motion at Ex-12 (Falls County's budget for 2003 budgeted $100,000 for civil and $100,000 for criminal); Defendant's motion at Ex-13 (notation on information provided by Fannin County indicates that Fannin County does not budget capital murder cases separately; a part of indigent defense budget); Defendant's motion Ex-20 (Jones County separates some of its budgetary data into "District Attorney" and "District Judge" columns; the "prosecution expense" line item under the "District Attorney" column is a

1253

Texas counties who received defendant's letter and accompanying affidavit and tabular form, 209 counties responded in some manner).

Defendant Crutsinger submitted a business records affidavit and a blank tabular form along with his letter request seeking "capital murder budgetary data." See Defendant's

---

single total with no figure(s) given for the prosecution of any particular crime); Defendant's motion at Ex. 32 (Bailey County: "We do not budget expenses related to death penalty cases separately."); Defendant's motion at Ex-34 (prior to 2001, indicates that Navarro County did not track capital murder cases separately from other felony cases); Defendant's motion at Ex-23 (Marion County: "We have no special budget line for capital cases."); Defendant's motion at Ex-24 ("Nacogdoches County does not budget for 'capital murder cases.'"); Defendant's motion at Ex-29 (Monahans County: "We do not budget for capital murder, specifically.  We only budget for indigent legal fees."). Furthermore, while data supplied by at least one other county (Tarrant County) does appear to differentiate between a capital murder prosecution and a prosecution for other crimes, the data makes no distinction between capital murder/ death and capital murder/ life.  See Defendant's motion at Ex-34 (handwritten notation on tabular form submitted by Tarrant County states: "The Auditor's office can only give you information on what has been coded by the courts as capital murder.  Our system does not differentiate as to whether the state seeks the death penalty or does not seek the death penalty.").

"[The Texas Open Records Act ("TORA")] compels disclosure of public information that is in existence, but it does not require a government entity to prepare or assemble new information in response to a request." A & T Consultants, Inc. v. Sharp, 904 S.W.2d 668, 676 (Tex. 1995) (citing TEX. GOV'T CODE § 552.021 (defining "public information" as that "collected, assembled, or maintained" by a government body); and Economic Opportunities Dev. Corp. v. Bustamante, 562 S.W.2d 266, 268 (Tex. Civ. App.--San Antonio 1978, writ dism'd) (ruling that a government agency could not be required to make copies of documents no longer in its possession)).

"[A] governmental body is not required to organize information in the form requested by a member of the public." Tex. Att'y. Gen. ORD-229, 1994 WL 322535 at *2 (1994); see also Tex. Att'y Gen. ORD-6150, 2003 WL 22116432 at *1 n.1 (2003) ("The Public Information Act (the 'Act') does not require a governmental body to disclose information that did not exist at the time the request was received, nor does it require a governmental body to prepare new information in response to a request.").

3

1254

motion at Ex-4.  In addition, Defendant Crutsinger asked each county to place the requested "capital murder budgetary data" on the tabular form that he supplied.

Defendant Crutsinger's form covered a period of the last five years and asked each county to supply four different dollar amounts for each of those years:  (1) the dollar amount of funds budgeted for a capital murder prosecution in which the death penalty was sought; (2) the dollar amount of funds expended for a capital murder prosecution in which the death penalty was sought; (3) the dollar amount of funds budgeted for a capital murder prosecution in which the death penalty was waived; and (4) the dollar amount of funds expended for a capital murder  prosecution in which the death penalty was waived. Defendant Crutsinger claims the attached data shows "the decision to seek the death penalty is many times overshadowed and controlled by financial constraints in counties with small or rural populations."  Defendant's motion at 2.

III.    *Even if Defendant Crutsinger's theory was viable, Defendant Crutsinger's facts do not support his disparate treatment claim.*

With all due respect, the attached "capital murder" budgetary data is irrelevant and meaningless.  As discussed earlier, it appears that more than a few Texas counties do not budget capital murder cases separately from other crimes.  See State's response at 2-3 n.1. Furthermore, Defendant Crutsinger's notion that less populous (or more rural) counties

4

1255

have less wealth (and thus, more financial constraints) than more populous counties is speculative, at best.

A less populous, rural county may have far more wealth (especially *per capita* wealth) than one of Texas' more populous (or metropolitan) counties. Defendant Crutsinger's data does not establish (1) how much money each county takes in, (2) how much money each county holds in reserve or (3) even the entire county budget for each of the five years in question. Defendant Crutsinger's data also makes no correlation in the *per capita* spending ratio between his large population and small population counties. If a sparsely populated county had oil and/ or gas wells located within its boundaries, those producing oil and/ or gas wells would generate taxable wealth. A more populous county might not have any oil and/ or gas revenues. It also stands to reason that the more populous a county, the higher its expenditures as it must provide more services for more people.

In addition and even though Defendant Crutsinger recognizes that the decision to seek the death penalty rests with the local prosecuting authority, see Defendant's motion at 2, the data supplied by Defendant Crutsinger does not include any sworn affidavits from any prosecuting authority in which the prosecutor avers that the decision not to seek the death penalty was based in whole (or even in part) on the county's finances or budget.[2]

---

2    As the McCleskey court observed: "It is . . . questionable whether any consistent policy can be derived by studying the decisions of prosecutors. The District Attorney is elected by the voters in a particular county. Since decisions whether to prosecute and what to charge necessarily are individualized and involve infinite factual variations, coordination among district attorney offices across a State would be relatively meaningless. Thus, any inference from statewide statistics to a prosecutorial "policy" is of

1256

In addition, the attached data attempts to address only one possible factor (a county's so-called "capital murder" budget, which as discussed earlier a lot of counties do not have, see State's response at 2-3 n.1) in a prosecutor's decision to seek the death penalty. There is no data comparing the facts and circumstances of Defendant Crutsinger and his crime to the facts and circumstances of all the other capital murder defendants' and their crimes. See generally Sonnier v. State, 913 S.W.2d 511, 521 (Tex. Crim. App. 1995) (Equal Protection Clause requires that "all persons similarly situated shall be treated alike"); cf. Black v. State, 26 S.W.3d 895, 897 (Tex. Crim. App. 2000) (capital murder defendant is not a part of a suspect class); Henderson v. State, 962 S.W.2d 544, 560 (Tex. Crim. App. 1997) (same).

Also, the tabular form Defendant Crutsinger submitted to gather his information makes suspect even the meager data supplied. Defendant Crutsinger only requested capital murder budgetary data for the last five years – from fiscal year 1999 through fiscal year 2003. This is a very small sample. While the form Defendant Crutsinger submitted to the counties (when he made his "open records" request) specifically asked the counties for (1) the funds budgeted when the State seeks the death penalty, and (2) the funds budgeted when the State waives the death penalty, a lot of Texas counties apparently do not separate (1) capital murder/ death, from (2) capital murder/ life. See, e.g., Defendant's motion at Ex-12 (For the years 1999-2002, Falls County {pop. 18, 576 in 2000} had two capital murder indictments filed in 2001, and budgeted funds "for all county legal aid, civil, criminal,

_____

doubtful relevance." McCleskey v. Kemp, 481 U.S. 279, 295 n.15, 107 S.Ct. 1756, 1768 n.15, 95 L.Ed.2d 262 (1987).

6

1257

misdemeanor, felony, appeals, juvenile, investigation & prosecution"); Defendant's motion at Ex-13 (Fannin County, pop. 31,240, had two capital murder indictments filed in 1999 and one in 2001 and did not budget separately); cf. Defendant's motion at Ex-16 (written notation on form returned from Hood County, pop. 41,600, regarding 2003 capital murder/ life prosecution suggests that "funds budgeted" are not determined until after the costs are billed); see also State's response at 2-3 n.1.

The figures provided for Jackson County {pop. 14,491} are a puzzle and highlight the suspect nature of the capital murder budgetary data the defendant has provided. See Defendant's motion at Ex-18. Jackson County shows one capital murder indictment was filed in 1999, and another filed in 2000. Jackson County must have sought the death penalty in both of those cases because according to the data on the form, there were no capital murder cases where the State did not seek the death penalty from 1999 through 2003. The form further indicates no funds were budgeted for capital murder/ death cases during any of the years from 1999 through 2003. However, the funds actually expended on capital murder/ death cases were listed as $14,682.97 in 2003, $15,806.55 in 2002, $3,505.58 in 2001; $65,530.91 in 2000, and $257,604.55 in 1999. There is an asterisk by the $14,682.97 (the figure given for the capital murder/ death funds expended in 2003) with a handwritten notation below that states "defendant accepted a plea as case was to go to trial. Cost was estimated to be $100,000. Thankfully only $25,000 was expended over two fiscal years." Defendant's motion at Ex-18; see also Defendant's motion at Ex-8 (Colorado County {pop. 20,390} shows three capital murder indictments filed in 1999 and two more filed in 2000,

7

1258

but the tabular form shows "0" funds budgeted during the last five years).

Simply put, it is hard to make much of anything out of the capital murder budgetary data attached to Defendant Crutsinger's motion. Nonetheless and no matter what it means, the attached capital murder budgetary data <u>does not support</u> Defendant Crutsinger's hypothesis, <u>see</u> Defendant's motion at 12, – that the death penalty is routinely <u>not</u> sought by the prosecutor based solely on financial reasons. <u>See</u> <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1333 (6th Cir. 1996) (relying on <u>McCleskey</u> to reaffirm that a defendant's references to statistical studies or anomalies will be insufficient to establish a claim of racial discrimination); <u>Smith v. Anderson</u>, 104 F.Supp.2d 773, 821-22 (S.D. Ohio 2000) (same).

IV.   *Defendant Crutsinger has made no more meritorious of a showing than did the unsuccessful appellants in* <u>Allen</u>, <u>King</u> *and* <u>Bell</u>.

The State first points out that Defendant Crutsinger's argument was previously raised and rejected by the Court of Criminal Appeals in <u>Allen v. State</u>, 108 S.W.3d 281, 285-87 (Tex. Crim. App. 2003), <u>King v. State</u>, 953 S.W.2d 266, 274 (Tex. Crim. App. 1997), and <u>Bell v. State</u>, 938 S.W.2d 35, 55 (Tex. Crim. App. 1996) *(per curiam)*.

In <u>King</u> and <u>Bell</u>, the Court of Criminal Appeals declined to reach the merits of the disparate treatment claim, holding that because the appellant provided no "empirical data, case law, or other factual basis" to support his claim, there was no foundation upon which the Court could have made a determination regarding the merits of the claim. <u>King</u>, 953

8

S.W.2d at 274; Bell, 938 S.W.2d at 55; see also Ibarra v. State, 11 S.W.3d 189, 198 (Tex. Crim. App. 1999) (unanimous op.) (Court of Criminal Appeals rejects argument that article 37.071 is unconstitutional because it allows an arbitrary and capricious application of the death penalty, citing King for the proposition that the Due Process Clause does not require a comparative proportionality review).

In contrast to the appellants in King and Bell, the appellant in Allen attempted to provide the Court with a factual basis to support his disparate treatment claim, but Mr. Allen also came up short of making a threshold showing. See Allen, 108 S.W.3d at 286 (Court points out that appellant gave it information regarding the number of offenders sentenced to death and the number of offenders executed from each county in Texas, but he did not provide the Court with budgetary data for each of these counties). As the Allen court observed:

> The fact that Harris County, a large county with a large budget, sentences more offenders to death than any other county in Texas, does not in and of itself establish disparate treatment among similarly situated defendants.

Allen, 108 S.W.3d at 286 (footnote omitted).

In addition and as the Allen court pointed out, even Mr. Allen's own data would not support an argument that the size of a county's budget was the sole determinative factor in capital litigation:

> . . . one of the articles cited by appellant states that the "history of ample budgets" is only one of several factors that contribute

9

to the higher number of death penalty convictions in Harris
County.   See M. Tolson, A Deadly Distinction, HOUSTON
CHRON., Feb. 5, 2001.

Allen, 108 S.W.3d at 286-87.

The Allen court ultimately concluded that "[a]ppellant has made no threshold showing

of disparate treatment between himself and other similarly situated defendants." Allen, 108

S.W.3d at 287.   Like the appellant in Allen, Defendant Crutsinger has failed to make a

threshold showing of discriminatory application, and there are a number of reasons why the

present motion should be denied.[3]

V.      *Defendant Crutsinger's complaint is not even theoretically viable.*

Defendant Crutsinger's motion does not present a valid claim.   While Defendant

Crutsinger recognizes that "[t]he decision to seek the death penalty in a capital murder [case]

rests with the prosecuting authority in the individual county," Defendant's motion at 2,[4] he

hasn't alleged, much less proven, an abuse of prosecutorial discretion.

---

[3]       Defendant Crutsinger has not argued his state claims separately from his
allegations of federal violations, see Defendant's motion at 2-12, and as a result, his state
claims should be overruled.   Lagrone v. State, 942 S.W.2d 602, 614 (Tex. Crim. App.
1997).

[4]       Here it must be remembered that a prosecutor's decision to commence or
forego seeking a death sentence is not a decision to "impose" the death sentence; rather
the prosecutor's role is limited to initiating the proceedings.   Silagy v. Peters, 905 F.2d
986, 993 (7th Cir. 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106
(1991).

