IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BILLY JACK CRUTSINGER, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:07-CV-703-Y |
| | § | |
| LORIE DAVIS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT DAVIS'S OPPOSITION TO MOTION
## FOR STAY OF EXECUTION

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*GWENDOLYN S. VINDELL
Assistant Attorney General
Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400

*Counsel of Record

_____

ATTORNEYS FOR RESPONDENT

_____

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

RESPONSE IN OPPOSITION ........................................................................................ 1

PROCEDURAL HISTORY ............................................................................................. 2

    I.       Initial Federal Habeas Proceedings ............................................................. 2

    II.      Post-*Ayestas* Rule 60(b) Proceedings ........................................................... 3

ARGUMENT .................................................................................................................... 5

    I.       The Court Lacks Jurisdiction to Grant the Relief Requested ....................... 5

    II.      Alternatively, the Court Should Decline to Exercise Its Discretion to Grant a Stay ................................................................................................................ 7

CONCLUSION ............................................................................................................... 13

CERTIFICATE OF SE4RVICE ..................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ayestas v. Davis*, 138 S. Ct. 1080 (2018) ..................................................... 1, 3, 4

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ..................................................... 7, 8, 9, 10

*Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016) ..............................*passim*

*Charles v. Stephens*, 612 F. App'x 214 (5th Cir. 2015) .................................... 8

*Cullen v. Pinholster*, 562 U.S. 170 (2011) ...................................................... 13

*Ford v. Wainwright*, 477 U.S. 399 (1986) ...................................................... 11

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ......................................................... 4

*Hill v. McDonough*, 547 U.S. 573 (2006) ..................................................... 7, 13

*Howard v. Dretke*, 157 F. App'x 667 (5th Cir. 2005) ..................................... 6, 7

*Lonchar v. Thomas*, 517 U.S. 314 (1996) .................................................... 9, 10

*Martel v. Clair*, 565 U.S. 648 (2012) .............................................................. 13

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................. 3

*McFarland v. Scott*, 512 U.S. 849 (1994) .................................................*passim*

*Nelson v. Campbell*, 541 U.S. 637 (2004) .......................................................... 7

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................. 8

*Panetti v. Quarterman*, 551 U.S. 930 (2007) .................................................. 11

*Rosales v. Quarterman*, 565 F.3d 308 (5th Cir. 2009) ...................................... 5

*Teague v. Johnson*, 151 F.3d 291 (5th Cir. 1998) .............................................. 6

*Trevino v. Thaler*, 133 S. Ct. 1911 (2013) .......................................................... 3

*Turner v. Johnson*, 106 F.3d 1178 (5th Cir. 1997) .......................................... 11

*Williams v. Cain*, 143 F.3d 949 (5th Cir. 1998) ................................................. 6

**Statutes**

18 U.S.C. § 3599 ........................................................................................ 2, 9, 10

18 U.S.C. § 3599(a)(2) ......................................................................................... 5

18 U.S.C. § 3599(f) ............................................................................................. 3

28 U.S.C. § 2244(b)(3)(A) ................................................................................... 6

28 U.S.C. § 2251 ............................................................................................. 5, 6, 7
28 U.S.C. § 2251(a)(1) ........................................................................................... 5
28 U.S.C. § 2251(a)(3) ..................................................................................... 5, 11
28 U.S.C. § 2254(e)(2) ..................................................................................... 2, 13

**Rules**

Federal Rule of Civil Procedure 59(e) ................................................................... 2
Federal Rule of Civil Procedure 60(b) ........................................................... *passim*
Federal Rule of Civil Procedure 60(b)(6) ......................................................... 1, 3

