# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

4:07-cv-703-Y

No. 19-70012

United States Court of Appeals
Fifth Circuit

**FILED**
August 26, 2019

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
AUG 27 2019
CLERK, U.S. DISTRICT COURT
By_____
      Deputy

BILLY JACK CRUTSINGER,

　　　　　Petitioner–Appellant,

versus

LORIE DAVIS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

　　　　　Respondent–Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before SMITH, OWEN, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Billy Crutsinger moves for a Certificate of Appealability ("COA") to appeal whether, under Federal Rule of Civil Procedure 60(b)(6), extraordinary circumstances require us to reopen the final judgment and grant funding for representation services. He also moves for a stay of execution. Because Crutsinger fails to show that reasonable jurists would debate whether the district

Case: 19-70012    Document: 00515092425    Page: 2    Date Filed: 08/26/2019
Case 4:07-cv-00703-Y Document 126 Filed 08/27/19 Page 2 of 14 PageID 7247

No. 19-70012

court abused its discretion in denying his motion, we deny a COA. Moreover, because Crutsinger does not establish that the circumstances justify the exercise of our equitable discretion, we deny the motion for a stay.

I.

In 2003, Billy Jack Crutsinger murdered eighty-nine-year-old Pearl Magouirk and her seventy-one-year-old daughter, Patricia Syren. *Crutsinger v. Davis* (*Crutsinger III*), 929 F.3d 259, 261 (5th Cir. 2019). He was convicted of capital murder and sentenced to death, *id.*, and is scheduled to be executed on September 4, 2019.

Last month, we remanded for consideration of Crutsinger's Rule 60(b)(6) motion, *id.* at 266, then denied his motion for a stay of execution, *Crutsinger v. Davis* (*Crutsinger IV*), 930 F.3d 705, 706–09 (5th Cir. 2019) (per curiam). In a thorough and well-reasoned opinion, the district court denied Crutsinger's Rule 60(b) motion, his 18 U.S.C. § 3599(f) funding request, and his request for a COA. *Crutsinger v. Davis* (*Crutsinger V*), No. 4:07-CV-00703-Y, 2019 WL 3749530, at *1–9 (N.D. Tex. Aug. 8, 2019).

II.

A.

As a jurisdictional prerequisite, a habeas petitioner must obtain a COA before we may consider his appeal.[1] A COA is required to appeal the denial of a Rule 60(b) motion. *Buck v. Davis*, 137 S. Ct. 759, 777 (2017). Issuance of a COA requires the petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Ultimately, the central question is "whether a reasonable jurist could conclude that the District Court abused its

---

[1] *Raby v. Davis*, 907 F.3d 880, 883 (5th Cir. 2018); *accord Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *see also* 28 U.S.C. § 2253(c).

2

Case: 19-70012      Document: 00515092425     Page: 3     Date Filed: 08/26/2019
Case 4:07-cv-00703-Y   Document 126   Filed 08/27/19   Page 3 of 14   PageID 7248

No. 19-70012

discretion in declining to reopen the judgment."[2]

Federal Rule of Civil Procedure 60(b)(6) permits relief from a judgment or order for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). To prevail on a Rule 60(b)(6) motion in the habeas context, a movant must (1) make the motion within a reasonable time, FED. R. CIV. P. 60(c), and (2) establish that extraordinary circumstances justify the reopening of the final judgment, *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Such extraordinary circumstances "will rarely occur in the habeas context." *Id.* "A change in decisional law after entry of judgment does not constitute extraordinary circumstances and is not alone grounds for relief from a final judgment."[3]

B.

Crutsinger maintains that he is entitled to relief under Rule 60(b) because recent changes in decisional law, including *Ayestas v. Davis*, 138 S. Ct. 1080 (2018), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Martinez v. Ryan*, 566 U.S. 1 (2012), coupled with seven additional factors,[4] constitute extraordinary

---

[2] *Buck*, 137 S. Ct. at 777; *accord Miller-El*, 537 U.S. at 336 ("[A] petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (internal quotation marks, alteration, and citations omitted)).