1261

Absent some showing that prosecutorial discretion was abused in the selection of cases in which the death penalty was sought, there is no claim under the Eighth Amendment or the Equal Protection Clause. See Commonwealth v. Hardcastle, 546 A.2d 1101, 1111 (Pa. 1988). The United States Supreme Court has held that a state statute is not invalid for the discretion it accords the prosecutor in deciding whether to seek the death penalty in a particular case. Proffitt v. Florida, 428 U.S. 242, 254, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976) (rejecting argument that prosecutor's authority to decide whether to charge capital offense in the first place and whether to accept plea to lesser offense renders Florida's death penalty scheme unconstitutional); Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (holding prosecutorial discretion to seek death penalty constitutional); see generally McCleskey v. Kemp, 481 U.S. 279, 311-12, 107 S.Ct. 1756, 1777-78, 95 L.Ed.2d 262 (1987) ("the capacity of prosecutorial discretion to provide individualized justice is 'firmly entrenched in American law'" and "a capital punishment system that did not allow for discretion acts of leniency 'would be totally alien to our notions of criminal justice'"); McCleskey, 481 U.S. at 289-90, 107 S.Ct. at 1765 ("The very exercise of discretion means that persons exercising discretion may reach different results from exact duplicates. Assuming each result is within the range of discretion, all are correct in the eyes of the law."). As the Simms court observed:

> We have repeatedly rejected the argument that the Illinois death penalty statute is unconstitutional because of the discretion it gives the prosecutor in deciding whether to seek the death penalty in a particular case. Furthermore, the very fact that the prosecutor is afforded a measure of discretion under the death

11

> penalty statute entails that the prosecutor will seek the death
> penalty in one case and not in another. The prosecutor may
> decide to do so based upon the strength of the evidence, the
> circumstances of the crime, the accused's rehabilitative
> potential, the availability and credibility of witnesses, and any
> number of legitimate factors.

People v. Simms, 736 N.E.2d 1092, 1139 (Ill. 2000) (citations omitted).

Defendant Crutsinger does not demonstrate, or for that matter even allege, how prosecutorial discretion was abused in the selection of capital murder cases in which the death penalty was sought. Hardcastle, 546 A.2d at 1111. Moreover, Defendant Crutsinger has not alleged, much less "prove[n,] that the decisionmakers in *his* case acted with discriminatory purpose." McCleskey, 481 U.S. at 292, 107 S.Ct. at 1767, 95 L.Ed.2d at 278 (emphasis in the original); People v. Stewart, 520 N.E.2d 348, 355 (Ill. 1988) ("defendant made no attempt to prove that he received the death penalty because the decisionmakers in his case were motivated by racial bias"); see also McCleskey, 481 U.S. at 313, 107 S.Ct. at 1778, 95 L.Ed.2d at 292 (Court assumed validity of Baldus study and concluded that it "does not demonstrate a constitutionally significant risk of racial bias affecting the Georgia capital-sentencing process").[5]

---

[5]   "According to the Baldus study, after controlling for nonracial variables, defendants accused of murdering white victims are 4.3 times more likely to receive the death penalty than those accused of murdering blacks." Stewart, 520 N.E.2d at 355; see also McCleskey, 481 U.S. at 291 n.7, 107 S.Ct. at 1766 n.7 (McCleskey court cautions that its "assumption that Baldus study is statistically valid does not include the assumption that racial considerations actually enter into any sentencing decisions in Georgia").

12

1263

Defendant Crutsinger has offered <u>no evidence</u> that Tarrant County's (or any other Texas county's) charging decisions in death penalty cases were motivated by improper considerations rather than by the facts of these intensely fact-specific cases. <u>See, e.g.,</u> <u>Simms</u>, 736 N.E.2d at 1139 ("Defendant has failed to supply this court with evidence that the State's Attorney acted improperly in seeking the death penalty against him. Absent such proof, we will not assume that the State's Attorney's decision in seeking the death penalty against defendant was 'based on whim or caprice or otherwise invoke[d] impermissible considerations'"); <u>Commonwealth v. Crews</u>, 717 A.2d 487, 489 (Pa. 1998) (absent some showing that prosecutorial discretion was abused in selection of cases in which death penalty was sought, claim that death penalty disproportionately applied to poor lacks necessary foundation and is, therefore, meritless).

Finally, Defendant Crutsinger's thesis ignores the fact that the Texas Attorney General is available to aid counties which might feel they lack the financial wherewithal to seek the death penalty in an appropriate case. <u>Allen</u>, 108 S.W.3d at 286 n.3 ("'the Capital Litigation section of the Texas Attorney General's office exists especially to aid smaller counties in prosecuting capital cases,'" and quoting <u>Bell</u>, 938 S.W.2d at 55 n.31).

VI.   *The decision of whether to seek the death penalty is vested in the broad discretion of the prosecutor's office:  absent an irrational exercise of that discretion a claim of disparate treatment between counties could never be a basis for relief.[6]*

---

6   Obviously an exercise of prosecutorial discretion that was based upon an infringement of the rights of a suspect class would be a material for which relief could be granted; but such considerations have nothing to do with Defendant Crutsinger's claims.

In both the Texas and federal criminal justice systems, the decision whether to prosecute an individual is vested with the government.[7] See, e.g., Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); United States v. Sparks, 2 F.3d 574, 580 (5th Cir. 1993); Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999) (it is well-settled that the discretion accorded the state in a capital murder prosecution is not unconstitutional); Roise v. State, 7 S.W.3d 225, 243 (Tex. App.–Austin 1999, pet. ref'd); cf. Patrick v. State, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995) (rejecting contention that Texas' capital sentencing scheme is unconstitutional because the discretion whether to pursue the death penalty rests with the prosecutor, and citing Gregg v. Georgia, 428 U.S. at 199, 96 S.Ct. at 2937). The broad discretion afforded a prosecutor "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." Wayte, 470 U.S. at 607, 105 S.Ct. at 1530; see United States v. Armstrong, 517 U.S. 456, 465, 116

---

State v. Creech, 966 P.2d 1, 22 (Idaho 1998) (convicted capital murderer was not a member of a suspect class and thus, rational relationship test applied to his claim that he was denied equal protection because he was prosecuted in an Idaho county that had sufficient funds to seek the death penalty, as opposed to a smaller county which would not have sought the death penalty for financial reasons; Idaho Supreme Court ultimately rejects disparate treatment claim because the prosecutor's decision to seek the death penalty and the district court's decision to impose the death penalty were both acts within their sound discretion, and the legitimate state purpose in seeking or imposing the death penalty stemmed from the circumstances of the offense and the offender).

[7]      See generally Cunningham v. Thompson, 62 P.3d 823, 845-46 (Or. App. 2003) (rejecting argument that equal protection clause requires state-wide standards for charging and sentencing decisions, while holding Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525 (2000) inapplicable "because, unlike the statewide ballot-counting process at issue in [Bush], charging decisions are made on the local level").

1265

S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996).

A prosecutor must be allowed to exercise broad discretion to determine the extent of society's interest in a given prosecution. Loveless v. State, 800 S.W.2d 940, 947 (Tex. App.--Texarkana 1990, pet. ref'd). The Court of Criminal Appeals has said, "[p]rosecutorial discretion is broad, although not exempt from constitutional restraints . . . . In order to succeed in a claim of abuse of prosecutorial discretion, an . . . appellant must provide 'exceptionally clear evidence' the decision to prosecute was for an improper reason." County v. State, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989) (op. on reh'g) (holding no abuse of prosecutorial discretion was shown; appellant brought forth no evidence indicating the existence of purposeful discrimination).

Defendant Crutsinger must make out a claim of abuse of prosecutorial discretion if he has any hope of prevailing on his equal protection challenge. The United States Supreme Court has established clear guidelines in determining the limits of allowable prosecutorial discretion. Prosecutorial discretion is broad, although not exempt from constitutional restraints. Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547, 556 (1985). "The decision to prosecute may not be deliberately based upon unjustifiable standards such as race, religion, or other arbitrary classification, . . ." Wayte, 470 U.S. at 608, 105 S.Ct. at 1531, quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). In applying these standards to the case at hand, courts must assume that an appellant who raises the issue of equal protection has the burden of proving what the Supreme Court has termed "the existence of purposeful discrimination."

1266

McCleskey, 481 U.S. at 292, 107 S.Ct. at 1767 (quoting Whitus v. Georgia, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599, 603-04 (1967)).[8]

In order to succeed in a claim of abuse of prosecutorial discretion, an appellant must provide "exceptionally clear evidence" that the decision to prosecute was for an improper reason. McCleskey, 481 U.S. at 297, 107 S.Ct. at 1770. As mentioned earlier, see State's response at 12, Defendant Crutsinger has not alleged, much less "prove[n,] that the decisionmakers in *his* case acted with discriminatory purpose." McCleskey, 481 U.S. at 292, 107 S.Ct. at 1767, 95 L.Ed.2d at 278 (emphasis in the original).

_____

8       "A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect' on him." McCleskey, 481 U.S. at 292, 107 S.Ct. at 1767.

1267

VII.   *A motion seeking the quashal of a capital murder indictment is not an appropriate method for Defendant Crutsinger to challenge the constitutionality of the Texas death penalty scheme.*

Finally, by filing a motion to quash the indictment, Defendant Crutsinger is seeking to avoid far more than the imposition of the death penalty.  By filing a motion to quash the indictment, Defendant Crutsinger is seeking to avoid <u>prosecution</u> for capital murder.  In that light, Defendant Crutsinger has not alleged, nor could he seriously argue, that he could not be prosecuted for capital murder if the prosecuting authority had decided to waive the death penalty.  (Note:  Neither the indictment in this case (nor any other capital murder case mentions the death penalty.)  Under these circumstances, quashal of the instant capital murder indictment is not the appropriate method for Defendant Crutsinger to challenge the constitutionality of Texas' death penalty scheme.

1268

## PRAYER

For all the aforementioned reasons, Defendant's Crutsinger's claim of discriminatory application of the Texas death penalty should fail.   The State of Texas prays that the Defendant's motion to quash indictment and declare the death penalty unconstitutional, *etc.* be denied.

Respectfully submitted,

TIM CURRY
Criminal District Attorney
Tarrant County, Texas

MICHELE HARTMANN, Assistant
Criminal District Attorney
State Bar No. 09167800
401 W. Belknap Street
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672

## CERTIFICATE OF SERVICE

One copy of the State's Response to Defendant's Motion to Quash Indictment was hand delivered to Bill Ray and Tim Moore, attorneys of record for the Defendant Billy Jack Crutsinger on this the 17th day of September 2003.

MICHELE HARTMANN

Crutsinger, BJ.response.motoquash.091703.word

18

1269

## CAUSE NO. 0885306D

THE STATE OF TEXAS

VS.

BILLY JACK CRUTSINGER

IN THE 213TH

JUDICIAL DISTRICT COURT

TARRANT COUNTY, TEXAS

## COURT'S ORDER ON DEFENDANT'S MOTION TO QUASH INDICTMENT
## AND SUPPLEMENTAL MOTION TO QUASH INDICTMENT

The Court, having reviewed the Motion of the Defendant, and the State's Response, and after hearing the evidence and arguments thereon, and considering the applicable authorities finds that the Motion of the Defendant should be and is hereby:

Granted_____

Denied ___✗___

Date:___9/18/03___

_____
HON. ROBERT K. GILL
Judge Presiding
213th Judicial District Court
Tarrant County, Texas

1270

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 1 8 2003

Time _____ 8:25 Am
By _____
_____ RM _____ Deputy

CAUSE NO. 0885306D

THE STATE OF TEXAS                    IN THE 213TH

VS.                                   JUDICIAL DISTRICT COURT

BILLY JACK CRUTSINGER               TARRANT COUNTY, TEXAS

## NOTICE TO DEFENSE REGARDING SUBPOENED/SWORN WITNESS(ES)

The following listed individuals have been previously subpoened and/or sworn by the Court for possible appearance as witnesses on behalf of the State of Texas:

Loretta Rouse
Carol Ann Lain
Cheryl Moffett
Officer George Simpson
Officer Pete Contenta
Officer Clemente Garcia, III
Officer (Ret.) Clemente Garcia, Jr.

These witnesses may or may not be called on behalf of the State. If any of the above witness' testimony is desired on behalf of the Defendant, the Defendant, as provided by law, may compel any witness' attendance in court by relying on either the previously issued and served subpoena and/or the witness being sworn by the Court.

Michele Hartmann, Assistant
Criminal District Attorney
Tarrant County, Texas

I certify that a true and correct copy of the foregoing Notice to Defense Regarding Subpoened/Sworn Witness(es) was hand delivered to Bill Ray and Tim Moore, attorneys of record for the Defendant on the 18th day of September, 2003.

Michele Hartmann

1

1271

THE STATE OF TEXAS

TO DEE ANDERSON SHERIFF OF TARRANT COUNTY, TEXAS, GREETINGS:

On this day, September 18, 2003, it appearing to the Court that there is now pending on the docket of this Court, a certain case entitled the STATE OF TEXAS vs. BILLY JACK CRUTSINGER, being Cause No. 0885306D, where said defendant is charged with the offense of CAPITAL MURDER; and

WHEREAS, said case has been set down for trial on SEPTEMBER 22, 2003; and

WHEREAS, it further appearing to the Court, that WITNESS, HARVEY TURNER, (ID# 01174063), is now confined in IDTDCJ - LINDSEY UNIT, JACK COUNTY, TEXAS, and that, therefore, a necessity exists for the issuance of a Bench Warrant for said Witness, HARVEY TURNER ;

THEREFORE, it is ordered by the Court that the issuance of a Bench Warrant for the said WITNESS, HARVEY TURNER, be and is hereby granted, and

THEREFORE, you the said Dee Anderson, Sheriff of Tarrant County, Texas, are hereby directed to call upon the proper authorities in IDTDCJ - LINDSEY UNIT, JACK COUNTY, TEXAS, for permission to take the body of said WITNESS, HARVEY TURNER, and safely convey him/her to the County Jail of Tarrant County, Texas, at Fort Worth, Texas, and that you safely keep him/her in said jail until further orders of the Court herein are made and entered.

Due return make of this writ on or about SEPTEMBER 22, 2003, showing how you have executed the same.

Given under my official hand and seal of said Court at Fort Worth, Texas, on this date of September 18, 2003.