# RESPONSE IN OPPOSITION

Petitioner Billy Jack Crutsinger is scheduled to be executed on September 4, 2019, for the stabbing deaths of seventy-one-year-old Patricia Syren and her eighty-nine-year-old mother Pearl Magouirk. He previously and unsuccessfully challenged the constitutionality of his state court capital murder conviction and death sentence in both state and federal courts. Years later, Crutsinger filed a motion under Federal Rule of Civil Procedure 60(b)(6) seeking relief from the Court's previous judgment based on *Ayestas v. Davis*, 138 S. Ct. 1080 (2018). Crutsinger primarily sought to reopen this Court's denial of funding to investigate an ineffective-assistance-of-trial-counsel (IATC) claim, alleging that such denial prevented him from fully presenting his claim. This Court construed Crutsinger's post-judgment motion as a second-or-successive habeas petition over which it lacked jurisdiction and transferred it to the Fifth Circuit. The Fifth Circuit found that Crutsinger's Rule 60(b) motion was not a successive petition, vacated this Court's transfer order, and remanded the case for consideration of the merits of the Rule 60(b) motion in the first instance. Crutsinger asked the Fifth Circuit to stay his execution following their opinion, but the Fifth Circuit declined to do so in a published opinion.

Crutsinger now asks this Court to stay his execution pending the provision of his statutorily-guaranteed right to representation to investigate and prepare an initial federal habeas petition. Mot. Stay Execution at 1. However, this Court lacks jurisdiction to stay Crutsinger's execution unless it first grants his underlying Rule 60(b) motion, as no habeas petition is pending.

1

Alternatively, as in the higher court, Crutsinger fails to satisfy his burden to justify such an extraordinary federal court interference in a state-court proceeding. Accordingly, this Court should deny Crutsinger's motion to stay his execution.

## PROCEDURAL HISTORY

### I. Initial Federal Habeas Proceedings

Prior to filing his federal petition in this Court, Crutsinger sought the funding and appointment of an investigator under 18 U.S.C. § 3599. ECF No. 13. This Court denied Crutsinger's request, holding that Crutsinger failed to demonstrate that the IATC claim he sought to develop was not unexhausted and procedurally barred from review and that he had failed to develop the factual basis for the claim in state-court proceedings. ECF No. 14 at 2–3.

Crutsinger then filed a federal habeas petition alleging IATC for failure to conduct a timely social history investigation. Fed. Writ Pet. at 31–55, ECF No. 31. This Court found that the substance of Crutsinger's claim was unexhausted, ECF No. 48 at 8 n.5, and that Crutsinger was prohibited from factual development in federal court under 28 U.S.C. § 2254(e)(2). *Id*. at 8. The court did not, however, apply a procedural bar to Crutsinger's claim. *Id*. at 8 n.5. The court instead reviewed the claim de novo, found it without merit, denied habeas relief, and denied a certificate of appealability (COA). *Id*. at 8–30; ECF No. 51.

Crutsinger filed a motion under Federal Rule of Civil Procedure 59(e), challenging both the denial of his claim and denial of funding. ECF No. 52. While Crutsinger's motion was pending, the Supreme Court issued its decision

in *Martinez v. Ryan*, which created a "narrow exception" to the court-created rules regarding procedural default where state habeas counsel was ineffective in failing to pursue a substantial IATC claim. 566 U.S. 1, 9 (2012). This Court denied Crutsinger's motion, finding, in part, that Crutsinger's IATC claim was not substantial, and thus *Martinez* did not benefit him. ECF No. 56 at 7.

Crutsinger appealed this Court's decision to the Fifth Circuit, which in turn denied COA on the IATC claim and held that, even in light of *Martinez* and *Trevino*,[1] this Court did not abuse its discretion in denying Crutsinger funding. *Crutsinger v. Stephens*, 576 F. App'x 422, 428–31 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1401 (2015).

## II. Post-*Ayestas* Rule 60(b) Proceedings

Three years later, the Supreme Court decided *Ayestas*, in which it rejected the Fifth Circuit's standard for determining whether investigative funds under § 3599(f) are "reasonably necessary." 138 S. Ct. at 1080. Crutsinger then filed a Rule 60(b)(6) motion in this Court, seeking to reopen the court's previous judgment on the basis that *Ayestas*, combined with eight other factors including the purported strength of his IATC claim, supported re-adjudication of his case. ECF No. 90.