[3] *Raby*, 907 F.3d at 884 (internal quotation marks, alteration, and citations omitted); *accord Adams v. Thaler*, 679 F.3d 312, 319–20 (5th Cir. 2012); *Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011); *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990).

[4] Those factors include (1) "[t]he nature of the proceedings as habeas corpus, in which traditional res-judicata rules have never applied, and the careful adjudication of which the Supreme Court has called the highest duty of a federal court," *Crutsinger V*, 2019 WL 3749530, at *2; (2) "[t]he nature of the case as a capital case," *id.*; (3) "[t]he nature of the alleged defect as a deprivation of guaranteed representation, which is structural in nature and undermines public confidence in the judicial process," *id.*; (4) "[t]he nature of the alleged defect, which operated to preclude hearing the true merits of the case because it thwarted Crutsinger's ability 'even to discover and allege material facts in support of claims he sought to pursue in good faith,'" *id.*; (5) "[t]he fact that the Supreme Court specifically mentioned this case in *Ayestas*," *id.*; (6) "[t]he facts underlying the claims affected by the alleged defect are egregious, including that petitioner's trial counsel went to trial only five months after being appointed in a capital case and state habeas counsel effectively abandoned him," *id.*;

Case: 19-70012   Document: 00515092425   Page: 4   Date Filed: 08/26/2019
Case 4:07-cv-00703-Y   Document 126   Filed 08/27/19   Page 4 of 14   PageID 7249

No. 19-70012

circumstances. Crutsinger underscores that "[r]easonable jurists could . . . debate whether . . . the ruling of the district court denying [Rule] 60(b) relief and funding should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

In support of this, Crutsinger cites the dissent from our recent decision[5] and claims that the district court incorrectly analyzed the seven additional factors he raised. He contends—contrary to *Crutsinger IV*, 930 F.3d at 707 & n.1—that *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013), and *Adams*, 679 F.3d at 319–20, do not bar relief under Rule 60(b). Crutsinger essentially maintains that *Adams* and *Diaz* were wrongly decided because *Martinez* was an equitable ruling as distinguished from a constitutional one.

Crutsinger next recites the *Ayestas* standard for funding under § 3599(f), asserting that "[t]he district court's record-bound, merits-review conflicts with *Ayestas* in how funding determinations are assessed." He contends that he has doggedly pursued his § 3599(f) right to funding over the last decade and that his funding request is not frivolous. Crutsinger further emphasizes that the extraordinary circumstances underlying his Rule 60(b) motion do not include merely the changes in decisional law and his diligent pursuit of § 3599(f) funding. He posits that the risk this case will undermine public confidence in the judicial process also supports his claim of extraordinary circumstances.

Lastly, Crutsinger stresses that "*Gonzalez* did not announce any rule that a change in law cannot constitute an extraordinary circumstance warranting relief from the judgment." In *Gonzalez*, 545 U.S. at 536, the Court

---

and (7) the fact that "Crutsinger has exercised extraordinary diligence in pursuing his representation rights," *id.*

[5] *Crutsinger III*, 929 F.3d at 266 (Graves, J., dissenting) ("Because I conclude that Billy Jack Crutsinger's motion under Federal Rule of Civil Procedure 60(b)(6) should be granted, I would vacate and remand for proper consideration of his funding motion.").

Case: 19-70012   Document: 00515092425   Page: 5   Date Filed: 08/26/2019
Case 4:07-cv-00703-Y   Document 126   Filed 08/27/19   Page 5 of 14   PageID 7250

No. 19-70012

remarked that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." Importantly, Crutsinger asserts, this "does not mean that no erroneous interpretation does" (emphasis omitted). In contrast to the circumstances in *Gonzalez*, he asserts that he was "independently deprived . . . of a federally guaranteed right" and that "[t]he deprivation of that right demands a remedy." Consequently, he contends that the totality of the circumstances warrants relief under Rule 60(b).