_Dan Gichar_
PRESIDING JUDGE
213th DISTRICT COURT
TARRANT COUNTY, TEXAS

ATTEST:

THOMAS A. WILDER
Clerk of District Courts
Tarrant County, Texas

By: _Rebecca W. Qut_
Deputy District Clerk

1272

THE STATE OF TEXAS

TO DEE ANDERSON SHERIFF OF TARRANT COUNTY, TEXAS, GREETINGS:

On this day, September 18, 2003, it appearing to the Court that there is now pending on the docket of this Court, a certain case entitled the STATE OF TEXAS vs. BILLY JACK CRUTSINGER, being Cause No. 0885306D, where said defendant is charged with the offense of CAPITAL MURDER; and

WHEREAS, said case has been set down for trial on SEPTEMBER 26, 2003; and

WHEREAS, it further appearing to the Court, that WITNESS, KEVIN ELISHA STEPHEN, (ID#913337), is now confined in IDTDCJ - POWLEDGE UNIT, ANDERSON COUNTY, TEXAS, and that, therefore, a necessity exists for the issuance of a Bench Warrant for said Witness, HARVEY TURNER ;

THEREFORE, it is ordered by the Court that the issuance of a Bench Warrant for the said WITNESS, KEVIN ELISHA STEPHEN,  be and is hereby granted, and

THEREFORE, you the said Dee Anderson, Sheriff of Tarrant County, Texas, are hereby directed to call upon the proper authorities in IDTDCJ - POWLEDGE UNIT, ANDERSON COUNTY, TEXAS, for permission to take the body of said WITNESS, KEVIN ELISHA STEPHEN, and safely convey him/her to the County Jail of Tarrant County, Texas, at Fort Worth, Texas, and that you safely keep him/her in said jail until further orders of the Court herein are made and entered.

Due return make of this writ on or about SEPTEMBER 26, 2003, showing how you have executed the same.

Given under my official hand and seal of said Court at Fort Worth, Texas, on this date of September 18, 2003.

_____
PRESIDING JUDGE
213th DISTRICT COURT
TARRANT COUNTY, TEXAS

ATTEST:
THOMAS A. WILDER
Clerk of District Courts
Tarrant County, Texas

By: _____
Deputy District Clerk

1273

TO DEE ANDERSON SHERIFF OF TARRANT COUNTY, TEXAS, GREETINGS:

On this day, September 18, 2003, it appearing to the Court that there is now pending on the docket of this Court, a certain case entitled the STATE OF TEXAS vs. BILLY JACK CRUTSINGER, being Cause No. 0885306D, where said defendant is charged with the offense of CAPITAL MURDER; and

WHEREAS, said case has been set down for trial on SEPTEMBER 26, 2003; and

WHEREAS, it further appearing to the Court, that WITNESS, KEVIN ELISHA STEPHEN, (ID#913337), is now confined in IDTDCJ - POWLEDGE UNIT, ANDERSON COUNTY, TEXAS, and that, therefore, a necessity exists for the issuance of a Bench Warrant for said Witness, HARVEY TURNER ;

THEREFORE, it is ordered by the Court that the issuance of a Bench Warrant for the said WITNESS, KEVIN ELISHA STEPHEN, be and is hereby granted, and

THEREFORE, you the said Dee Anderson, Sheriff of Tarrant County, Texas, are hereby directed to call upon the proper authorities in IDTDCJ - POWLEDGE UNIT, ANDERSON COUNTY, TEXAS, for permission to take the body of said WITNESS, KEVIN ELISHA STEPHEN, and safely convey him/her to the County Jail of Tarrant County, Texas, at Fort Worth, Texas, and that you safely keep him/her in said jail until further orders of the Court herein are made and entered.

Due return make of this writ on or about SEPTEMBER 26, 2003, showing how you have executed the same.

Given under my official hand and seal of said Court at Fort Worth, Texas, on this date of September 18, 2003.

PRESIDING JUDGE
213th DISTRICT COURT
TARRANT COUNTY, TEXAS

ATTEST:

THOMAS A. WILDER
Clerk of District Courts
Tarrant County, Texas

By: _____
Deputy District Clerk

1274

NO. 0885306D

THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
FILED
SEP 2 2 2003
Time _____ 9:55 Am
By _____ R~
Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## DEFENDANT'S MOTION IN LIMINE

TO THE HONORABLE ROBERT K. GILL, 213TH DISTRICT COURT:

COMES NOW, the Defendant, by and through his Attorneys of record, William H. "Bill" Ray, and Tim Moore, and requests this Court to instruct the State of Texas, and to further have the State of Texas inform its witnesses in this case to not comment on, allude to, refer to, show or display in the presence of, or mention to the jury or in its presence, whether as a prospective panel or the jury selected to hear the case, either in the voir dire or any other part of the case, including arguments, at the guilt/innocence or punishment phase of the trial, any of the following matters:

1. That the Defendant has filed any motion in limine.

2. Any ~~act~~ *extraneous* of misconduct on the part of the Defendant or any defensive witness.

3. Any reputation or opinion evidence, whether pursuant to Rules 405, 608, or 701-705 of the Texas Rules of Evidence, prior to the Defendant being afforded the opportunity to voir dire the witness outside the jury's presence.

4. Rebuttal evidence concerning the character of the Defendant, pursuant to Rule 404, Texas Rules of Evidence.

5. Any written statement of any State's witness which would not be admissible except in cross examination, or otherwise as a matter of right.

6. Any videotape of any witness or the Defendant.

7. Photographs not previously shown to counsel.

8.      The fact that the Defendant has filed any pretrial motion, including a motion to prohibit separation of the jury during deliberations.

9.      Any criminal conviction of any witness that the State believes is admissible for impeachment pursuant to Rule 609, Texas Rules of Evidence, including the Defendant.

10.     The fact that the Court has ruled in any manner on any defense motion, including, but not limited to the Court's ruling that the Defendant's arrest was illegal.

11.     Any evidence that would be included in the victims' impact statements, or relative's or friend's statements that do not relate to the factual allegations in the indictment.  Evidence or how this case has effected relatives or friends is not relevant at the guilt/innocence phase of the trial.

12.     Any evidence of backgrounds or prior experiences of any witness that is not relevant to the facts of this case, that would only be such as to create sympathy in the State's case. Specifically, the State has listed Ms. Betty Marshall of the State's Prosecuting Attorney's Office and a former employee of the Tarrant County Criminal District Attorney's Office.  Ms. Marshall is the widow of Chris Marshall, who was killed in the Tarrant County Courthouse on July 2, 1992.  The Defendant would object to this fact, or any other one like it from any other witness, in that is not relevant testimony.

13.     Any recording that the Court has not previously ruled admissible.  Specifically, this would be the statement of the Defendant to Detective McCaskill, and 911 calls.  Further, the Defendant requests that the State not be allowed to bring into the courtroom any reproduction equipment such as tape decks, or VCR's that would indicate that there is any such recording evidence until such time as the Court has ruled that any such recordings shall be admitted.

1276

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant Prays that the Court grant this motion.

WILLIAM H. "BILL" RAY
STATE BAR NO. 16608700
ATTORNEY FOR DEFENDANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383
(817) 831-8306, FAX
"WHERE THE WEST BEGINS"

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing motion was hand delivered to the Tarrant County Criminal District Attorney's Office on the date shown by the Clerk's file stamp.

WILLIAM H. "BILL" RAY

1

1277

NO. 0826201D

| | |
|---|---|
| THE STATE OF TEXAS | IN THE 213TH DISTRICT |
| VS. | COURT |
| KENNETH ELLIS | TARRANT COUNTY, TEXAS |

### THE COURT'S ORDER ON THE
### DEFENDANT'S MOTION IN LIMINE

Came upon to be heard the foregoing Motion in Limine. The Court, after reviewing the motion, finds that it should be, and the same is hereby granted or denied as indicated.

SO ORDERED.

DATE: _9/22/03_

_____
ROBERT K. GILL, JUDGE
213TH DISTRICT COURT

1278

CAUSE NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE DISTRICT COURT |
| VS. | X | TARRANT COUNTY, TEXAS |
| BILLY JACK CRUTSINGER | X | 213TH JUDICIAL DISTRICT |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 25 2003

Time 3:09 PM

By _____ Deputy

**COURT'S CHARGE**

**MEMBERS OF THE JURY:**

The defendant, Billy Jack Crutsinger, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about the 6th day of April, 2003, in Tarrant County, Texas. To this charge the defendant has pleaded not guilty.

You are instructed that the law applicable to this case is as follows:

**I.**

A person commits the offense of murder if he intentionally causes the death of an individual.

A person commits the offense of capital murder if he commits murder as defined above and the person murders more than one person during the same criminal transaction.

**II.**

"Act" means a bodily movement, whether voluntary or involuntary and includes speech.

"Individual" means a human being who has been born and is alive.

"Criminal transaction" means a continuous and uninterrupted chain of conduct occurring over a very short period of time in a rapid sequence of unbroken events.

**III.**

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

You are instructed that voluntary intoxication is not a defense to the commission of a crime.

1

1279

## IV.

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 6th day of April, 2003, in Tarrant County, Texas, the defendant, Billy Jack Crutsinger, did then and there intentionally cause the death of an individual, Patricia Syren, by stabbing or cutting her with a knife and did then and there intentionally cause the death of an individual, Pearl Magouirk, by stabbing or cutting her with a knife and both murders were committed during the same criminal transaction, then you will find the defendant guilty of capital murder as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

## V.

You are further charged as a part of the law in this case that the State is not required to prove the exact date alleged in the indictment but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment.

The jury is instructed that the Court has taken judicial notice that the date the indictment in this case was presented was June 19, 2003. There is no statute of limitations for the offense charged in the indictment.

The jury is further instructed that it may, but is not required to, accept as conclusive the fact judicially noticed.

## VI.

In a criminal case the law permits a defendant to testify in his own behalf but he is not compelled to do so, and the same law provides that the fact that a defendant does not testify shall not

2 **1280**

be considered as a circumstance against him. You will, therefore, not consider the fact that the defendant did not testify as a circumstance against him; and you will not, in your retirement to consider your verdict, allude to, comment on, consider, or in any manner refer to the fact that the defendant has not testified.

## VII.

You are instructed that under our law no evidence obtained by an officer in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. It is an exception to this law that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Probable cause means that the facts and circumstances within the officer's knowledge and/or within the knowledge of other officers working with him and of which they have reasonably trustworthy information are sufficient unto themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed.

In order for a law enforcement officer to search a person under a search warrant, the warrant must be supported by an affidavit showing probable cause for the search of the person. If a person is searched under a warrant that is not supported by probable cause, any evidence obtained as a result of the search is unlawfully obtained and cannot be considered by the jury in the trial of the person's case.

In order for an officer to make a valid warrantless arrest, a peace officer must have probable cause to believe that the person has committed an offense in his presence or within his view. If a

1

**1281**

3

person is arrested without probable cause, any evidence obtained as a result of the arrest of the person is unlawfully obtained and cannot be considered by the jury in the trial of the person's case.

However, evidence obtained from a person after an illegal arrest may nonetheless be considered by the jury if the jury finds that the State has demonstrated beyond a reasonable doubt that the taint of the illegal arrest, if any, is sufficiently attenuated to render any resulting evidence free of said taint. The factors to be considered by the jury to decide if the taint of an illegal arrest, if any, is sufficiently attenuated are as follows: 1) whether the Miranda warnings were given to the person; 2) the proximity in time of the illegal arrest to the evidence obtained; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of any official misconduct.

Therefore, unless you find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, that a search warrant upon which the Defendant was searched contained sufficient probable cause for the search of the Defendant, you will disregard any evidence obtained as a result of the execution of the search warrant and not consider the same against the Defendant for any reason.

Therefore, unless you find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, that the arrest of the Defendant was legal, you will disregard any evidence obtained as a result of the arrest of the Defendant and not consider the same against the Defendant for any reason. However, if you find beyond a reasonable doubt that the taint of the illegal arrest of the Defendant, if any, is sufficiently attenuated to render the evidence legally obtained, you may consider the evidence against the Defendant for the purpose of considering whether he is guilty of the offense charged against him in the indictment.

However, if you do not find beyond a reasonable doubt, or you have a reasonable doubt thereof, that the taint of the illegal arrest, if any, was sufficiently attenuated, then you will disregard

any evidence obtained as a result of the arrest of the Defendant and not consider the same against the Defendant for any reason.

## VIII.

All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that the defendant has been arrested, confined, or indicted for or otherwise charged with the offense gives rise to no inference of guilt at the defendant's trial.

The indictment in this case is no evidence whatsoever of the guilt of the defendant. It is a mere pleading necessary in order to bring this case into Court for trial, and you will consider it for no purpose at all.

You are the exclusive judges of the facts proven, of the credibility of the witnesses and of the weight to be given to their testimony, but you are bound to receive the law from the Court, which is herein given, and be governed thereby.

Any further communication must be in writing by your foreperson through the bailiff to the Court, except as to your personal needs which may be communicated orally to the bailiff in charge.

After you retire to the jury room, you should select one of your number as your foreperson. It is his or her duty to preside at your deliberation, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form and signing the same as your foreperson.

_____
Bob Gill, Judge
213th Judicial District Court

1283

## VERDICT FORMS

We the Jury find the Defendant guilty of the offense of Capital Murder as charged in the indictment.

_____
Foreperson

### -OR-

We the Jury find the Defendant not guilty.

_____
Foreperson

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 2 5 2003
5:18 PM
Time _____
By _____ Deputy

1284

6

We would like to see the credit card records.

*Larry Hackett*

**FILED**
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 2 5 2003

Time _____ 4:39 PM
By _____ Deputy

16:39 HRS

# JURY NOTE
# 1

1285

Can we have a copy of law (?) 3802
Failure to Indentify ?

~~Can we see~~
We are in dispute concerning Garcia III
testimony. Can we see it ?