The Director filed her response in opposition, arguing: 1) Crutsinger's motion was actually an impermissible successive habeas petition; 2) Crutsinger failed to demonstrate extraordinary circumstances sufficient to warrant Rule 60(b)(6) relief because he was relying on a mere change in

---

[1] *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) (applying *Martinez* to Texas capital cases).

3

decisional law; and 3) even under *Ayestas*, Crutsinger would not be entitled to funding. ECF No. 94. This Court found that Crutsinger's Rule 60(b) motion should be properly construed as an impermissible second-or-successive petition and transferred the motion to the Fifth Circuit, without reaching the alternative merits of the Rule 60(b) motion. ECF No. 98.

On July 3, 2019, the Fifth Circuit issued a published opinion in which it concluded that Crutsinger's Rule 60(b) motion was not a second-or-successive petition. *Crutsinger v. Davis*, No. 18-70027, 2019 WL 2864445, at *4 (5th Cir. July 3, 2019). Turning to the merits of the Rule 60(b) motion, the Fifth Circuit noted that the Supreme Court's holding in *Gonzalez v. Crosby*[2] that "'not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final' is at least instructive, if not dispositive, of Crutsinger's Rule 60(b) motion." *Id*. However, because this Court had not alternatively granted or denied a COA on the merits of the motion, the Fifth Circuit found that it was foreclosed from ruling on the alternative merits, vacated this Court's transfer order, and remanded the case to this Court for consideration of the merits of the motion in the first instance. *Id*. at *4–5. Judge Graves dissented, opining that he would grant the Rule 60(b) motion. *Id*. at 5. One day after the Fifth Circuit issued its opinion, Crutsinger filed a motion for stay of execution in that court, relying primarily on Judge Graves's dissent to show that a stay was warranted.

On July 12, 2019, this Court entered an order allowing the parties to submit supplemental briefing by July 19, 2019. ECF No. 108. In the interim,

---

[2]   545 U.S. 524 (2005).

4

the Director filed her response in opposition to Crutsinger's motion for stay of execution and a petition for panel rehearing. On July 19, 2019, the Fifth Circuit issued two orders: 1) a published opinion denying Crutsinger's motion for stay of execution; and 2) an order denying the Director's petition for panel rehearing. *See Crutsinger v. Davis*, No. 18-70027, 2019 WL 3243399 (5th Cir. July 19, 2019). The Fifth Circuit also issued mandate. The parties both timely filed their supplemental briefs in this Court. ECF Nos. 111, 117. Crutsinger also filed the instant motion for stay of execution. ECF No. 112. This response follows.

## ARGUMENT

### I. The Court Lacks Jurisdiction to Grant the Relief Requested.

A federal court's authority to stay the execution of a state-court prisoner derives only from 28 U.S.C. § 2251. Specifically, under § 2251(a)(1), federal courts have the authority to stay state-court proceedings when a federal habeas corpus proceeding is pending. Additionally, § 2251(a)(3) grants federal courts the authority to stay an execution after a state prisoner files an application for appointment of new counsel, pursuant to § 3599(a)(2), in a court that has jurisdiction to entertain a habeas corpus application regarding that sentence.

Consistent with the clear language of the statute, the Fifth Circuit has clarified that § 2251 grants a district court the power the stay an execution only: 1) where that court has a habeas petition pending before it; or 2) for appointment of new counsel where that court would have jurisdiction to entertain a habeas petition. *Rosales v. Quarterman*, 565 F.3d 308, 311 (5th Cir.

5

2009) ("There is no dispute in this matter that no habeas petition remains pending in the federal courts. Therefore, both the district court and this court are without jurisdiction to enter a stay of execution."); *Teague v. Johnson*, 151 F.3d 291, 291 (5th Cir. 1998) ("[O]nce the appellate mandate issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251."); *Williams v. Cain*, 143 F.3d 949, 950 (5th Cir. 1998) (holding that a district court has no power under § 2251 to stay execution when there is no pending habeas proceeding); *see also Howard v. Dretke*, 157 F. App'x 667, 671 (5th Cir. 2005) (unpublished) (holding that both the district court and the court of appeals lacked jurisdiction to grant stay of execution in conjunction with motion for appointment of counsel that was not tied to pending or proposed habeas proceeding in the district court, relying on § 2251, *Williams*, and *Teague*).