In response, the state maintains that reasonable jurists would not debate whether the district court abused its discretion in declining to reopen because *Gonzalez* and circuit precedent, forecloses such relief. In *Gonzalez*, 545 U.S. at 536, the Court stated that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation" of a federal statute. We reiterated this sentiment in both of our recent *Crutsinger* decisions.[6] The state further underscores that "[i]f a change in law that entirely precluded merits review—as in *Gonzalez*—is not sufficient to warrant Rule 60(b)(6) relief, then the change in the law . . . on a lesser matter—funding to possibly support a claim for relief—necessarily cannot warrant Rule 60(b)(6) relief."

Echoing our recent statements in *Crutsinger IV*, 930 F.3d at 707 & n.1, the state avers that "this [c]ourt's precedent forecloses reliance on *Martinez* and *Trevino* to achieve relief under Rule 60(b)." The state cites our recent published decision in *In re Johnson*, Nos. 19-20552, 19-70013, 2019 WL 3814384,

---

[6] *Crutsinger IV*, 930 F.3d at 707; *Crutsinger III*, 929 F.3d at 266 ("It would appear that the Supreme Court's holding in *Gonzalez* that not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final is at least instructive, if not dispositive, of Crutsinger's Rule 60(b) motion." (internal quotation marks and citation omitted)).

Case: 19-70012 Document: 00515092425 Page: 6 Date Filed: 08/26/2019
Case 4:07-cv-00703-Y Document 126 Filed 08/27/19 Page 6 of 14 PageID 7251

No. 19-70012

at *3 (5th Cir. Aug. 15, 2019), to buttress that contention. In *Johnson*, relying on *Raby*, 907 F.3d at 884, we reaffirmed that a claim of deficient representation, without more, is insufficient to obtain Rule 60(b) relief. *Johnson*, 2019 WL 3814384, at *3. Moreover, we emphasized there, as here, that the movant failed to offer "any authority that [§] 3599 has ever provided relief pursuant to Rule 60(b)." *Id.* at *4. Consequently, we denied a COA.[7]

Finally, the state contends that the other factors raised by Crutsinger weigh against Rule 60(b) relief because they are not extraordinary. The state notes that *Diaz* and *Haynes v. Davis*, 733 F. App'x 766, 768–70 (5th Cir. 2018), found that changes in decisional law (specifically, *Trevino* and *Martinez*), coupled with various other "equities," were not enough to establish extraordinary circumstances. In *Diaz*, 731 F.3d at 377), we emphasized that the petitioner's circumstances were "no more unique or extraordinary than any other capital inmate who defaulted claims in state court prior to *Trevino*." (Citation omitted.) So, too, with Crutsinger's funding request after *Ayestas*.

Moreover, in *Haynes*, 733 F. App'x at 770, we maintained that "finality is a particularly strong consideration in the habeas context." The state emphasizes that here, as in *Haynes*, Crutsinger has been litigating his claims in federal court for more than a decade and has received multiple stages of review. In both cases, we found that Rule 60(b) relief was not warranted. *See id.*; *Diaz*, 731 F.3d at 379.

Ultimately, the state contends, "Crutsinger cites no authority for the proposition that a district court's entirely discretionary denial of funding in

---

[7] *Id.* The state also maintains that the district court's thorough opinion explicitly addressed the *Crutsinger III* dissent's concerns—that the denial of funding risked undermining the public's confidence in the judicial process and producing an unjust result, *Crutsinger III*, 930 F.3d at 271 (Graves, J., dissenting)—by "discussing the prior merits review of the claim" and providing a proper review of Crutsinger's funding request under *Ayestas*.

Case: 19-70012  Document: 00515092425  Page: 7  Date Filed: 08/26/2019
Case 4:07-cv-00703-Y  Document 126  Filed 08/27/19  Page 7 of 14  PageID 7252

No. 19-70012

any way deprived him of his statutory right to representation." Consequently, because none of the other factors he cites establishes extraordinary circumstances, "he cannot show that reasonable jurists would debate the lower court's denial of that motion."