**FILED**
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 2 5 2003

Time _____ 4:47 PM
By _____ Deputy

*Larry Hackett*

16.47 HRS

# JURY NOTE
# 2

1286

MEMBERS OF THE JURY:

In response to your request, you are instructed that the law provides that if the jury disagrees as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony or the particular point in dispute and no other.

Therefore, you are instructed if you desire to have any testimony read to you, to notify the Court in writing of the particular part or parts of the witness' testimony and let the Court know that you are in dispute as to that point.

_____
JUDGE PRESIDING

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
SEP 25 2003
Time _____
By _____ Deputy

1287

WE HAVE A
VERDICT.

*Larry Hackett*

17:06 HRS.

**FILED**
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 2 5 2003

Time _____ 5:06 PM

By _____ Deputy

# JURY NOTE
# 3

1288

# CERTIFICATE OF PROCEEDINGS

CASE: 0885306   DATE: 9/25/03        DOCKET: 0885306D                  CID: 0001683

DEFENDANT: CRUTSINGER,BILLY JACK                          WARRANT:
MICRO:                                      INDICTED: Y      DATE: 06/19/03

COURT:  D213                   HEARD: _____      TRANSFER COURT: _____

CHOV: ___/___/___   I/O: ___  COUNTY: _____

CHARGE OFFENSE: 090107 CAPITAL MURDER-MULT VICT   DATE: 04/06/03  LSR INC: ___

DISPOSITION OFFENSE: _____  _____

PLEA: _____              BOND TYPE: _____      FINE: _____

DISP: _____ __/__/__       STATUS: _____        CT COST: _____

SENTENCE: _____ __/__/__   EVENT: _____         MISC: _____

ACTION: BOLS ___/___/__                  Ø           DUE: __/__/__

PROB (MOS): _____ __/__/__   AMOUNT: _____      PAID: _____

                            FORFEIT: __/__/__

INST VERD: _____           BONDSMAN: _____ _sworn; Deft arraigned $1/NG_

PROCEEDINGS: 9/22/03 Jury called + seated; Testimony 9/23/03
Testimony. 9/24/03 Testimony 9/25/03 Testimony;
court's charge; verdict = guilty; No bond for
duration of trial

JUDGE/: _____        CLERK: _____
MAGISTRATE

# CERTIFICATE OF PROCEEDINGS

CASE: 0885306   DATE: *9, 26, 03*   DOCKET: 0885306D   CID: 0001683

DEFENDANT: CRUTSINGER, BILLY JACK
MICRO:     CRUTSINGER, BILLY JACK       INDICTED: Y    WARRANT:
                                                       DATE:  06/19/03

COURT: D213              HEARD: _____    TRANSFER COURT: _____

CHOV: __/__/__   I/O: ____   COUNTY: _____

CHARGE OFFENSE: 090107 CAPITAL MURDER-MULT VICT   DATE: 04/06/03  LSR INC: ___

DISPOSITION OFFENSE: _____   _____

PLEA: _____        BOND TYPE: _____    FINE: _____

DISP: _____ __/__/__   STATUS: _____   CT COST: _____

SENTENCE: _____ __/__/__   EVENT: _____   MISC: _____

ACTION: *BNCR* __/__/__                          DUE: __/__/__

PROB (MOS): _____ __/__/__   AMOUNT: _____   PAID: _____

                          FORFEIT: __/__/__

INST VERD: _____   BONDSMAN: _____

PROCEEDINGS: *Okay to return Kevin Elisha, Stephen*
*witness) (TDC#00913337/CID#0388900)*

JUDGE/: _____        CLERK: _____
MAGISTRATE

**1290**

To Judge Bob Gill's
213ᵗʰ District Court.

att Sheila
RE: Billy Jack Clutsinger

From Darlene Glenn     719/689-0353
Fax     719/689-0354

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 29 2003

Time _____ 12:23
By _____ Deputy

1291

 *Yvonne Post, D.O., P.A.*

August 18, 2003

Re: Louise Ely

To Whom It May Concern:

Due to multiple medical problems, Mrs. Ely is not able to appear in court or testify.  She suffers from severe anxiety and depression, hypertension, and osteoarthritis.
If I may be of further assistance please don't hesitate to call.

Cordially,


Yvonne Post D.O.

P/vg

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 2 9 2003

Time _____ 12:23
By _____ Deputy

2317 Hendley Dr.  Fort Worth, Texas 76112              (817) 496-1494    Metro 654-1136    Fax 496-0450

1292

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 29 2003

Time _____ 5:02 p.m.
By _____ Deputy

## CAUSE NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE DISTRICT COURT |
| VS. | X | TARRANT COUNTY, TEXAS |
| BILLY JACK CRUTSINGER | X | 213TH JUDICIAL DISTRICT |

## COURT'S CHARGE ON PUNISHMENT

**MEMBERS OF THE JURY:**

You have found the defendant guilty of the offense of capital murder. You are instructed that a sentence of imprisonment in the Institutional Division for life or a sentence of death is mandatory on conviction for capital murder. In order for the court to assess the proper punishment, certain special issues are submitted to you. Before answering these special issues you will consider the following instructions.

### I.

In arriving at the answers to the special issues submitted, it will not be proper for you to fix the same by lot, chance or any other method than by a full, fair and free exchange of the opinion of each individual juror.

### II.

In deliberating on Special Issue No. 1 and Special Issue No. 2, the jury shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

### III.

You are instructed that in answering Special Issue No. 1 the State has the burden to prove

1

1293

beyond a reasonable doubt that the answer should be "Yes." The jury may not answer Special Issue

No. 1 "Yes" unless the jury agrees unanimously on the answer.

IV.

You are instructed that in answering Special Issue No. 1 that the jury may not answer "No"

unless ten or more jurors agree. The jurors need not agree on what particular evidence supports a

"No" answer. If any juror has a reasonable doubt as to his answer to this special issue, the juror shall

vote "No."

**SPECIAL ISSUE NO. 1.**

Do you find from the evidence beyond a reasonable doubt that there is a probability that the

defendant would commit criminal acts of violence that would constitute a continuing threat to

society?

ANSWER: _Yes_ ("Yes" or "No")      *Larry Hackett*

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 30 2003

Time ___12:00 PM___
By ___ Rn ___ Deputy

V.

If the jury has answered Special Issue No. 1 "Yes", the jury will answer Special Issue No. 2:

You are instructed that in answering this special issue, you shall answer the issue "Yes" or

"No." You may not answer the issue "No" unless the jury unanimously agree, and you may not

answer the issue "Yes" unless ten or more jurors agree. The jury need not agree on what particular

evidence supports a "Yes" answer on this issue. In deliberating on Special Issue Number 2, you

shall consider mitigating evidence to be evidence that a juror might regard as reducing the

defendant's moral blameworthiness.

If the jury answers that a circumstance or circumstances warrant that a sentence of life

imprisonment rather than a death sentence be imposed, the Court will sentence the defendant to

1294

imprisonment in the institutional division of the Texas Department of Criminal Justice for life.

**SPECIAL ISSUE NO. 2.**

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

ANSWER: _No_ ("Yes" or "No")    *Larry Hackett*

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 3 0 2003
Time _____12:00 pm_____
By _____ lm _____ Deputy

**VI.**

In a criminal case the law permits a defendant to testify in his own behalf but he is not compelled to do so, and the same law provides that the fact that a defendant does not testify shall not be considered as a circumstance against him. You will, therefore, not consider the fact that the defendant did not testify as a circumstance against him; and you will not, in your retirement to consider your verdict, allude to, comment on, consider, or in any manner refer to the fact that the defendant has not testified.

**VII.**

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

3

1295

During your deliberations you will not consider or discuss any possible action of the Board of Pardons and Paroles or the Governor.

You are the exclusive judges of the facts proven, of the credibility of the witnesses, and of the weight to be given their testimony, but you are bound to receive the law from the Court which is herein given you, and be governed thereby.

In deliberating on this case, you shall consider the charge as a whole and you must not refer to or discuss any matters not in evidence before you.

You must not consider nor mention any personal knowledge or information you may have about any facts or person connected with this case which is not shown by the evidence. You shall not consult law books or anything not in evidence.

Any further communication must be in writing signed by your foreperson through the bailiff to the Court, except as to your personal needs which may be communicated orally to the bailiff in charge. Do not attempt to talk to the bailiff, the attorneys or the Court regarding any questions you may have concerning the trial of the case.

After argument of counsel, you will retire and consider your answer to the special issues submitted to you. It is the duty of your foreperson to preside in the jury room and vote with you on the answers to the special issues submitted. When you have reached a verdict, you shall use the blanks provided following each special issue to indicate your answers to the special issues, and your foreperson should sign the attached form certifying to your verdict.

_____
ROBERT K. GILL, JUDGE

1

4

1296

## CERTIFICATE

We, the jury, having answered the foregoing issues, return the same into Court as our verdict.

_Larry Hackett_
FOREPERSON OF THE JURY

```
           FILED
THOMAS A. WILDER, DIST. CLERK
     TARRANT COUNTY, TEXAS

      SEP 30 2003
            10:00 PM
Time _____
By _____ Deputy
```

5

1297

We have a decision.

Larry Hackett

9/30/07
11:54

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 30 2003

Time _____ 11:54AM

By _____ RW _____ Deputy

# JURY NOTE
# 4

1298

CERTIFICATE OF PROCEEDINGS

CASE: 0885306   DATE: 9/30/03   DOCKET: 0885306D   CID: 0001683

DEFENDANT: CRUTSINGER,BILLY JACK                          WARRANT:
MICRO:                                 INDICTED: Y   DATE: 06/19/03

COURT: D213               HEARD: _____   TRANSFER COURT: _____

CHOV: __/__/__   I/O: ___   COUNTY: _____

CHARGE OFFENSE: 090107 CAPITAL MURDER—MULT VICT   DATE: 04/06/03   LSR INC: __

DISPOSITION OFFENSE: 090107 _____

PLEA: NGBJ              BOND TYPE: _____   FINE: _____

DISP: FELC __/__/__     STATUS: _____   CT COST: _____

SENTENCE: DEATH __/__/__   EVENT: _____   MISC: _____

ACTION: APPL __/__/__                        DUE: __/__/__

PROB (MOS): _____ __/__/__   AMOUNT: _____   PAID: _____

                           FORFEIT: __/__/__

INST VERD: _____         BONDSMAN: _____   _____

PROCEEDINGS: Jury Verdict on Punishment: Special Issue #1 - Yes
Special Issue #2 - No.   SENTENCED TO DEATH - IDTDCJ   Automatic appeal

                           (Bill Ray appt'd atty-for appeal)

JUDGE/: _____          CLERK: Rebecca _____
MAGISTRATE

THE STATE OF TEXAS

VS. NO. 0885306D

BILLY JACK CRUTSINGER

IN THE  213th DISTRICT

COURT    OF

TARRANT COUNTY, TEXAS

## JUDGMENT

On September 22, 2003, this cause was called for trial and the State appeared by her Criminal District Attorney, Assistants Lisa Callaghan and Michele Hartmann, and the attorneys for the Defendant, Billy Jack Crutsinger, Honorables William H. Ray and Tim Moore, announced ready for trial; and, the State having made known that it would seek the Death Penalty in this case and the Defendant having been heretofore arraigned; and, it appearing to the Court that the Defendant was mentally competent and the Defendant having been charged in the indictment with Capital Murder; thereupon, a Jury of good and lawful men and women, to-wit: Foreperson, and eleven others, was duly selected, impaneled and sworn, as the law directs, and the said Criminal District Attorney read to the Jury, Count One of the indictment herein, and the Defendant entered his plea of Not Guilty to Count One of the indictment, to the jury hereto; and the Jury, after hearing the evidence, and being duly charged by the Court, retired to consider its verdict, and after deliberation, returned in open court on the 25th day of September, 2003, the following verdict, to-wit:

## VERDICT FORMS

We the Jury find the Defendant guilty of the offense of Capital Murder as charged in the indictment.

Signed:  Foreperson

And the Jury, having heard all the evidence, and being duly charged by the Court, retired to consider its verdict, and after due deliberation, returned into open Court, on the 30th day of September, 2003, their answers to the following Issues, and their verdict:

1

1300

## SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

ANSWER:  __Yes__  ("Yes" or "No")

## SPECIAL ISSUE NO. 2

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

ANSWER:  __No__   ("Yes" or "No")

We, the jury, having answered the foregoing issues, return the same into Court as our verdict.

Signed:  Foreperson

And the Court, having duly polled the Jurors individually at the request of the Defendant, and all Jurors having affirmed their individual verdicts, and the Court duly accepted the verdicts and ORDERED the same to be filed.

Upon receipt of the Jury Verdict, the Court then discharged the Jurors and then proceeded to sentence the Defendant, Billy Jack Crutsinger, as follows, to-wit:

The Defendant, Billy Jack Crutsinger, was asked by the Court, whether he had anything to say why sentence should not be pronounced against him, and the Defendant answered nothing in bar thereof;

1

1301

The Court proceeded, in the presence of the said Defendant, Billy Jack Crutsinger, and his counsel of record, to pronounce sentence against him as follows:

It is the ORDER of the Court, that you, Billy Jack Crutsinger, having been adjudged by the jury to be guilty of the offense of Capital Murder, and the jury having answered Special Issue No. One  "Yes", and Special Issue No. Two "No", and it being mandatory that your punishment be death, it is therefore the ORDER of this Court that your punishment shall be DEATH, and that on a date to be determined by this Court upon Mandate of Affirmance issued by the Texas Court of Criminal Appeals, at the State Penitentiary at Huntsville,  you shall be caused to die by intravenous injection of a substance or substances in a lethal quantity sufficient to cause your death and until you the said Billy Jack Crutsinger, are dead; said execution procedure to be determined and supervised by the Director of the Institutional Division of the Texas Department of Criminal Justice, and the Clerk of this Court is ORDERED to issue a Death Warrant in accordance with this sentence, directed to the Director of the Institutional Division of the Texas Department of Criminal Justice.