Here, there is no federal habeas petition currently pending before this Court nor can Crutsinger file one without permission from the circuit court. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). And, as the Fifth Circuit found when it denied his stay of execution, "Crutsinger . . . has been well-represented by his counsel for eleven years[.]" *Crutsinger*, 2019 WL 3243399, at *3. Thus, unless and until this Court grants Crutsinger's underlying Rule 60(b) motion, *see* ECF No. 90,

it lacks subject-matter jurisdiction over the request for a stay of execution.³ The time to weigh the equities is over. Crutsinger cannot be granted the stay he seeks.

## II. Alternatively, the Court Should Decline to Exercise Its Discretion to Grant a Stay.

A stay of execution is an equitable remedy. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). It is well-established that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment

---

³ Crutsinger does not specifically argue that this Court has jurisdiction to grant the stay, but he does cite to *McFarland* and *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016), in support of his argument that the district court should exercise its *discretion* to grant the stay. *See* Mot. Stay Execution 4. To the extent he would rely on those cases to argue that the Court has jurisdiction, both are clearly distinguishable, as they involve the necessary appointment of new, unfamiliar counsel who required time to investigate or raise claims in an *initial* petition that had previously not been available or developed due to lack of or complete abandonment of counsel, and neither case altered the district court's statutory jurisdiction to enter a stay. *See McFarland*, 512 U.S. at 857–59; *Battaglia*, 824 F.3d at 473–74; *see also Howard*, 157 F. App'x at 671 (explaining that the holding in *McFarland* "that the district court would have jurisdiction to stay an execution upon the filing of a motion for appointment of counsel was *directly related* to the fact that the petitioner's request for counsel initiated a 'habeas corpus proceeding' before the district court under § 2251" (emphasis added)). Both cases are discussed in greater detail in Argument II, *infra*.

7

of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id.* In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id.* at 893.

In considering whether to grant a stay under *Nken v. Holder*, 556 U.S. 418 (2009), a court considers: 1) whether the petitioner has made a strong showing that he is likely to succeed on the merits, 2) whether the petitioner will be irreparably injured absent a stay, 3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and 4) where the public interest lies. *Crutsinger*, 2019 WL 3243399, at *1 (citing *Charles v. Stephens*, 612 F. App'x 214, 218 n.7 (5th Cir. 2015)). The first two factors "are the most critical," and "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Such a showing requires an applicant to demonstrate more than good faith or just the absence of frivolity on the part of the petitioner. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). A request for a stay may also be considered under *McFarland v. Scott*, 512 U.S. 849 (1994). *See Battaglia*, 824 F.3d at 475 (noting a lack of clarity as to whether a motion for stay is governed by *McFarland* or *Nken*).[4]

---

[4] Crutsinger appears to invoke only *McFarland* in support of his request to stay his execution and does not cite to the *Nken* factors in his motion, *see generally* Mot. Stay Execution. However, even assuming that only *McFarland* applies to this case, as explained above, Crutsinger cannot demonstrate that he will be deprived of "a right for that counsel meaningfully to research and present a defendant's habeas claims." *McFarland*, 512 U.S. at 858. Thus, Crutsinger fails to show entitlement to a stay under either standard.

8

Here, Crutsinger presumes the success of his underlying Rule 60(b) motion and asks this Court to stay his execution to permit the investigation and preparation of a federal habeas petition. Mot. Stay Execution 4. But, as argued extensively in the Director's briefing before this Court, *see* ECF Nos. 94, 117, Crutsinger's Rule 60(b) motion entirely lacks merit. Indeed, in its opinion denying Crutsinger's motion for stay of execution, the Fifth Circuit held that Crutsinger had failed to establish a likelihood of success on the merits of his Rule 60(b) motion. *Crutsinger*, 2019 WL 3243399, at *2. "Crutsinger's inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *Id.* This Court should also find that this factor weighs heavily against a stay of his execution.