### C.

Crutsinger is not entitled to a COA because reasonable jurists would not debate whether the district court abused its discretion in denying his Rule 60(b) motion. A petitioner "seeking relief under Rule 60(b)(6) [must] show extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (internal quotation marks and citation omitted). This is a strict standard, so extraordinary circumstances are rarely present in the habeas context. *Id.* Mere changes in decisional law, without more, do not constitute extraordinary circumstances. *See id.* at 536–37. "It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation" of a federal statute. *Id.* at 536. Importantly, the Court maintained, "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Id.* Moreover, "if, as in *Gonzalez*, a change in law that *entirely* precluded merits review is not sufficient to warrant Rule 60(b)(6) relief," then (as is the case here) a change in law that *did not* preclude merits review does not merit such relief. *Crutsinger IV*, 930 F.3d at 707 (internal quotation marks omitted).

Circuit precedent also squarely forecloses Crutsinger's claim.[8] We noted as much in both of our recent decisions. *Crutsinger IV*, 930 F.3d at 707;

---

[8] *E.g.*, *Johnson*, 2019 WL 3814384, at *3; *Raby*, 907 F.3d at 884; *Haynes*, 733 F. App'x at 768–70; *Diaz*, 731 F.3d at 375–76; *Adams*, 679 F.3d at 319–20; *Hernandez*, 630 F.3d at 430; *Bailey*, 894 F.2d at 160.

7

Case: 19-70012   Document: 00515092425   Page: 8   Date Filed: 08/26/2019
Case 4:07-cv-00703-Y   Document 126   Filed 08/27/19   Page 8 of 14   PageID 7253

No. 19-70012

*Crutsinger III*, 929 F.3d at 266. This overwhelming precedent is effectively dispositive of the matter.[9]

Crutsinger attempts to evade this precedent by claiming that the changes in decisional law, coupled with seven additional factors, constitute extraordinary circumstances. The district court, however, rejected this theory, engaging in an exhaustive review of the seven factors presented by Crutsinger. *Crutsinger V*, 2019 WL 3749530, at *2–6. The court's analysis is both helpful and, more importantly, correct.

Citing both Supreme Court and circuit precedent, the district court concluded that the capital habeas nature of this case does not make its circumstances extraordinary. *Id.* at *2. The court also noted that, despite Crutsinger's claims, the denial of funding was not structural error, making his circumstances all the more ordinary. *See id.* at *3.

The district court engaged in an extensive review of the record to demonstrate that Crutsinger's representation at trial was not egregious and that he was not precluded from receiving a merits-based review of his federal habeas claims, including his claim of ineffective assistance of counsel ("IAC"). *Id.* at *3–6; *see also Crutsinger v. Thaler* (*Crutsinger I*), No. 4:07-CV-703-Y, 2012 WL 369927, at *4–13 (N.D. Tex. Feb. 6, 2012). As the court rightly emphasized, Crutsinger's "assertions that the denial of funding precluded a true merits review and that trial counsel's representation was egregious, border on frivolous." *Crutsinger V*, 2019 WL 3749530, at *3. Neither of these factors supports his claim that extraordinary circumstances justify reopening.

The district court concluded that *Ayestas*'s abrogation of *Crutsinger v. Stephens* (*Crutsinger II*), 576 F. App'x 422 (5th Cir. 2014), *cert. denied*,

---

[9] Moreover, here, as was true in *Johnson*, Crutsinger fails to offer "any authority that [§] 3599 has ever provided relief pursuant to Rule 60(b)." 2019 WL 3814384, at *4.