_10/1/03_
DATE SIGNED

HON. ROBERT K. GILL, PRESIDING JUDGE
213th DISTRICT COURT
TARRANT COUNTY, TEXAS

rm 1302

No. 0885306 D

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
SEP 30 2003
Time 12:38 pm
by _____ Deputy

THE STATE OF TEXAS ·····)( ····· IN THE 213th JUDICIAL

VS. ·····)( ····· DISTRICT COURT OF

Billy Jack Crutsinger, Defendant ·····)( ····· TARRANT COUNTY, TEXAS

### TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL

I, judge of the trial court, certify this criminal case:

✓____ is not a plea-bargain case, and the defendant has the right of appeal.(or)

_____ is a plea-bargain case, but matters were raised by written motion
filed and ruled on before trial and not withdrawn or waived, and the
defendant has the right of appeal.(or)

_____ is a plea-bargain case, but the trial court has given permission to appeal,
and the defendant has the right of appeal.(or)

_____ is a plea-bargain case, and the defendant has NO right of appeal.(or)

_____ the defendant has waived the right of appeal.

_____          9/30/03
Judge                            Date signed

I acknowledge that I have been informed of the above certification by the trial court and
waive the receipt of a copy thereof.

Billy Jack Crutsinger                    _____
Defendant (if not represented by counsel)    Defendant's Counsel
                                         SBOT#_____
Mailing address:_____          Mailing address: 5041 Airport Frwy
_____                  Ft. Worth, TX 76117
Tel No._____ Fax No._____         Tel No. 817 831-3383 Fax No._____

A Defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a
certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable
order. In a plea-bargain case -- that is, a case in which a defendant's plea was guilty or nolo contendere and the
punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant -- a
defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or
(B) after getting the trial court's permission to appeal. Texas Rules of Appellate Procedure 25.2 (a)(2).

1303

CASE NO. _0885306D_

| THE STATE OF TEXAS | § | IN THE _____213th_____ |
|---|---|---|
| | § | |
| vs. | § | DISTRICT COURT _____ |
| _Billy Jack Crutsinger_ | § | |
| | § | TARRANT COUNTY, TEXAS |

## NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, _BILLY JACK CRUTSINGER_   in the above styled
and numbered cause and gives this his Notice of Appeal to the Court of _CRIMINAL_
Appeals of Texas from the judgments heretofore rendered against him in the
above-styled and numbered cause.

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 30 2003

Time _12:38 PM_
By _RM_ Deputy

_Billy Jack Crutsinger_
DEFENDANT

OR

ATTORNEY FOR DEFENDANT
BAR CARD # _1660870D_

1

1304

CASE NO. _____

THE STATE OF TEXAS      §      IN THE ___213th____

     § 

VS.      §      DISTRICT COURT _____

     § 

Billy Jack Crutsinger      §      TARRANT COUNTY, TEXAS

## MOTION FOR FREE REPORTER'S RECORD AND AFFIDAVIT OF INABILITY TO PAY FOR COUNSEL AND REPORTER'S RECORD

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 30 2003

Time ___12:38pm___

By ___em___ Deputy

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, __BILLY JACK CRUTSINGER__ , Appellant in the above styled and numbered cause and submits this motion for a free Reporter's Record for the appeal pursuant to Tex. R. App. P. 20.2, stating that he/she is too poor to pay for or otherwise obtain a Reporter's Record for the appeal or to give security therefor either in whole or in part.

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Motion be granted and that the official Court Reporter thereof be ordered to prepare a Reporter's Record in accordance with Tex. R. App. P. 20.2.

_____
ATTORNEY FOR APPELLANT

Comes now the Defendant in the above styled and numbered cause, and states to the Court upon his oath that he is without counsel of his own selection to represent him herein, and is unable to obtain a Reporter's Record for Appeal in this cause because he is too poor to pay for same, and is unable to give security therefor in perfecting the appeal before the Court of __CRIMINAL__ Appeals of Texas.

_____
APPELLANT

Sworn to and Subscribed to before me this _30th_ day of _Sept_, _03_.

_____
DEPUTY DISTRICT CLERK
TARRANT COUNTY, TEXAS      1305

CASE NO. _O865306D_

THE STATE OF TEXAS      §      IN THE ___213th___

VS.      §      DISTRICT COURT _____

Billy Jack Crutsinger      §      TARRANT COUNTY, TEXAS

ORDER APPOINTING COUNSEL FOR THE APPEAL
AND
ORDER FOR COURT REPORTER TO PREPARE REPORTER'S RECORD

On this day, it being made known and appearing to the Court that the Defendant is without counsel of his own selection to represent him herein, and that he is too poor to employ counsel, or give security therefor, to represent him herein and the Defendant having requested that an attorney be appointed to represent him in the above styled and numbered cause.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that ___Bill Ray___, a regularly licensed and practicing attorney is hereby appointed to represent the Defendant as his attorney, and said Attorney is hereby authorized to proceed to perform the duties of the Attorney for the defendant in this cause.

And on this day, it appearing to the Court that the Defendant in the above styled and numbered cause, has given his/her Notice of Appeal to the Court of ___CRIMINAL___ Appeals of Texas. And it being made known that the Defendant herein has filed his/her affidavit, stating the he/she is too poor to pay the Court Reporter for a Reporter's Record for such appeal or give security therefor.

The Court is of the opinion that the Defendant is entitled to the relief as prayed for.

It is therefore the ORDER of this Court that the Official Court Reporter of this Court, ___STEVE SCHILLER___, prepare and furnish a Reporter's Record to be used in perfecting the appeal in this cause.

_____
PRESIDING JUDGE

___9/30/03___
DATE SIGNED

1306

NO. 0885306

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 213TH *Time* |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| BILLY JACK CRUTSINGER | § | TARRANT COUNTY, TEXAS |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
OCT - 1 2003
Time
12:50pm
By
Rm
Deputy

## MOTION FOR APPOINTMENT OF AN EXPERT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES BILLY JACK CRUTSINGER, the Defendant in the above styled and numbered cause, and moves this Court to appoint an expert to assist his counsel in this case and for cause would show the Court as follows:

### I.

The Defendant is charged by indictment/information with the offense of Capital Murder. The Defendant is unable to pay an attorney to represent him in this case.

### II.

The Court has appointed the undersigned counsel to represent the Defendant in this case. The Defendant also requests that the Court appoint Dr. Walter Quijano to assist defense counsel in representing the Defendant in this case. Article 26.05 C.C.P.; *Ake v. Oklahoma,* 470 U.S. 68 (1985); *Richardson v. State*, 744 SW2d (Tex.Crim.App. 1987); Article 1, Sections 10 and 19, Texas Constitution.

WHEREFORE, the Defendant prays that this Court appoint an expert and authorize payment of reasonable fees and expenses for the expert relating to his case.

**MOTION FOR APPOINTMENT OF EXPERT**

1307

Respectfully submitted,

TIM MOORE / SB# 14378300
Sundance Square
115 W. 2nd, Suite 202
Fort Worth, Texas 76102
(817) 332-3822
Fax (817) 332-2763
ATTORNEY FOR DEFENDANT

**MOTION FOR APPOINTMENT OF EXPERT**

NO. 0885306

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 213TH |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| BILLY JACK CRUTSINGER | § | TARRANT COUNTY, TEXAS |

## ORDER

Came on to be heard the Motion for Appointment of Expert of Defendant, BILLY JACK CRUTSINGER, in this case. Upon consideration of the motion and argument of counsel, it is hereby GRANTED. The Court hereby appoints Dr. Walter Quijano to provide expert services to Defendant and to his counsel to assist the Defendant's counsel in representing the Defendant in this case. The Court hereby authorizes the payment of reasonable expert fees and expenses upon submission of a statement of the fees and expenses incurred. The Court further ORDERS the Tarrant County Sheriff to allow Dr. Walter Quijano access to the Defendant in the Tarrant County Jail at any time. The Court further ORDERS that any reports, notes or observances by Dr. Walter Quijano shall be delivered to Defendant's attorney of record, Mr. Tim Moore.

IT IS SO ORDERED.

SIGNED AND ENTERED ON _____/ⴰ/₁_____, 2003.

_____
JUDGE PRESIDING

__ORDER ON MOTION FOR APPOINTMENT OF EXPERT__

1309

TARR**   D**UNTY

'03 OCT -1  P 3 :54

CASE NO. 0855306D

THE STATE OF TEXAS        §        IN THE 213TH    WILDER
                         §             DISTRI. CLERK

VS.                       §        DISTRICT COURT
                         §

BILLY JACK CRUTSINGER    §        TARRANT COUNTY, TEXAS

## ATTACHMENT FOR A WITNESS

TO ANY CERTIFIED PEACE OFFICER, SHERIFF OR ANY CONSTABLE OF TARRANT COUNTY, STATE OF TEXAS, GREETINGS:

You are hereby commanded to take the body of LOUISE CRUTSINGER, whose address is 510 RIDGECREST CIRCLE, SAGINAW, TX and bring said LOUISE CRUTSINGER before the 213TH District Court , of Tarrant County, Texas, on SEPTEMBER 29, 2003, at 9:00 AM, then and there to testify as a witness in behalf of the  in the case of THE STATE OF TEXAS vs. BILLY JACK CRUTSINGER, in Cause No. 0855306D, pending before said Court, said witness having disobeyed a subpoena.

The Bail Bond required of said witness is fixed at $No Bond Set.

Herein fail not, and due return make of this Writ, on or about SEPTEMBER 29, 2003.

Witness my signature and seal of office on September 29, 2003.

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS

By: _____
SHERRI LOCKRIDGE
Deputy District Clerk
213TH DISTRICT COURT

**1310**

CASE NO. 0855306D

TARR FI D
'03 OCT -1 P3:54
COUNTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 213TH WILDER |
| | § | DISTRICT CLERK |
| VS. | § | DISTRICT COURT |
| | § | |
| BILLY JACK CRUTSINGER | § | TARRANT COUNTY, TEXAS |

## ATTACHMENT FOR A WITNESS

TO ANY CERTIFIED PEACE OFFICER, SHERIFF OR ANY CONSTABLE OF TARRANT COUNTY, STATE OF TEXAS, GREETINGS:

You are hereby commanded to take the body of LOUISE CRUTSINGER, whose address is 510 RIDGECREST CIRCLE, SAGINAW, TX  and bring said LOUISE CRUTSINGER before the 213TH District Court , of Tarrant County, Texas, on SEPTEMBER 29, 2003, at 9:00 AM, then and there to testify as a witness in behalf of the  in the case of THE STATE OF TEXAS vs. BILLY JACK CRUTSINGER, in Cause No. 0855306D, pending before said Court, said witness having disobeyed a subpoena.

The Bail Bond required of said witness is fixed at $No Bond Set.

Herein fail not, and due return 'make of this Writ, on or about SEPTEMBER 29, 2003.

Witness my signature and seal of office on September 29, 2003.

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS

By: _____

SHERRI LOCKRIDGE
Deputy District Clerk
213TH DISTRICT COURT

1

**1311**

CERTIFICATE OF PROCEEDINGS

ASE: 0885306   DATE: 10/3/03   DOCKET: 0885306D   CID: 0001683

EFENDANT: CRUTSINGER, BILLY JACK                         WARRANT:
CRO:     CRUTSINGER, BILLY JACK      INDICTED: Y      DATE: 06/19/03

URT: D213                HEARD: _____      TRANSFER COURT: _____

OV: ___/___/___   I/O: ___   COUNTY: _____

HARGE OFFENSE: 090107 CAPITAL MURDER—MULT VICT   DATE: 04/06/03   LSR INC: ___

ISPOSITION OFFENSE: 090107   CAPITAL MURDER—MULT VICT

B: _____                   BOND TYPE: _____      FINE: _____

ISP: _____ ___/___/___     STATUS: _____         CT COST: _____

ENTENCE: _____ ___/___/___   EVENT: _____        MISC: _____

CTION: BNCR ___/___/___                                   DUE: ___/___/___

ROB (MOS): _____ ___/___/___   AMOUNT: _____      PAID: _____

                                 FORFEIT: ___/___/___

NST VERD: _Witness_              BONDSMAN: _____
ROCEEDINGS: _Harvey Turner ordered returned to_
ACT _Lindsey Unit_

_____

_____

JDGE/: _signature_               CLERK: _Rebecca_
GISTRATE

√ RM

1312

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

OCT 2 8 2003

Time _____
By _____ Deputy

NO. 0885306D

| THE STATE OF TEXAS | )( | IN THE 213TH |
| VS. | )( | DISTRICT COURT OF |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## MOTION FOR NEW TRIAL

TO THE HONORABLE ROBERT GILL, JUDGE, 213TH DISTRICT COURT:

COMES NOW, BILLY JACK CRUTSINGER, by and through his attorney of record, William H. "Bill" Ray, and files this Motion for New Trial, and in support thereof, would show the Court as follows:

The verdict was contrary to the law and evidence.

Additionally, the Defendant would show that he has previously filed a "Motion to Quash the Indictment and Declare the Death Penalty Unconstitutional Due to Disparate Treatment, Specifically Unequal Financial Constraints and Criteria, in Twenty Six Counties of the State of Texas and That Such Constraints Cause said Disparate Treatment in the Decision to Seek the Death Penalty by the Various Prosecuting Authorities of Persons Charged with Capital Murder n the State of Texas," on September 4, 2003, and the "Defendant's Supplemental Motion to Quash the Indictment and Declare the Death Penalty Unconstitutional Due to Disparate Treatment," filed September 16, 2003, both of which were overruled by the trial court.