In an attempt to circumvent this dispositive factor, Crutsinger argues that he is entitled to a stay because, by being denied § 3599 funding, he has been denied his right to meaningful representation. Mot. Stay Execution 2–4. While conceding that he has in fact filed a federal petition and that such petition was adjudicated, he asserts that the deprivation of his right to representation means that he has not yet filed an "initial" federal habeas petition, and a stay is therefore warranted to provide time for the investigation and preparation of that initial petition, for that petition to be meaningfully adjudicated, and for that adjudication to be meaningfully reviewed. *Id.* (citing *Lonchar v. Thomas*, 517 U.S. 314 (1996) and *Barefoot*, 463 U.S. at 893–94).

But Crutsinger's attempts to nullify the filing, adjudication, and appellate review of his initial federal petition are baseless. To be sure, over the last decade, three federal courts—totaling thirteen federal judges between

9

them—have considered and reconsidered both the underlying IATC claim raised in Crutsinger's initial habeas petition as well as the attendant funding request. *See* ECF Nos. 14, 18, 48, 56; *Crutsinger*, 576 F. App'x at 428, 430–31. No court has found either compelling. Crutsinger's reliance on *Lonchar* and *Barefoot* is therefore wholly unavailing, as this would be Crutsinger's *second*, not first, federal petition, he has not been granted a COA in his appeal, and he has already received full appellate review of his underlying issues. *See Lonchar*, 517 U.S. at 320 ("We believe the same principle applies when a district court is faced with a request for a stay in a *first* federal habeas case: If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." (emphasis added)); *Barefoot*, 463 U.S. at 893–94 ("Accordingly, a circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a [COA] on his *initial* habeas appeal." (emphasis added)).

Crutsinger resists this straightforward conclusion by emphasizing that the district court's entirely discretionary denial of investigatory funding deprived him of his right to *meaningful* representation under § 3599. Mot. Stay Execution 2–4. Crutsinger cites to *McFarland* and *Battaglia* for the proposition that he cannot be executed until he has been afforded his rights under § 3599. *See* Mot. Stay Execution 3–4. But both cases are inapposite. In *McFarland*, the Supreme Court held that an indigent capital defendant, who had not yet filed an initial state habeas application, was entitled to the appointment of qualified

10

legal counsel once a federal postconviction proceeding has commenced and that an attendant stay of execution was warranted to allow newly appointed counsel to investigate claims and file a federal habeas petition. 512 U.S. at 857–59. However, *McFarland* is limited to *initial* habeas petitions. *See id.* at 858 ("Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution."); *see also Turner v. Johnson*, 106 F.3d 1178, 1182 (5th Cir. 1997) ("The *McFarland* Court was concerned only with that period of time between the habeas petitioner's motion for the appointment of counsel and the filing of the *initial* petition." (emphasis added)). And, as discussed above, Crutsinger has litigated one to conclusion.[5]

*Battaglia* similarly does not help him. There, the Fifth Circuit determined that the petitioner was "effectively abandoned" by counsel with respect to his attempts to raise a newly-ripe competency-to-be-executed claim under *Ford v. Wainwright*[6] in state court. 824 F.3d at 473–75; *cf. Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) ("The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe."). The court therefore held that the petitioner was entitled to new counsel to raise his competency claims in

---

[5] *McFarland*'s holding relating to a stay of execution was superseded by statute, which is similarly limited to *newly* appointed counsel. *See* 28 U.S.C. § 2251(a)(3) (if a death-sentenced state prisoner seeks the appointment of new counsel in a court that would have jurisdiction to consider a habeas petition, that court may stay that prisoner's execution, but such stay shall terminate after ninety days of counsel's appointment); *see also* Argument I, *supra*.

[6] 477 U.S. 399 (1986).

state court. *Battaglia*, 824 F.3d at 475. Because the petitioner had been abandoned and "effectively lacked counsel to prepare his claim of competency," the court held that "it would be improper to approve his execution before his newly appointed counsel has time to develop his [incompetency] claim." *Id*.