135 S. Ct. 1401 (2015), did not support a finding of extraordinary circumstances because *Ayestas* "emphasize[d] that there was no error in this case before *Trevino*." *Crutsinger V*, 2019 WL 3749530, at *6. Lastly, the court concluded, even "[a]ssuming Crutsinger has exhibited due diligence, he fails to provide authority that diligence plus a change in law are sufficient in death-penalty cases to reopen a judgment under Rule 60(b)(6)."[10]

Ultimately, the changes in decisional law, even when viewed in conjunction with these additional factors, fail to establish extraordinary circumstances warranting relief from the judgment. Therefore, the district court did not abuse its discretion in denying the Rule 60(b) motion. Because jurists of reason would not debate this conclusion, particularly in light of Supreme Court and Fifth Circuit precedent, Crutsinger is not entitled to a COA.

III.

A.

As discussed in *Crutsinger IV*, 930 F.3d at 706, "a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts."[11] We evaluate four

---

[10] *Id.* The district court went a step further: Acknowledging the *Crutsinger III* dissent's concerns, 929 F.3d at 266–71 (Graves, J., dissenting), the court reviewed Crutsinger's § 3599(f) request under *Ayestas*. *Crutsinger V*, 2019 WL 3749530, at *6–9.

In *Ayestas*, 138 S. Ct. at 1094, the Court noted that "the 'reasonably necessary' test requires an assessment of the likely utility of the services requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone." Therefore, the district court stressed, proper application of the test required it to consider: (1) "the potential merit of the claim that Crutsinger wants to pursue," *Crutsinger V*, 2019 WL 3749530, at *7; (2) "the likelihood that the services will generate useful and admissible evidence," *id.*; and (3) "the prospect that Crutsinger will be able to clear any procedural hurdles standing in the way," *id.* Finding that Crutsinger failed to meet that standard, the court denied funding. *Id.* at *9.

[11] *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *see also Sepulvado v. Jindal*, 729 F.3d

9

Case: 19-70012 Document: 00515092425 Page: 10 Date Filed: 08/26/2019
Case 4:07-cv-00703-Y Document 126 Filed 08/27/19 Page 10 of 14 PageID 7255

No. 19-70012

factors.[12] First, "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Charles*, 612 F. App'x at 218 n.7 (citation omitted). Second, "whether the applicant will be irreparably injured absent a stay." *Id.* (citation omitted). Third, "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Id.* (citation omitted). And fourth, "the public interest." *Id.* (citation omitted).

"The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks and citation omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id.* at 435. "These factors merge when the [state] is the opposing party." *Id.* "[C]ourts must be mindful that the [state's] role as the respondent in every . . . proceeding does not make the public interest in each individual one negligible." *Id.*

### B.

Crutsinger asserts that we should grant a stay because he was forced "to file a habeas corpus application . . . without the provision of high-quality representation guaranteed to him by 18 U.S.C. § 3599." Citing *Lonchar v. Thomas*, 517 U.S. 314 (1996), Crutsinger avers that he cannot "be executed until the merits of his initial habeas corpus application have been meaningfully adjudicated." He notes that *Barefoot v. Estelle*, 463 U.S. 880 (1983), mandates "meaningful appellate review for any issue" on which we grant a COA.

---

413, 420 (5th Cir. 2013).

[12] *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019) (per curiam); *Charles v. Stephens*, 612 F. App'x 214, 218 n.7 (5th Cir. 2015) (per curiam); *see also Nken v. Holder*, 556 U.S. 418, 425–26 (2009).

Case: 19-70012 Document: 00515092425 Page: 11 Date Filed: 08/26/2019
Case 4:07-cv-00703-Y Document 126 Filed 08/27/19 Page 11 of 14 PageID 7256

No. 19-70012

As he did in his initial motion for a stay of execution, *Crutsinger IV*, 930 F.3d at 708, Crutsinger contends that he "may not be executed until he has been afforded the representation in federal collateral proceedings that he is due under . . . § 3599." Without an "appropriate post-conviction investigation," he "remains exposed to the substantial risk that meritorious habeas corpus claims will never be heard."