The Defendant would show that the trial court erroneously overruled his Motion to Quash and the Supplemental Motion to Quash, and would further show that since the time of those aforementioned filings, the Defendant has received additional information from Comal, Kimble, Liberty, Lubbock, and Stephens Counties.

Comal County, as shown by the Exhibit 32 of the original Motion to Quash and this

1313

Motion for New Trial, had 13 capital murder cases filed, with no specific budget for capital murder cases, regardless of whether the death penalty was sought. Comal County appears to have had one capital murder case tried, the Jack Davis trial, and it appears that the District Attorney's budget was $75,000.00 over three years.

Kimble County, as shown in Exhibit 34 of the original Motion to Quash and this Motion for New Trial, had no capital cases filed and does not budget for capital murder cases.

Liberty County does not separate its budget for capital and non capital cases.

Lubbock County, as shown in Exhibit 34 and this Motion for New Trial, rather than respond to the request made by counsel, sent correspondence stating that it would not respond.

Stephens County, population 9,990, as shown in Exhibit 34 and this Motion for New Trial, had 1 capital murder prior to the requested years, (1998), and showed no funds budgeted or expended for that capital murder.

Upton County, population 3,440, has no funds budgeted for capital murder cases.

Thus, it appears that there are two additional counties that have filed capital murder cases, and financial constraints have had a bearing on whether the death penalty is sought.

For these reasons, the Defendant reurges his previous Motion and Supplemental Motion, and requests that this Court grant him a new trial.

PRAYER

WHEREFORE, the Defendant Prays that the Court grant him a new trial in this case.

RESPECTFULLY SUBMITTED,

WILLIAM H. "BILL" RAY
TEXAS BAR CARD NO. 16608700
ATTORNEY FOR APPELLANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
5041 AIRPORT FREEWAY
FORT WORTH, TEXAS 76117
(817) 831-8383
(817) 831-8306, FAX

## CERTIFICATE OF SERVICE

I certify that a true copy of the Defendant's Motion for New Trial was hand delivered to the office of Tim Curry, Criminal District Attorney, at the Office of the Criminal District Attorney of Tarrant County, Texas, 401 W. Belknap St. Ft. Worth, Tx. 76196-0201 on the 28th day of October, 2003.

WILLIAM H. "BILL" RAY

**1315**

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## THE COURT'S ORDER ON THE DEFENDANT'S
## MOTION FOR NEW TRIAL

CAME UPON TO BE HEARD, the Motion for New Trial filed by the Defendant in this

case.  Accordingly, the Court, after reviewing the Motion for New Trial, finds that it should be

and the same is hereby:

_____        Granted, the Defendant is granted a new trial in this case.

_____        Denied.

SO ORDERED.


_____
ROBERT GILL
JUDGE, 213TH DISTRICT COURT

1316

COMAL COUNTY
2003 ADOPTED BUDGET

**GENERAL FUND EXPENDITURES**
**CRIMINAL DISTRICT ATTORNEY**

| | | 2000 ACTUAL | 2001 ACTUAL | 2002 APPROVED | 2002 AMENDED | 2003 REQUESTED | 2003 RECOMMENDED | 2003 APPROVED |
|---|---|---|---|---|---|---|---|---|
| **PERSONNEL:** | | | | | | | | |
| 025-5001 | DISTRICT ATTORNEY SUPPLEMENT | - | - | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| 025-5015 | ASST. DISTRICT ATTORNEYS | 341,435 | 379,956 | 424,881 | 462,188 | 557,258 | 615,362 | 604,502 |
| 025-5025 | SECRETARIES * | 275,060 | 312,140 | 336,582 | 336,582 | 355,096 | 355,096 | 362,220 |
| 025-5032 | LONGEVITY | - | - | - | 6,800 | 9,560 | 9,560 | 9,560 |
| 025-5075 | INVESTIGATORS | 92,885 | 91,513 | 81,022 | 81,022 | 85,954 | 88,162 | 88,411 |
| 025-5080 | INSPECTORS | 25,210 | 27,165 | 28,949 | 28,949 | 30,708 | 32,590 | 31,951 |
| | **SALARY SUMMARY** | 734,590 | 810,774 | 873,834 | 917,941 | 1,040,976 | 1,103,170 | 1,099,044 |
| **EMPLOYEE BENEFITS:** | | | | | | | | |
| 025-5120 | FICA | 55,017 | 60,108 | 66,847 | 70,221 | 79,637 | 84,396 | 84,075 |
| 025-5130 | HOSPITALIZATION | 63,018 | 72,886 | 79,704 | 81,918 | 105,040 | 105,040 | 105,040 |
| 025-5150 | RETIREMENT | 63,753 | 68,233 | 73,752 | 77,475 | 90,461 | 95,869 | 95,508 |
| 025-5170 | WORKERS COMPENSATION | 3,199 | 2,434 | 2,911 | 3,062 | 3,770 | 3,937 | 3,933 |
| 025-5175 | UNEMPLOYMENT COMPENSATION | 814 | 729 | 871 | 915 | 1,353 | 1,434 | 1,425 |
| | **EMPLOYEE BENEFITS SUMMARY** | 185,801 | 204,389 | 224,085 | 233,591 | 280,261 | 290,676 | 289,981 |
| **OPERATIONS:** | | | | | | | | |
| 025-5205 | OFFICE SUPPLIES | 5,725 | 5,780 | 6,800 | 6,800 | 7,500 | 7,500 | 7,500 |
| 025-5305 | COPIER MAINTENANCE | 2,632 | 1,584 | 3,000 | 3,000 | 1,500 | 1,500 | 1,500 |
| 025-5315 | BOOKS & PUBLICATIONS | 1,850 | 2,297 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| 025-5320 | GAS & OIL | 1,451 | 1,542 | 1,000 | 1,000 | 1,500 | 1,500 | 1,500 |
| 025-5325 | FILM & DEVELOPING | 100 | 32 | - | - | - | - | - |
| 025-5404 | LEGAL CONTRACT - WEEKEND MAGISTRATION | - | - | - | - | 5,200 | 5,200 | 5,200 |
| 025-5416 | LAB & WITNESS COSTS | 3,743 | 3,903 | 3,600 | 3,600 | 4,000 | 4,000 | 4,000 |
| 025-5420 | TELEPHONE | 1,750 | 1,419 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| 025-5430 | MOBILE PHONES | 1,120 | 730 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5440 | TRAVEL | 6,900 | 7,366 | 10,000 | 10,000 | 11,000 | 11,000 | 11,000 |
| 025-5614 | NON-CAPITAL EQUIPMENT | - | - | - | - | 800 | 800 | 800 |
| 025-5624 | COMPUTER COMPONENTS & SOFTWARE | 478 | 105 | 1,000 | 1,000 | 6,655 | 6,655 | 6,655 |
| 025-5810 | DUES | 2,000 | 1,945 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 |
| 025-5841 | TRAINING & EDUCATION | 822 | 1,111 | - | 839 | - | - | - |
| 025-5860 | VIDEO TAPES | 59 | 74 | 450 | 450 | 450 | 450 | 450 |
| 025-5865 | SPECIAL PROSECUTOR (JACK DAVIS TRIAL) | - | 84,835 | - | - | - | - | - |
| | **OPERATIONS SUMMARY** | 28,630 | 112,723 | 34,350 | 35,189 | 47,605 | 47,605 | 47,605 |
| **CAPITAL OUTLAY:** | | | | | | | | |
| 025-5619 | CAPITAL EQUIPMENT | - | 895 | - | - | 15,000 | 15,000 | 15,000 |
| | **CAPITAL OUTLAY SUMMARY** | - | 895 | - | - | 15,000 | 15,000 | 15,000 |
| 025-5000 | **TOTAL CRIMINAL DISTRICT ATTORNEY** | 949,021 | 1,128,781 | 1,132,269 | 1,186,721 | 1,383,842 | 1,456,451 | 1,451,630 |

2016

# COMAL COUNTY
## 2002 ADOPTED BUDGET

### GENERAL FUND EXPENDITURES
### CRIMINAL DISTRICT ATTORNEY

| | | 1999 ACTUAL | 2000 ACTUAL | 2001 APPROVED | 2001 AMENDED | 2002 REQUESTED | 2002 RECOMMENDED | 2002 APPROVED |
|---|---|---|---|---|---|---|---|---|
| **PERSONNEL:** | | | | | | | | |
| 025- | DISTRICT ATTORNEY SUPPLEMENT | - | - | - | - | 2,400 | 2,400 | 2,400 |
| 025-5015 | ASST. DISTRICT ATTORNEYS | 289,878 | 341,435 | 356,914 | 377,896 | 424,881 | 424,881 | 424,881 |
| 025-5025 | SECRETARIES * | 236,879 | 275,060 | 294,202 | 315,085 | 334,851 | 336,582 | 336,582 |
| 025-5026 | LAW STUDENT | 215 | - | - | - | - | - | - |
| 025-5075 | INVESTIGATORS | 83,948 | 92,885 | 87,496 | 87,496 | 81,022 | 81,022 | 81,022 |
| 025-5080 | INSPECTORS | 23,407 | 25,210 | 27,014 | 27,014 | 28,949 | 28,949 | 28,949 |
| | **SALARY SUMMARY** | 634,326 | 734,590 | 765,626 | 807,491 | 872,103 | 873,834 | 873,834 |
| **EMPLOYEE BENEFITS:** | | | | | | | | |
| 025-5120 | FICA | 47,615 | 55,017 | 58,570 | 61,774 | 66,714 | 66,847 | 66,847 |
| 025-5130 | HOSPITALIZATION | 63,785 | 63,018 | 66,755 | 70,906 | 79,704 | 79,704 | 79,704 |
| 025-5150 | RETIREMENT | 56,499 | 63,753 | 64,309 | 67,834 | 73,606 | 73,752 | 73,752 |
| 025-5170 | WORKERS COMPENSATION | 3,018 | 3,199 | 3,440 | 3,524 | 2,909 | 2,911 | 2,911 |
| 025-5175 | UNEMPLOYMENT COMPENSATION | 1,020 | 814 | 686 | 728 | 869 | 871 | 871 |
| | **EMPLOYEE BENEFITS SUMMARY** | 171,938 | 185,801 | 193,760 | 204,766 | 223,802 | 224,085 | 224,( |
| **OPERATIONS:** | | | | | | | | |
| 025-5205 | OFFICE SUPPLIES | 5,368 | 5,725 | 5,800 | 5,800 | 6,800 | 6,800 | 6,800 |
| 025-5305 | COPIER MAINTENANCE | 2,479 | 2,632 | 4,000 | 2,000 | 3,000 | 3,000 | 3,000 |
| 025-5315 | BOOKS & PUBLICATIONS | 1,593 | 1,850 | 2,000 | 2,150 | 2,500 | 2,500 | 2,500 |
| 025-5320 | GAS & OIL | 990 | 1,451 | 1,250 | 1,250 | 1,000 | 1,000 | 1,000 |
| 025-5325 | FILM & DEVELOPING | 177 | 100 | 100 | 100 | - | - | - |
| 025-5416 | LAB & WITNESS COSTS | 18,656 | 3,743 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| 025-5420 | TELEPHONE | 2,945 | 1,750 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| 025-5421 | KEY CITE WEST CITATION | 385 | - | - | - | - | - | - |
| 025-5430 | MOBILE PHONES | 500 | 1,120 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5440 | TRAVEL | 6,900 | 6,900 | 8,000 | 8,000 | 10,000 | 10,000 | 10,000 |
| 025-5810 | DUES | 1,950 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 025-5841 | TRAINING & EDUCATION | 981 | 822 | - | 1,054 | - | - | - |
| 025-5860 | VIDEO TAPES | 307 | 59 | 450 | 450 | 450 | 450 | 450 |
| 025-5865 | SPECIAL PROSECUTOR (JACK DAVIS TRIAL) | - | - | - | - | - | - | - |
| | **OPERATIONS SUMMARY** | 43,231 | 28,152 | 31,200 | 30,404 | 33,350 | 33,350 | 33,3( |
| **EQUIPMENT & SOFTWARE:** | | | | | | | | |
| 025-5619 | CAPITAL EQUIPMENT | 6,422 | - | - | - | - | - | - |
| 025-5624 | COMPUTER COMPONENTS & SOFTWARE | 1,030 | 478 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | **EQUIPMENT & SOFTWARE SUMMARY** | 7,452 | 478 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5000 | **TOTAL CRIMINAL DISTRICT ATTORNE** | 856,947 | 949,021 | 991,586 | 1,043,661 | 1,130,255 | 1,132,269 | 1,132,269 |

* ONE SECRETARY ALSO RECEIVES COMPENSATION FROM THE LAW LIBRARY FUND.