Thus, neither case benefits him, as both dealt with situations where new, unfamiliar counsel required time to investigate or raise a new claim or claims which had previously not been developed due to lack of or complete abandonment of counsel. Indeed, the Fifth Circuit considered Crutsinger's assertions under *McFarland* and *Battaglia* and held that "Crutsinger . . . has been well-represented by his counsel for eleven years, and there is no indication that, as in *McFarland* and *Battaglia*, 'he would be deprived of meaningful counsel absent a stay.'" *Crutsinger*, 2019 WL 3243399, at *3. Crutsinger therefore fails to establish that he is entitled to a stay under *McFarland* or that he will be irreparably harmed absent a stay. *See id.* at *2–3.

Moreover, Crutsinger cannot show irreparable harm because the courts have enough time to rule on the issues presented. Indeed, the parties have already briefed the merits of the Rule 60(b) motion *and* the merits of the underlying funding request in this Court. The federal courts could certainly determine the issue before them well within the "approximately six weeks before the execution date of September 4, 2019." *Crutsinger*, 2019 WL 3243399, at *3. This is especially true given that, as indicated above, "the issues presented by Crutsinger's motion" are "issues that have already been reviewed by numerous state and federal courts, including [the Fifth Circuit]." *Id*. "At

12

this point, a denial of his stay motion would not prevent him from fully and fairly litigating the merits of his Rule 60(b) motion before [this Court]." *Id.*[7]

Importantly, the State has a strong interest in carrying out a death sentence properly imposed for a senseless capital murder that occurred over fifteen years ago. *See Hill*, 547 U.S. at 584. To be sure, the public's interest lies in executing a sentence duly assessed and for which more than a decade's worth of judicial review has terminated without finding reversible error. This Court should not further delay justice. *See Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice."). Thus, "[e]ven if Crutsinger could establish a likelihood of success on the merits—which he cannot—the other factors weigh in favor of the state." *Crutsinger*, 2019 WL 3243399, at *3. Considering all of the circumstances in this case, equity favors Texas, and this Court should deny Crutsinger's motion for a stay of execution.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that this Court deny Crutsinger's motion for stay of execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

---

[7] Indeed, because Crutsinger raised an IATC failure-to-investigate claim in state court, Crutsinger remains barred from adding anything to his claim in federal court by *Cullen v. Pinholster*, 562 U.S. 170, 181 (2011). Moreover, he is also barred from adding evidence by § 2254(e)(2), as consistently found by this Court during initial habeas proceedings. *See, e.g.*, ECF Nos. 14, 48. This further undermines any suggestion that the risk of injustice to Crutsinger in this case is great.

|  |  |
|---|---|
|  | JEFFREY C. MATEER<br>First Assistant Attorney General |
|  | LISA TANNER<br>Acting Deputy Attorney General<br>for Criminal Justice |
|  | EDWARD L. MARSHALL<br>Chief, Criminal Appeals Division |
|  | <u>s/ Gwendolyn S. Vindell</u><br>GWENDOLYN S. VINDELL*<br>Assistant Attorney General |
| *Lead Counsel | State Bar No. 24088591 |
|  | P.O. Box 12548, Capitol Station<br>Austin, Texas  78711-2548<br>(512) 936-1600<br>(512) 320-8132 (Fax)<br>E-mail: gwendolyn.vindell2@oag.texas.gov |
|  | ATTORNEYS FOR RESPONDENT |

## CERTIFICATE OF SERVICE

I certify that, on the 25th day of July, 2019, a true and correct copy of the above pleading was electronically served to the following counsel for Crutsinger by filing the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

Lydia MV Brandt
Brandt Law Firm
PO Box 326
Farmersville, TX 75442-0326
972-752-5805
Email: lydiabrandt566@gmail.com

                                        s/ Gwendolyn S. Vindell
                                        GWENDOLYN S. VINDELL
                                        Assistant Attorney General