## C.

Despite his familiarity with our standard for a stay of execution, *see Crutsinger IV*, 930 F.3d at 706–09, Crutsinger does not even attempt to engage with the four equitable factors. In any event, it is moot: As was the case in *Crutsinger IV*, 930 F.3d at 706–07, he fails to establish a likelihood of success on the merits. That failure "is, effectively, dispositive of the motion for stay." *Id.* at 707.

Moreover, the arguments raised by Crutsinger, which essentially echo those he raised in *Crutsinger IV*, do not support granting a stay. *Lonchar* and *Barefoot* stand for the unremarkable proposition that a petitioner may not be executed before a court has reviewed the merits of his habeas petition. *Lonchar*, 517 U.S. at 319–20. Crutsinger received such a review more than seven years ago. *Crutsinger I*, 2012 WL 369927, at *4–13; *see also Crutsinger II*, 576 F. App'x at 425–31. As part of that review, he was given a full and fair opportunity to litigate the merits of his habeas petition. *Crutsinger V*, 2019 WL 3749530, at *3–6. Any claim to contrary is baseless. *Id.* at *3. Moreover, Crutsinger's continued insistence that he is entitled to § 3599(f) funding is false. Such funding is discretionary.[13]

Crutsinger's reliance on *McFarland v. Scott*, 512 U.S. 849, 858 (1994),

---

[13] *Ayestas*, 138 S. Ct. at 1094 ("Congress has made it clear, however, that district courts have broad discretion in assessing requests for funding.").

and *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016), is similarly misplaced. Those cases provide only that (1) a capital defendant must "have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution," *McFarland*, 512 U.S. at 858, and (2) newly appointed counsel, if chosen for a defendant who effectively lacked habeas counsel, must be given time to develop a habeas claim for the appointment to be meaningful, *Battaglia*, 824 F.3d at 475–76. "Crutsinger, however, has been well-represented by his counsel for approximately eleven years," and he would not, as in *McFarland* or *Battaglia*, "be deprived of meaningful counsel absent a stay." *Crutsinger IV*, 930 F.3d at 708. Lastly, "[e]ven if Crutsinger could establish a likelihood of success on the merits—which he cannot—the other [equitable] factors weigh in favor of the state." *Id.* at 709.

We take seriously "a [s]tate's strong interest in the timely enforcement of valid judgments of its courts."[14] "Equity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Crutsinger IV*, 930 F.3d at 709 (citation omitted). Crutsinger's motion for a stay of execution is therefore denied.

In summary, the motion for a COA and the motion for stay of execution are DENIED.

---

[14] *Murphy v. Collier*, 139 S. Ct. 1475, 1481 (2019) (Alito, J., dissenting); *see also In re Blodgett*, 502 U.S. 236, 239 (1992) (per curiam).

No. 19-70012

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I would grant the Certificate of Appealability and the motion for stay essentially for reasons I have previously stated. *See Crutsinger v. Davis*, 929 F.3d 259, 266 (5th Cir. 2019); *see also Crutsinger v. Davis*, 930 F.3d 705 (5th Cir. 2019). Thus, I respectfully dissent.



Certified as a true copy and issued
as the mandate on Aug 26, 2019

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

CTJ



RECEIVED
AUG 27 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 26, 2019

Ms. Karen S. Mitchell
Northern District of Texas, Fort Worth
United States District Court
501 W. 10th Street
Room 310
Fort Worth, TX 76102

    No. 19-70012    Billy Crutsinger v. Lorie Davis, Director
                       USDC No. 4:07-CV-703 — Y

Dear Ms. Mitchell,

Enclosed is a certified copy of the opinion issued as the mandate.

                       Sincerely,

                       LYLE W. CAYCE, Clerk

                       By: _____
                       Nancy F. Dolly, Deputy Clerk
                       504-310-7683

Enclosure(s)

cc:  Mr. Travis Golden Bragg
     Ms. Lydia M. Brandt
     Mr. Jefferson David Clendenin
     Ms. Gwendolyn Suzanne Vindell