**COMAL COUNTY**
**2001  ADOPTED BUDGET**

GENERAL FUND EXPENDITURES

CRIMINAL DISTRICT ATTORNEY

| | | 1998 ACTUAL | 1999 ACTUAL | 2000 APPROVED | 2000 AMENDED | 2001 REQUESTED | 2001 RECOMMENDED | 2001 APPROVED |
|---|---|---|---|---|---|---|---|---|
| **PERSONNEL:** | | | | | | | | |
| 025-5015 | ASST. DISTRICT ATTORNEYS | 191,750 | 289,878 | 339,230 | 346,592 | 348,871 | 356,914 | 356,914 |
| 025-5025 | SECRETARIES * | 219,274 | 236,879 | 275,238 | 277,300 | 287,037 | 294,202 | 294,202 |
| 025-5026 | LAW STUDENT | - | 215 | - | - | - | | |
| 025-5075 | INVESTIGATORS | 76,764 | 83,948 | 81,654 | 83,036 | 85,797 | 87,496 | 87,496 |
| 025-5080 | INSPECTORS | 17,665 | 23,407 | 24,715 | 25,210 | 26,490 | 27,014 | 27,014 |
| 025-5120 | FICA | 38,182 | 47,615 | 55,148 | 56,013 | 57,240 | 58,570 | 58,570 |
| 025-5130 | HOSPITALIZATION | 59,503 | 63,785 | 66,618 | 66,618 | 66,921 | 66,755 | 66,755 |
| 025-5150 | RETIREMENT | 41,574 | 56,499 | 62,780 | 63,278 | 65,167 | 64,309 | 64,309 |
| 025-5170 | WORKERS COMPENSATION | 3,300 | 3,018 | 3,354 | 3,416 | 3,371 | 3,440 | 3,440 |
| 025-5175 | UNEMPLOYMENT COMPENSATION | 1,042 | 1,020 | 793 | 807 | 673 | 686 | 686 |
| **OPERATIONS:** | | | | | | | | |
| 025-5205 | STATIONERY & OFFICE SUPPLIES | 5,289 | 5,368 | 5,400 | 5,439 | 5,800 | 5,800 | 5,800 |
| 025-5305 | COPIER MAINT. & SUPPLIES | 1,150 | 2,479 | 3,532 | 3,532 | 4,000 | 4,000 | 4,000 |
| 025-5315 | BOOKS & PUBLICATIONS | 1,401 | 1,593 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 025-5320 | GAS & OIL | 895 | 990 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 |
| 025-5325 | FILM & DEVELOPING | 254 | 177 | 100 | 100 | 100 | 100 | 100 |
| 025-5416 | LAB & WITNESS COSTS | 3,791 | 18,656 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| 025-5420 | TELEPHONE | 2,956 | 2,945 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| 025-5421 | KEY CITE WEST CITATION | 1,282 | 385 | - | - | - | - | |
| 025-5430 | MOBILE PHONES | 200 | 500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5440 | TRAVEL & MEETINGS | 6,851 | 6,900 | 6,900 | 6,900 | 8,000 | 8,000 | 8,000 |
| 025-5810 | DUES | 1,942 | 1,950 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| 025-5841 | TRAINING & EDUCATION | 1,741 | 981 | | 852 | - | - | |
| 025-5860 | VIDEO TAPES | 225 | 307 | 450 | 450 | 450 | 450 | 450 |
| 025-5619 | CAPITAL EQUIPMENT | 15,433 | 6,422 | - | - | - | - | |
| 025-5624 | COMPUTER COMPONENTS & SOFTWARE | - | 1,030 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5000 | **TOTAL CRIMINAL DISTRICT ATTORNEY** | 692,464 | 856,947 | 939,762 | 953,393 | 973,767 | 991,586 | 991,586 |

* ONE SECRETARY ALSO RECEIVES COMPENSATION FROM THE LAW LIBRARY FUND.

COMAL COUNTY
1999 ADOPTED BUDGET

GENERAL FUND EXPENDITURES

CRIMINAL DISTRICT ATTORNEY

|  |  | 1996 ACTUAL | 1997 ACTUAL | 1998 APPROVED | 1998 AMENDED | 1999 REQUESTED | 1999 RECOMMENDED | 1999 APPROVED |
|---|---|---|---|---|---|---|---|---|
| **PERSONNEL:** | | | | | | | | |
| 025-5015 | ASST. DISTRICT ATTORNEYS (6) | 202,755 | 200,214 | 172,216 | 199,266 | 270,624 | 270,624 | 270,624 |
| 025-5016 | DISTRICT ATTORNEY SUPPLEMENT | 2,400 | 2,400 | - | - | - | - | - |
| 025-5025 | SECRETARIES (11) | 176,934 | 179,623 | 202,486 | 220,999 | 240,083 | 240,083 | 240,083 |
| 025-5075 | INVESTIGATORS (2 F.T., 1 P.T.) | 68,688 | 73,243 | 74,090 | 74,090 | 77,492 | 77,492 | 77,492 |
| 025-5080 | INSPECTORS (1) | - | - | - | 21,522 | 23,063 | 23,063 | 23,063 |
| 025-5120 | FICA | 34,118 | 34,547 | 34,332 | 39,462 | 46,763 | 46,763 | 46,763 |
| 025-5130 | HOSPITALIZATION | 37,818 | 44,325 | 51,696 | 59,235 | 66,420 | 66,420 | 66,420 |
| 025-5150 | RETIREMENT | 35,446 | 37,363 | 36,981 | 42,509 | 54,339 | 54,339 | 54,339 |
| 025-5170 | WORKERS COMPENSATION | 1,870 | 2,524 | 2,827 | 3,142 | 3,928 | 3,928 | 3,928 |
| 025-5175 | UNEMPLOYMENT COMPENSATION | 869 | 1,922 | 1,122 | 1,230 | 977 | 977 | 977 |
| **OPERATIONS:** | | | | | | | | |
| 025-5205 | STATIONERY & OFFICE SUPPLIES | 6,484 | 6,151 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 |
| 025-5305 | COPIER MAINT. & SUPPLIES | 836 | 1,010 | 1,150 | 1,150 | 3,532 | 3,532 | 3,532 |
| 025-5315 | BOOKS & PUBLICATIONS | 1,666 | 3,272 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 |
| 025-5320 | GAS & OIL | 1,017 | 1,042 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
| 025-5325 | FILM & DEVELOPING | 625 | 257 | 400 | 400 | 200 | 200 | 200 |
| 025-5416 | LAB & WITNESS COSTS | 7,013 | 3,227 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 |
| 025-5420 | TELEPHONE | 3,124 | 3,817 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 |
| 025-5421 | KEY CITE WEST CITATION | - | - | - | 1,300 | 1,300 | 1,300 | 1,300 |
| 025-5430 | MOBILE PHONES | 239 | 200 | 200 | 200 | 500 | 500 | 500 |
| 025-5440 | TRAVEL & MEETINGS | 5,540 | 6,823 | 6,900 | 6,900 | 6,900 | 6,900 | 6,900 |
| 025-5475 | OFFICE EQUIPMENT REPAIRS | 391 | - | - | - | - | - | - |
| 025-5810 | DUES | 1,986 | 2,019 | 1,950 | 1,950 | 1,950 | 1,950 | 1,950 |
| 025-5841 | TRAINING & EDUCATION | - | 1,218 | - | 1,740 | - | - | - |
| 025-5860 | VIDEO TAPES | 398 | 797 | 450 | 450 | 450 | 450 | 450 |
| 025-5995 | MISCELLANEOUS COSTS | 481 | - | - | - | - | - | - |
| 025-5618 | NON-CAPITAL EQUIPMENT | 11 | - | - | - | - | - | - |
| 025-5619 | CAPITAL EQUIPMENT | 4,113 | - | 2,500 | 17,500 | 9,083 | 6,422 | 6,422 |
| 025-5624 | COMPUTER COMPONENTS & SOFTWARE | - | - | - | - | 1,000 | 1,000 | 1,000 |
| 025-5613 | SPECIAL PROSECUTION-JACK DAVIS TRIAL | - | - | - | - | - | 25,000 | 25,000 |
| 025-5000 | **TOTAL DISTRICT ATTORNEY** | 594,921 | 605,993 | 606,150 | 709,895 | 825,454 | 847,793 | 847,793 |

* ONE SECRETARY ALSO RECEIVES COMPENSATION FROM THE LAW LIBRARY FUND. SEE PAGE 56

ALL PRIOR YEAR EXPENDITURES FROM THE COUNTY ATTORNEY'S OFFICE AND THE ENVIRONMENTAL ENFORCEMENT
OFFICE HAVE BEEN INCLUDED IN THE ABOVE FIGURES IN ORDER TO ALLOW MEANINGFUL COMPARISON

COMAL COUNTY
**2000 ADOPTED BUDGET**

**GENERAL FUND EXPENDITURES**

**CRIMINAL DISTRICT ATTORNEY**

| | | 1997 ACTUAL | 1998 ACTUAL | 1999 APPROVED | 1999 AMENDED | 2000 REQUESTED | 2000 RECOMMENDED | 2000 APPROVED |
|---|---|---|---|---|---|---|---|---|
| **PERSONNEL:** | | | | | | | | |
| 025-5015 | ASST. DISTRICT ATTORNEYS | 200,214 | 191,750 | 270,624 | 301,397 | 339,230 | 339,230 | 339,230 |
| 025-5016 | DISTRICT ATTORNEY SUPPLEMENT | 2,400 | - | | | | | |
| 025-5025 | SECRETARIES * | 179,623 | 219,274 | 240,083 | 240,083 | 274,163 | 275,238 | 275,238 |
| 025-5075 | INVESTIGATORS * | 73,243 | 76,764 | 77,492 | 77,492 | 81,654 | 81,654 | 81,654 |
| 025-5080 | INSPECTORS | - | 17,665 | 23,063 | 23,063 | 24,715 | 24,715 | 24,715 |
| 025-5120 | FICA | 34,547 | 38,182 | 46,763 | 49,118 | 51,807 | 55,148 | 55,148 |
| 025-5130 | HOSPITALIZATION | 44,325 | 59,503 | 66,420 | 68,634 | 73,062 | 69,840 | 66,618 |
| 025-5150 | RETIREMENT | 37,363 | 41,574 | 54,339 | 57,075 | 63,986 | 62,780 | 62,780 |
| 025-5170 | WORKERS COMPENSATION | 2,524 | 3,300 | 3,928 | 4,030 | 3,675 | 3,354 | 3,354 |
| 025-5175 | UNEMPLOYMENT COMPENSATION | 1,922 | 1,042 | 977 | 1,027 | 1,151 | 793 | 793 |
| **OPERATIONS:** | | | | | | | | |
| 025-5205 | STATIONERY & OFFICE SUPPLIES | 6,151 | 5,289 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 |
| 025-5305 | COPIER MAINT. & SUPPLIES | 1,010 | 1,150 | 3,532 | 3,532 | 3,532 | 3,532 | 3,532 |
| 025-5315 | BOOKS & PUBLICATIONS | 3,272 | 1,401 | 1,600 | 1,600 | 2,000 | 2,000 | 2,000 |
| 025-5320 | GAS & OIL | 1,042 | 895 | 1,750 | 1,750 | 1,750 | 1,250 | 1,250 |
| 025-5325 | FILM & DEVELOPING | 257 | 254 | 200 | 200 | 200 | 100 | 100 |
| 025-5416 | LAB & WITNESS COSTS | 3,227 | 3,791 | 3,800 | 3,800 | 3,919 | 3,600 | 3,600 |
| 025-5420 | TELEPHONE | 3,817 | 2,956 | 4,300 | 4,300 | 4,300 | 3,000 | 3,000 |
| 025-5421 | KEY CITE WEST CITATION | - | 1,282 | 1,300 | 1,300 | - | | |
| 025-5430 | MOBILE PHONES | 200 | 200 | 500 | 500 | 1,000 | 1,000 | 1,000 |
| 025-5440 | TRAVEL & MEETINGS | 6,823 | 6,851 | 6,900 | 6,900 | 7,500 | 6,900 | 6,900 |
| 025-5810 | DUES | 2,019 | 1,942 | 1,950 | 1,950 | 2,000 | 2,000 | 2,000 |
| 025-5841 | TRAINING & EDUCATION | 1,218 | 1,741 | - | 981 | - | | |
| 025-5860 | VIDEO TAPES | 797 | 225 | 450 | 450 | 450 | 450 | 450 |
| 025-5619 | CAPITAL EQUIPMENT | - | 15,433 | 6,422 | 6,422 | 2,200 | - | |
| 025-5624 | COMPUTER COMPONENTS & SOFTWARE | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 025-5865 | SPECIAL PROSECUTION-JACK DAVIS TRIAL | - | - | 25,000 | 25,000 | 25,000 | - | - |
| 025-5000 | **TOTAL CRIMINAL DISTRICT ATTORNEY** | 605,993 | 692,464 | 847,793 | 887,004 | 973,694 | 942,984 | 939,762 |

\* ONE SECRETARY ALSO RECEIVES COMPENSATION FROM THE LAW LIBRARY FUND.

COMAL COUNTY AUDITOR                B U D G E T A R Y   A C C O U N T I N G   S Y S T E M                16:45:27 24 JUL 2003
                    Account Activity of Account 010-025-5865 - GF - DIST ATTORNEY - SPECIAL PROSECUTOR (JACK DAVIS TRIAL)
The Software Group, Inc.                      From 01/01/1999 thru 07/24/2003                                    Page    1

Account Id  : 010-025-5865 - ** INACTIVE ** Expenditure - DETAIL

                              Account Balance as of 07/31/2003: 0.00

                              CURRENT YTD Expenditures: 0.00

                          ..Total Debits   .Total Credits   ....Net Change   Closing Balance
                Balance Fwd                                                        0.00
          2003 January                                                            0.00
               February                                                           0.00
               March                                                              0.00
               April                                                              0.00
               May                                                                0.00
               June                                                               0.00


              POSTED Encumbrance: 0.00      UNPOSTED Encumbrance: 0.00

                          ..Encumbrances   Unencumbrances   ....Net Change   Closing Balance
                Balance Fwd                                                        0.00
          2003 January                                                            0.00
               February                                                           0.00
               March                                                              0.00
               April                                                              0.00
               May                                                                0.00
               June                                                               0.00


| Apply Dt | P | Trans Id.... | Description.......................... | Debit........ | Credit........ | Encumbrance... | Unencumbrance.. |
|---|---|---|---|---|---|---|---|
| 03/14/01 | Y | A/P-171458 | ATTORNEY GENERAL OF TEXAS; JANUARY EXPEN | 243.83 | 0.00 | 0.00 | 0 |
| 04/02/01 | Y | A/P-171459 | ATTORNEY GENERAL OF TEXAS; FEB EXPENSES/ | 1,515.77 | 0.00 | 0.00 | 0.00 |
| 04/02/01 | Y | A/P-171460 | ROD ENGLERT; TX V. JACK DAVIS/ DA | 566.17 | 0.00 | 0.00 | 0.00 |
| 04/11/01 | Y | A/P-171919 | BEXAR CO. FORENSIC SCI CTR; DAVIS CASE/C | 500.00 | 0.00 | 0.00 | 0.00 |
| 05/08/01 | Y | A/P-173361 | TBI; FEES FOR ST VS. JACK DAVIS | 3,150.00 | 0.00 | 0.00 | 0.00 |
| 05/14/01 | Y | A/P-173667 | ATTORNEY GENERAL OF TEXAS; 3/28/01 TO 5/ | 1,953.89 | 0.00 | 0.00 | 0.00 |
| 05/29/01 | Y | A/P-174515 | LABORATORY CORP OF AMERICA; LAB TEST/ DA | 48,750.00 | 0.00 | 0.00 | 0.00 |
| 05/29/01 | Y | A/P-174516 | LOUISE STECKLER; COPY OF TESTIMONY FROM | 74.00 | 0.00 | 0.00 | 0.00 |
| 07/10/01 | Y | A/P-176827 | ATTORNEY GENERAL OF TEXAS; 5/1/01 TO 5/1 | 589.31 | 0.00 | 0.00 | 0.00 |
| 07/31/01 | Y | A/P-177967 | LABORATORY CORP OF AMERICA; FORENSIC | 750.00 | 0.00 | 0.00 | 0.00 |
| 09/19/01 | Y | A/P-180667 | LABORATORY CORP OF AMERICA; FORENSIC CON | 500.00 | 0.00 | 0.00 | 0.00 |
| 10/17/01 | Y | A/P-181642*2 | Correction of Inv 181642 - Correcting En | 140.00 | 0.00 | 0.00 | 0.00 |
| 10/17/01 | Y | A/P-181877 | STEPHEN THOMAS; TRAVEL REIMBURSMENT/ | 64.22 | 0.00 | 0.00 | 0.00 |
| 10/17/01 | Y | A/P-181878 | MARGARET JOYCE SKEETERS; MILEAGE REIMBUR | 101.65 | 0.00 | 0.00 | 0.00 |
| 10/23/01 | Y | A/P-182200 | MARGARET HERBRICH; MEAL AND MILEAGE REIM | 212.35 | 0.00 | 0.00 | 0.00 |
| 10/23/01 | Y | A/P-182202 | KATHY FAULKNER; MEAL AND MILEAGE REIMBUR. | 211.38 | 0.00 | 0.00 | 0.00 |
| 10/23/01 | Y | A/P-182331 | JOHN CALENTINE; MEAL AND GAS REIMBURSEME | 14.68 | 0.00 | 0.00 | 0.00 |
| 10/29/01 | Y | A/P-182650 | LABORATORY CORP OF AMERICA; STATE V JACK | 985.60 | 0.00 | 0.00 | 0.00 |
| 10/29/01 | Y | A/P-182675 | TBI; STATE VS JACK DAVIS / | 4,275.00 | 0.00 | 0.00 | 0.00 |
| 10/29/01 | Y | A/P-182693 | TBI; EXPENSES/ STATE VS JACK DAVIS | 692.09 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182806 | MARIO GUERRERO; WITNESS CLAIM FEE/ | 86.25 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182807 | PAM BENNETT; WITNESS CLAIM FEE/ 96 MILES | 47.02 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182808 | MARK BLAKENBECKLER; WITNESS FEE CLAIM/ 1 | 41.40 | 0.00 | 0.00 | 0.00 |

COMAL COUNTY AUDITOR                    B U D G E T A R Y   A C C O U N T I N G   S Y S T E M                    16:45:27 24 JUL 2003
              Account Activity of Account 010-025-5865 - GF - DIST ATTORNEY - SPECIAL PROSECUTOR (JACK DAVIS TRIAL)
The Software Group, Inc.                        From 01/01/1999 thru 07/24/2003                                          Page   2

| Apply Dt | P | Trans Id.... | Description......................... | Debit......... | Credit........ | Encumbrance... | Unencumbrance.. |
|----------|---|--------------|--------------------------------------|----------------|----------------|----------------|-----------------|
| 10/30/01 | Y | A/P-182809 | ROSA RISZ; WITNESS FEE CLAIM/ MEAL REIMB | 8.64 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182810 | HENRY R. HOLLYDAY, III; WITNESS FEE CLAI | 50.29 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182811 | DENNIS KEATING; WITNESS FEE CLAIM/ 665 M | 285.10 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182812 | GREG BAVIERA; WITNESS FEE CLAIM/ 399 MIL | 153.76 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182813 | GERALD GREENWOOD; WITNESS FEE CLAIM/ DAV | 73.67 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182814 | ROBERTO BAYARDO; WITNESS FEE CLAIM/ 100 | 45.70 | 0.00 | 0.00 | 0.00 |
| 10/30/01 | Y | A/P-182815 | MONTGOMERY KAMA; WITNESS FEE CLAIM/ DAVI | 1,480.05 | 0.00 | 0.00 | 0.00 |
| 11/05/01 | Y | A/P-183090 | BEXAR CO. FORENSIC SCI CTR; CIL# 92-0271 | 800.00 | 0.00 | 0.00 | 0.00 |
| 11/06/01 | Y | A/P-183240 | MICHAEL R. ARAMBULA, MD; STATE V JACK W. | 4,000.00 | 0.00 | 0.00 | 0.00 |
| 11/06/01 | Y | A/P-183297 | HOPPE'S GUEST HOUSE; 17 NIGHTS OCT 1-11 | 1,440.75 | 0.00 | 0.00 | 0.00 |
| 11/06/01 | Y | A/P-183299 | THE GINGERBREAD HOUSE; 19 NIGHTS SEPT 30 | 1,610.25 | 0.00 | 0.00 | 0.00 |
| 11/13/01 | Y | A/P-183568 | ATTORNEY GENERAL OF TEXAS; 08/21/01-10/1 | 3,328.00 | 0.00 | 0.00 | 0.00 |
| 11/13/01 | Y | A/P-183586 | BEST WESTERN MARBLE FALLS INN; HOTEL FOR | 1,327.50 | 0.00 | 0.00 | 0.00 |
| 11/14/01 | Y | A/P-183648 | LABORATORY CORP OF AMERICA; FORENSIC LAB | 3,000.00 | 0.00 | 0.00 | 0.00 |
| 11/27/01 | Y | A/P-184284 | TRAVIS COUNTY MEDICAL EXAMINER; FEE FOR | 300.00 | 0.00 | 0.00 | 0.00 |
| 12/11/01 | Y | A/P-184736 | MARK BLAKENBECKLER; WITNESS FEE CLAIM/ME | 7.52 | 0.00 | 0.00 | 0.00 |
| 12/12/01 | Y | A/P-183568X1 | Deletion of Inv 183568 - Reversing Entry | 0.00 | 3,328.00 | 0.00 | 0.00 |
| 12/31/01 | Y | A/P-185636 | OFFICE OF THE ATTORNEY GENERAL; 8/23-10/ | 3,560.33 | 0.00 | 0.00 | 0.00 |
| 12/31/01 | Y | A/P-185641 | LABORATORY CORP OF AMERICA; FORENSIC SER | 750.00 | 0.00 | 0.00 | 0.00 |
| 12/31/01 | Y | A/P-185861 | ADVANTAGE COPIER SERVICE; COPIES / DIST | 242.93 | 0.00 | 0.00 | 0.00 |
| 12/31/01 | Y | A/P-186473 | DONNA BENNETT; REIMBURSEMENT OF THE DIFF | 18.07 | 0.00 | 0.00 | 0.00 |
| 12/31/01 | Y | A/P-188513 | DONNA BENNETT; TRAVEL EXPENSES FOR JACK | 216.30 | 0.00 | 0.00 | 0.00 |
| 06/03/02 | Y | A/P-194500 | BLANCO COUNTY ; JACK WARREN DAVIS TRIAL/ | 2,106.58 | 0.00 | 0.00 | 0.00 |
| 06/03/02 | Y | A/P-194503 | BLANCO COUNTY ; JACK WARREN DAVIS TRIAL | 4,753.21 | 0.00 | 0.00 | 0.00 |

Total POSTED Activity                                       95,023.26    3,328.00        0.00           0.00
Total UNPOSTED Activity                                          0.00        0.00        0.00           0.00

1323

NAME OF COUNTY _____KIMBLE_____

CAPITAL MURDER CASES FILED IN THIS COUNTY BY YEAR
INDICATED BELOW:

| Fiscal Year | Number of Indictments filed for Capital Murder |
|---|---|
| 2003 | -0- |
| 2002 | -0- |
| 2001 | -0- |
| 2000 | -0- |
| 1999 | -0- |

1324

NAME OF COUNTY _____Liberty_____ , COUNTY SEAT ___Liberty___

APPROXIMATE POPULATION OF COUNTY _____72,000_____

CAPITAL MURDER CASES WHEN THE STATE **SEEKS** THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | 258,000   * | 0 |
| 2002 | 218,000   * | 0 |
| 2001 | 218,000   * | 0 |
| 2000 | 220,000   * | 0 |
| 1999 | 160,000   * | 0 |

CAPITAL MURDER CASES WHEN THE STATE **DOES NOT** SEEK THE DEATH PENALTY:

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | same as above | 0 |
| 2002 | " | 0 |
| 2001 | " | 0 |
| 2000 | " | 0 |
| 1999 | " | 0 |

* Total budgeted for all court appointed attorneys
& witness expenses. Liberty County does not budget
seperately for capital & non-capital cases.

1325



**OFFICE OF THE DISTRICT CLERK**
ROOM 105, COURTHOUSE
P O Box 10536
LUBBOCK, TEXAS 79408-3536
(806) 775-1310
FAX (806) 775-1382

**BARBARA SUCSY**
DISTRICT CLERK

**JEANNETTE ARLEDGE**
CHIEF DEPUTY

September 16, 2003

Law Office of William H. Ray P.C.
5041 Airport Freeway
Fort Worth, Texas 76117

Re: Open Records Request for Death Penalty Expenses

Dear Mr. Ray:

The information your are requesting is maintained by the District Clerk as an agent of the judiciary and is therefore not subject to the Texas Public Information Act (See Tx. Att'y Gen. OR 2002-2931). Our office will not be sending the requested information. If you have any questions regarding this, please contact our Civil attorney, Donna Clarke at (806) 775-1112.

Sincerely,

James Salas
District Clerk Filing Supervisor
Lubbock County, Texas

1326

NO. 0885306D

| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned authority, personally appeared _Shirley Parker_,

who, being by me duly sworn, deposed as follows:

"My name is _Shirley Parker_, I am of sound mind, capable of

making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of the District Clerk's Office of _Stephens_ County,

Texas. Attached hereto are ___1___ pages of information obtained from records from the District

Clerk's Office of _Stephens_ County, Texas. This information is kept by the District Clerk's

Office of _Stephens_ County, Texas in the regular course of business, and it was the regular

course of business of the District Clerk's Office of _Stephens_ County, Texas for an

employee or representative of the District Clerk's Office of _Stephens_ County, Texas, with

knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to

transmit the information thereof to be included in such record; and the record was made at or

near the time or reasonably soon thereafter. The information contained in the attached page is

obtained from the records in the District Clerk's Office and represents the exact number of

capital murder cases filed for the years indicated in this county."

_Shirley Parker, D.C._
AFFIANT

SWORN TO AND SUBSCRIBED before me on the ____ day of _____, 2003.

_____ NOTARY PUBLIC, STATE OF TEXAS

1327

NAME OF COUNTY _Stephens_

CAPITAL MURDER CASES FILED IN THIS COUNTY BY YEAR
INDICATED BELOW:

| Fiscal Year | Number of Indictments filed for Capital Murder |
|---|---|
| 2003 ~0 | |
| 2002 ~0 | |
| 2001 ~0 | |
| 2000 ~0 | |
| ~~1999~~ 0  1998 | 1 |

NO. 0885306D

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 213TH |
| | )( | |
| VS. | )( | DISTRICT COURT OF |
| | )( | |
| BILLY JACK CRUTSINGER | )( | TARRANT COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned authority, personally appeared ___*ELIZABETH CRAIG*___ who, being by me duly sworn, deposed as follows:

"My name is ___*ELIZABETH CRAIG*___, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of ___*Upton*___ County, Texas.  Attached hereto are ___*1*___ pages of information obtained from records from ___*Upton*___ County, Texas.  This information is kept by ___*Upton*___ County, Texas in the regular course of business, and it was the regular course of business of ___*Upton*___ County, Texas for an employee or representative of ___*Upton*___ County, Texas, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit the information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.  The information attached hereto is the exact amount of expenditures or budgeted amounts, as applicable, for the years indicated in this county."

_____*Elizabeth Craig*_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the ___19___ day of ___*September*___, 2003.

_____*LaWanda Yvonne Bend*_____
NOTARY PUBLIC, STATE OF TEXAS

LAWANDA YVONNE BEND
Notary Public, State of Texas
My Commission Expires July 2, 2005

1329

NAME OF COUNTY __*Upton*__ , COUNTY SEAT *Rankin*

APPROXIMATE POPULATION OF COUNTY __*3440*__

**CAPITAL MURDER CASES WHEN THE STATE SEEKS THE DEATH PENALTY:**

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | | |
| 2002 | | |
| 2001 | *NONE* | |
| 2000 | | |
| 1999 | | |

**CAPITAL MURDER CASES WHEN THE STATE DOES NOT SEEK THE DEATH PENALTY:**

| Fiscal Year | Funds Budgeted | Funds Actually Spent |
|---|---|---|
| 2003 | | |
| 2002 | | |
| 2001 | *NONE* | |
| 2000 | | |
| 1999 | | |

1330